FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR - 6 2015

JEFFREY P. COLWELL
CLERK

# US DISTRICT COURT OF COLORADO

Jesse ~~GXXT~~ Montez, et al

v

Bill Hickenlooper,
~~GXXXXS~~, et al

CASE NO: ~~12-CV-00870~~  92-CV-870
(MA)

PROVIDED TO:
LOWELL CORRECTIONAL ANNEX ON:

MAR 30 2015

BY:_____ FOR MAILING

---

## EMERGENCY NOTICE OF CONDITION OF CONFINEMENT
## AT LCI – ANNEX AND ADA VIOLATIONS  AND
MONTEZ REMEDIAL - violations

---

COMES NOW Jill Coit and does hereby notify the court of conditions of confinement and other issues involving Jill Coit, Montez and ADA claims

(1) On 2-27-15 while confined in Sierra Pod 3 cell 1106 I heard and inmate above my cell screaming for help and heard loud crashes to the ceiling of my cell. I tried to get help but there was no officer in Sierra Pod 3. Eventually after 5 minutes of blood curdling screams, the Pod 3 confinement orderly's heard the screams and went to get officers. After a few more minutes officer meandered into the pod and heard the screams. Apparently one inmate was beating their cellmate. Both were sprayed with pepper spray before leaving the cell and handcuffed.

(2) The pepper spray was so strong I could hardly breathe and my eye burned. Several officers came into pod 3 and had to leave because the pepper spray was so strong.
The vent system from one pod to the next is not ~~operable~~ seperate therefore when an inmate is sprayed in the cell it goes through the pod to every cell and even to the next pod.

(3) I filed a grievance regarding the inmate screaming for help and not getting any help asking as my resolution that panic buttons be put in confinement cells. See exhibit 1 grievance #15-0311 dated 3-4-15
( LCI-annex refuse to copy - Per Mr Wilson law librarian)

I received the following response from Sierra Unit Lt. Suppes "Your grievance is not in compliance with Chapter 33.Please refrain from grieving issues that do not pertain to you. There will be no panic buttons installed."

(4) First I suffer from P.T.S.D. and screaming inmates that are being beaten affect me and bring about flashbacks.
I physically become ill, I can't sleep, suffer from stomach aches, nightmares. Since I

1

I was assaulted by confinement guard on camera. So no doubt about assault

reported medical mal nurse Tom Robertson for sexual misconduct (2014) my medical file has been stripped of important medical doctor's reports/visits and medical passes have disappeared. After meeting with investigator Allen on 2-9-15 I was called a "snitch" and threatened by medical employee K. Brunes, told me snitches get the shit kicked out (out of them) - On 2-21-15

(5) Lt. Suppes attitude reflects the general attitude and how inmates are treated in F.D.O.C./LCI Annex.

(6) I have heard many inmates scream for help while being beaten by cellmates throughout my living in Sierra with guards being slow to respond.

(7) In fact I have personally heard LCI guards tell inmates to take care of business – meaning fight with inmates they are complaining about. Our yards are constantly shut down because of inmate fights – LCI Annex averages 1 to 2 fights per day. The inmates have nothing to lose they are denied all hobby crafts and programs to help occupy their minds or relieve pressure of overcrowding and being confined in dorm all day. Especially housemen who cannot not leave dorm unless yard is open. Homosexuality is rampant guards and inmate

(8) On 2-9-15 I spoke with investigator David Allen regarding LCI staff/officers smoking in non-designated smoking areas personally when escorting us to breakfast and throughout the day at dinning hall and throughout the facility. I was called from medical to administration. Since Investigator David Allen investigates office misconduct all officers are aware when he is in the facility.

(9) I returned to medical after telling investigator Allen that some officers are selling cigarettes to inmates for $200 per pack – that comes to $10 per cigarette. Officers per LCI Warden are allowed to bring 2 packs per day. That means a duty officer can supplement their income by $2,000 per week on top of their salary. (ie: $200 x 2 pack per day = $400. That means $400 x 5 day = $2,000 per week.)

(10) Inmates take the $10.00 cigarettes and break them down into 3 cigarettes and resell them for $10 each. They also gather the cigarette butts the officer throw into the drains and repack them and sell the cigarettes.

(11) The problem of having inmates smoking and getting into fights when another inmate cannot pay their cigarette bill would be eliminated if officer/staff were not allowed to bring cigarettes and tobacco products into the facility grounds. The Florida Women: Reception Center across the road does not allow cigarettes or tobacco products on facility grounds. They must

2

smoke in the parking lot thus eliminating bringing illegal contraband into the facility.

(12) Forbidding cigarettes into LCI facility grounds would eliminate many problems and stop secondhand smoke. I have been told of officers exchanging cigarettes for sex as will be happy to provide inmates who will testify to this fact.

(13) Each Warden gets to select the policy on allowing cigarettes and tobacco products in their facility. It is unreasonable to allow 2 packs per 8 hour shift of cigarettes, that breaks down to a cigarette every 12 minutes. Smoking time cuts down on doing their job of protecting inmates from harm and running a smooth ~~obeying rules~~ facility. No other job allows a cigarette every 12 minutes – No wonder very little work gets done.

(14) My goal in speaking with investigator Allen was to make LCI a smoke and tobacco free facility. If inmates can't smoke on facility grounds why can officers blow smoke in their face?

(15) According to AWP Lumpkin officers/staff do not smoke outside of designated area (which is outside Capt office in Sierra) See ex 38 per grievance no 15-033 dated 2-20-15 Talk about being in denial. Ask any inmate if they see officers smoking throughout the facility (in front of their assigned dorms – (officers) they step out and leave the dorm unattended, at dining hall, by tower, throughout the yards and on walk way to medical and programs. Officers will be smoking while they are reprimanding inmates for not having her shirt tucked in properly. officers smoke under sierra Pavillion while having weekly meeting with A W P Lumpkin present!

(16) I am a member of the Montez Remedial Plan a Civil Rights case for disabled inmates in Colorado. See exhibit 2 Order of Special Master case no 92-CV-870 dated 4-22-11 stating "The Remedial Plan would have applicability only if claimant remained a Colorado inmate but was housed in a Florida facility."

(17) Coit is a Colorado inmate housed under the Interstate Corrections Compact in a Florida facility (LCI – Annex)

(18) Per grievance 14-6-37443 dated 12-15-14 – See exhibit 3 stating " The Colorado Court does not have authority over Florida Department of Corrections and therefore the Department is not required to comply with such a Court order"

3

(19)   Montez Remedial Plan follows ADA laws and Title II

(20)   Apparently F.D.O.C. gets to select what court orders it follows since it collects payments on child support from out of State Court Orders as well as obeys other out of state Court orders.

(21)   However F.D.O.C. does not obey Title II or ADA Rules and Regulations as clearly documented in the following allegations.

(22)   I am still being denied my wheelchair in confinement handicapped cell despite Medical pass saying I can have it. Taylor/Russell letter of 11-20-11 re AWA recommendations

(23)   I have a perfect disciplinary record for the entire 4 years I have been in F.D.O.C.  F.D.O.C./LCI can give you a disciplinary report for something as insignificant as trying to explain something as not making you bed in time or

XX    (24)   See exhibit 13 Florida DOC Inmate Management Plan from 1-30-2014 to 1-30-2015

Total DR's since admission: 0

Motivation assessment: excellent. Coit received all above satisfactory assessments for all 4 years

(25)   See exhibit 4 from F.D.O.C. – ADA Coordinator Marty Taylor to Julie Russell dated 11-1-2011 It states, "Just last month I got a request from her for key lock, books on tape, a magnifying device, blank audio tapes, extra sessions in the law library to take classes from Hadley School for the Blind, to order books and educational materials for tape player and computer.  Also she wanted to order a Kindle, a job change and to access the computer for classes and homework.

She was granted two extra sessions in the law library on Tuesday. She was told Education Department could schedule 6 hours per week to complete correspondent courses on the computer.  If copies are needed she would be charged.  She was told she would be allowed to order educational materials for the tape player and the computer.  She was not allowed a Kindle and she will not he changed from her houseman's position due to the number of medical restrictions she has…"

also see exhibit 5 Taylor's letter dated 3-29-12.

Reality and Facts regarding Taylor's reply to Russell:

(26)   F.D.O.C. Taylor claims just last month she got a request on 11-1-11

(A)    I submitted ADA request at Broward BCI on February 2011 see exhibit 6 from HCI – Classifications officer Tate dated 8-26-11 stating, "I need to check on the status of the initial paperwork submitted at Broward CI.

(B)    Coit alleges she was at Broward CI from 1-26-11 to 2-10-11 and filed

for ADA accommodations of handicapped cell, return of wheelchair, glasses, backpack, bra's, knee and 2 pair of hand braces all ADA approved and also be released from confinement to be allowed to attend orientation in handicapped accessible dorm like other inmates and for the physical abuse done when black officer with gold tooth stepped on her leg chains and pushed her backwards to be investigated and her to receive medical care so she could attend classes and programs allowed all inmates in general population. ↰o

(C)    This notice from Tate (HCI – proves Coit submitted ADA request at Broward between 1-26-11 and 2-10-11. Where it was never responded to.

(D)    See informal grievance received 2011 – for Jill Coit grievance no. Homestead 1105-095 on 5-31-11 See ex 34 Incident at BCI – date responded to (left blank) action : not yet. For further proof of BCI – injury to disabled inmate. Broward guard stepped on leg chains and pushed Coit Backwards - while cuffed Behind Back.

(27)   Coit received the key lock in 2011 at HCI, books on tape 2012, magnifying – device – a plastic sheet 2012, blank audio tapes she had to purchase herself (Over $20) but never got to use she was transferred to LCI – who did not have a tape recorder for handicapped inmates to use.

(28)   It took Coit 2 grievances to get LCI Annex to order tape player/recorder for disabled inmates and the week after it arrived she was transferred to LCI Main where no tape player/recorder is available see exhibit 23.  Attached and referenced below,

(29)   There is no consistency between F.D.O.C. facilities for applying granted ADA accommodation request.  At each transfer you must reapply and it can take 6 to 8 months to get a reply. if you get one

(30)   See exhibit 8 grievance no 1405-B14-075 "…anytime you are transferred you must submit a request to your new facility as the accommodations may differ."

(31)   Per exhibit 6 referenced above, "Pursuant to title II of the ADA, a qualified inmate with a documented disability may request an accommodation to allow her to participate in, or benefit by, the programs, services or activities of the department.  This request can not be used to request medical passes, medicine, or any other medical request." What is allowed :
        #2.  Tape player with headphones and
        #7.  Blank audio tapes if needed for

(32)   see exhibit 23  #1301-B14-009 per AWP Lumpkin dated – not dated, "as stated in your informal grievance 12-14-2012 (log # 12-12326 the

5

recorder has been ordered…tape recorder will be the property LCI and will
not follow you if you are transferred…" It is stamped 5-12-13 – I was
transferred 5-15-2013 to HCI

(33)   Coit alleges she has searched through all allowable materials and this
is the only reference she has found to what Chapter 33 – Title II allows
disabled inmates.

(34)   Clearly Coit is allowed ~~supposed to be~~ use of tape player (recorder) with headphones
and blank audio tapes if need for correspondence. - yet not provided
with one that will allow tapes on disk.

(35)   F.D.O.C./LCI/HCI have a history of having Coit's family purchase
items not letting Coit use items.

(36)   See grievance No 501-314-156 dated 1-29-15 signed by J. Rodriguez
and Warden Mazorra states, "You were approved for a clear backpack. That
is not what was sent in. Backpacks are not approved, as you are allowed to
use the blue mesh canteen bags on the back of your wheelchair. See exhibit
21

    (A)   First it states I was approved. then It says backpacks are not allowed
– clearly a contradiction. Inmates at LCI - main has a Backpack
for wheel chair in Beige / off white- definitely Not clear.

    (B)   Coit's brother spoke with AWP Martinez regarding backpack
and was told by Martinez that backpack could not be gang color – red or
blue but that an neutral color would be accepted. Coit's brother Mark
Billat    spent over $40 to get tan backpack sent in but Coit was
denied backpack. A W P master was fired.

(37)   Coit alleges this is the kind of mambo jumbo F.D.O.C./LCI puts out –
confusing and contradicting

(38)   Coit's brother has spent hours researching how to get a clear backpack
all clear backpacks are for children and have symbol/picture on them.

(39)   Wheelchair inmates are constantly harassed when blue mesh canteen
bags is hung on wheelchair. Officers say canteen bags is for canteen not
backpack, so I am in the middle again. Library does not allow canteen bags
to be in library per
Ms. Dickson librarian.

(40)   Extra sessions in the law library. Coit was originally allowed 2 extra

6

sessions in law library due to her disabilities.  Then she was allowed 5 sessions per grievance #1202-314-106 dated 6-14-12 signed by AWP Lumpkin stating, "When you do not show a deadline, you have been approved for 3 days in the library plus Saturday walk in for a total of 4 days per week…"  Notice it says days in library not ½ days.  (Reynolds Law librarian (LCI – Annex).  See exhibit 15

(41)   Coit applied for ADA Accommodations request form on 1-7-14 for allowing her morning sessions except for Monday due to the fact she sees better in a morning.  She is legally blind see exhibit consultant report dated 5-12-11 "It is legally blind based on _Criteria_ for visual field and is eligible for services for legally blind." signed by optometrist specialist and Dr. Razdan MD CHO Chief Health Officer HCI.  See exhibit 14. _Law library is closed on Monday morning._

(42)   Coit filed ADA Accommodation request forms _accommodation request_ It the year 2014 – at LCI had to resend all ADA forms/when AWP Martinez took over from Lumpkin because Lumpkin had not responded. #1-7-14, FWRC resubmitted 4-15-14; 7-27-14 (26 pages) no other response AWP Lumpkin to Martinez – resubmitted on 12-10-14 – one responded to ( _from Lumpkin — except)_ Never responded to except for 2 lines See exhibit 29 "All transfer issues go through classification you have use of computers in the library for correspondence courses only not for general use."  It is marked modified/partially granted 9-17-14 by AWP Lumpkin on (regarding 26 page ADA accommodation request form DC2-3-30 8 pages of request and 18 pages of medical documentation to support request. _See exhibit 66 at Back of exhibits for complete accommodation request form submitted._

(43)   Coit alleges this does not meet ADA Recommendation Request Requirement.  Each request listed must be approved, denied or modified and give reasons per FAC
_5-29-14_ See copy of Coit's ADA Request filed 1-7-14 and refiled on or about 4-30-14.  See grievance #65A and B ( _and then had to refile about Aug 2014 –_
(44)   Continuing on with Taylor/Russell letter.  Coit has been approved _see # 42_ since 2011 Homestead CI to take classes from the Hadley School for the Blind But as yet to receive even the first course material.  Coit submits the paperwork to be filled out for to AWP Lumpkin but Hadley School for the Blind never receives the paperwork back _from Lumpkin_.

(45)   See exhibit 16 Hadley School for the Blind _Eye_ report signed by LCI – Annex doctor Cesar _A. Calderon_ - dated 2-23-12.  HCI also

7

approved her for Hadley school for the blind classes. (46) see ex 17 approved Hadley School for blind LCI Annex approved dated 9-24-14 by AWP Lumpkin – Coit has not been allowed even item on ~~item~~ approved list (~~47~~) Coit has begun learning Braille on her own. She was sent see exhibit 19 dated 12-1-14 inmate property slip ~~for and see grievance No.18~~ stating, "slate and stylus from the National Federation of the Blind. Both tools were approved and issued to Coit in 2015 yet she is now denied them since she reported ~~smoking on the LCI – Annex compound.~~ See ex. Exhibit 18 – Slate + slate provided letter from National Federation of the Blind – to purchase lessons off of web site. F.DOC/LCI refuse to get address off of web site so I could send money for Braille classes and materials.

( She is supposed to be in protective management under FAC 602.221 but is in Administrative Confinement 602.220. – no no Braille )
(48) Coit has no internet access to print off the class material and F.D.O.C./LCI refuses to print item for her even if she pay the copy cost. see exhibit ___19___ (1-21-15) National Federation of the Blind.
(49) Therefore she is denied all educational tools and programs even those she does on her own in her cell. web site http://11 = + keywords = I me = I search For = BPP I D.

(50) As to the 6 hours per week to complete correspondence courses on the computer approved in 2011 you can see from Taylor/Russell letter exhibit 4, line 4 ~~&~~ she has yet to be allowed to take even one course. F.DOC/LCI – A W P Lumpton will not return forms to Hadley.
(51) See exhibit 24 inmate request dated 1-26-12 Response by AWP – Pool of LCI – stating "Lowell does not have any computer educational classes for inmates". This response was in reference to Taylor/Russell letter of 11-1-2011.

(52) It took Coit 3 years to get approval for computer classes see exhibit 22 from Mr. Martinez (AWP dated 7-17-14 stating Mr. Glen could schedule me hours each week to use the computer in his office. Mr. Martinez is no longer employed at F.D.O.C./LCI therefore my chances of getting to use the approved 6 hours per week are nil. Mr. Martinez is the only LCI – programs director that even tried to help me or disabled inmates – now I am screwed it will never happen. No other disabled inmate has ever been approved or allowed to take classes on the computer. I was to be the first.
(53) Now because I spoke to investigator Allen all is lost and I am locked in confinement illegally. I have done nothing wrong but report illegal acts and constitutional violation.

*See taylor's letter*
*exhibit 4 - line 6*

(54)   As to being allowed to order educational materials for the tape player ) and computer.  That will never happen nor has it happened.  I filed ADA request for being allowed the Dragon Program for the computer but received no response.  Dragon Program I used in Colorado it is a special recognition computer program that types what you say.  Due to my sight impairment and hand impairment (Under Martinez and Title II of ADA) I needed this program.  I was willing to pay for it.  There are other blind inmates here at LCI – but no one pushes except me to be allowed ADA accommodations.  All are afraid if being locked in confinement like I am.  *See exhibit 20 to Dragon*

*Program - see ex 71 - Dr.'s report, " speech recognizing program and 72 - Rt*

(55)   I have been denied ordering any and all computer programs a *should not* programs for tape player so that is just another lie F.D.O.C. tells – It will *but on* never happen according to AWP *Lumpkin see ex 4 - line 6.* *type*

*I have not stopped in 4 years*

(56)   Per Title II of ADA No qualified inmate will be denied a job.  Ms. Mc Quire head of classification refuses to allow me a job change to do any job but housemen.  I am a college graduate from Indiana University and the University of Northern Colorado in Psychology and secondary education respectively.

(57)   I held a job in the library in Colorado and am capable of working part time but denied all opportunity due to my disabilities and the fact I am a lifer.  See exhibit 25 dated 12-21-12 by D Jorden for inmate request "There is a statewide policy it may or may not change later."  response regarding F.D.O.C./LCI policy of not letting long term – lifers to take educational programs.

     Total ADA Violations – I am not allowed to be anything but a houseman.  *yet I have a medical pass stating, " no house work" exhibit 3-21-15, exhibit 27*

(58)   As you can see F.D.O.C. Taylor's response was one big lie.  On paper I was granted many ADA Accommodations but they never were given.

*see ex 27* (59)   To further back up my claims I submitted a copy of medical passes issued by Dr. Colone and Dr. Burgess.  Both issued me a "raised locker" even Dr. Rodriguez who took away 90% of my medical passes issued me a raised locker See exhibit 40 (not provided) Dr. Rodriguez's medical pass signed 2-17-15 to 2-17-16 stating, "allowed use of wheelchair, no chemical and caustics, allowed talking book and watch.  Allowed wedge pillow and wheelchair pad.  Raised locker, hearing aids, blanket and jacket year around – Low/Bottom Bunk

(60)   I still do not have my raised locker – (all it is is one locker sitting on top of another locker.  Very easy to accommodate.  Although have medical

*all colorado inmates that are part of Montez are given a raised locker - I had one in 9 LVC.*

pass dated <u>3-21-14</u> to <u>3-21-15</u> (Dr. Colone <u>See exhibit 27</u>

(61)   Dr. Colone – Cacho medical director passes were even initiated by Mr. Hernandez – dated 3-21-14 to 3-21-15 – still valid dates – passes state, "Wheelchair and Pad, talking book and headphones, orthotic shoes, hand braces (2), hearing aids, support hose, keylock, hearing impaired, to be housed 2 man cell, sensitive to mold, due to legal blindness 6 sessions research in law library, no push, pull, lift, bend, twist or squat.  No repetitive motion, no housework, chemicals, caustics, keep talking book on head, wear watch/ID on string, backpack, extra time eating, and getting to designation, use restroom as needed, raised locker, lap blanket for w/c, keep jacket year around, can work 2 hours only afternoon, wedge pillow, - Copies do not show up – see _____ in court <u>see exhibit 27</u>

(62)   Coit alleges retaliation after she reported sexual misconduct of male nurse Tom Robertson Dr. Rodriguez cancelled 90% of her medical passes that she has had for years.  He even took away her orthopedic shoes.

(63)   Coit was court ordered to have orthotic shoes due to plantar fibroma, bone spurs, leg length discrepancy of 1 ½ inches left leg, and several hammer toes requiring deep dish shoes.  F.D.O.C. refuses to provide deep dish shoes and will only approve diabetic type shoes that rub against Coit's hammer toes causing them to bleed as she rarely wears them.  This causes her severe hip pain due to leg length discrepancy but its better to hurt than to bleed and get ~~injection~~ that could go to her artificial hip prosthesis. infection    see ex _____ . can't get copied.

(64)   Medical records show Coit has multiple sclerosis (MS) see exhibit 28 abilities unlimited dated (5-13-08) print patient notes by Bill Buswenger, CPO 8-31-10 for court.  Coit's see medical records were shredded at CWCF - see ex _____ will send little form _____

(65)   This concludes Taylor/Russell letter of 11-20-11

(66)   Letter from Marty Taylor – ADA Coordinator dated March 29, 2012. ex 5 stating; "The records I have available to me show that you have both a hearing and visual impairment. I show you have a pass for a hearing aid, orthopedic shoes, a wrist and knee braces, no being around heights, heavy machines, hot water, or chemicals. You have a pass to not be cuffed in the back and you are on a low residue diet, lactose diet." *Never got knee braces*

*to 3/ persons*

"   If you need other passes, such as being allowed to leave your clothes out for the day or a raised locker, you will have to contact medical. You can also request that you be allowed to use a tape recorder for correspondence in the library as that can be an accommodation we make for blind inmates. The reason you are reexamined when you are moved is to make sure that nothing has been missed at another institution. You will have to get medical or classification to approve your extra time in the law library. You were approved previously for a key lock..." *( Medical approved to scessor to low library for research - see ex. 27*

(67)   This clearly shows I am sight impaired/blind and hearing impaired therefore I am eligible for hearing aids.

(68)   see exhibit 12 State of F.D.O.C. Consultation dated 4-8-14 stating "Patient to follow up. Took new impressions for ITE style aid, Diagnostics findings, "BTE aid makes behind the ear bleed when worn with glasses." Provisional diagnosis, "Bilateral hearing loss." signed J. Almedya. (Belton – to institution) and exhibit 11

*Very important*

(69)   This clearly shows need for ITE (in the ear hearing aid yet F.D.O.C./LCI only provided BTE hearing aids (2 right ear only instead of 1 left and 1 right ear). *See ex left grievance No . 150-1-314-048 - administrate denied you ITE hearing aid  you need to grieve them not us.*

(70)   LCI former Dr. Almeyda stated I could either hear or see not both because wearing hearing aid (BTE) causes bleeding. *See grievance No 925- L-04449 your ICC - Colorado is responsible for hearing aids ex 49*

(71)   See exhibit 11 Consultant's report dated 4-7-14 by G. Mc Neal Belton SOPC Reception Medical Center – stating Findings: Exam's concluded BTE hearing aid makes behind the ear bleed when worn with glasses. Recommendation: took new impressions for ITE style and as recommended by Dr. due to size of canal and interference w/glasses"

(  )   There is no legitimate penalogical reason to deny Coit the right to hear since ITE hearing aids would make that possible. She has a constitutional right to both hear and see she does not have to choose between them.

*LCI / F.D.O.C gave Coit - 2 right ear hearing aids - instead of 1 right and 1 left ear hearing aids. chapter 33 - 720.c states inmates can receive 11 2 hearing aids see ex 774 Rules allowed property.*

LCI - Annex

(73)   C. Simons   at medical told Coit to only wear hearing aid when there was something important to hear since wearing hearing aid causes bleeding and there are a lot of contagious things around for an open wound.

(74)   see above regarding F.D.O.C. not providing shoes that meet medical physical needs of Coit's feet problems. Coit has 3 hammer toes ( + Roy ), 1½ leg length discrepancy, planter faroma, & Bone spur - left food / leg.

(75)   Regarding Taylor's   last sentence, "the reason you are reexamined when you are moved is to make sure that nothing has been missed at another institution." or what 5 dated 3-29-12

What a joke. When I have been moved I don't get examined. Here at LCI – Annex Dr. Rodriguez who is not even licensed by the State of Florida and went to medical school in Puerto Rico which has different standards and is not as strict as US Medical school declared me well and never even laid a finger on me or examined me or questioned me about my medical passes.

(76)   Dr. Rodriguez cancelled almost all of my medical passes over 90% cancelled. All because I reported male nurse Tom Robertson sexual misconduct of telling me to open my hand – I had my eyes closed because I am afraid of needles and when he said open my hand I flesh and cloth. lie Before my brain realized what was happening he was rubbing my hand on his exposed penis – I tried to report him at the time but was threatened with "disrespect" for stating your blood guy is a jerk. I had to report him later when I finally got to see investigator Munnerlyn due to Warden Mazorra telling her to see me. see I b - H 15 -146 - not attached refused to give copy of report

(77)   even since that incident I have had nothing but problems from Dr. Rodriguez and medical.

(78)   Taylor's reason so that nothing gets missed is a joke. Look at what Dr. Rodriguez did – cancelled even my orthopedic shoes, support hose, work restrictions, housing restrictions, eye impairment/disability yet never gave me an eye exam, hearing test or anything just with the stroke of his pen made me well without even examining me. Unreal.

(79)   See exhibit 14 pt is legally blind and exhibit 20 dated 2-16-12 from RMC eye specialist Dr. Moore M.D. – Ophthalmologist stating, "reports she fell on 1-23-11 and sustained trauma to right side of face with degree Eye and lid laceration. Pt was seen at Ocala Hospital and repair lids when swelling resolved she noticed a post the membrane in the vision which has persisted. Findings: loose vitreous V 20/200 left eye –(can't read the rest.) When I told Dr. Moore on my next visit to R mc d was calling him as a witness - Moore said he would not be a witness for any inmate and then decided he could see nothing wrong with my eye. Unreal. eye doctor at LCI Dr. Toreco said some doctors are like that and verified I still had problem ( floaters etc ) with my right eye.

(20)   Dr. Rodriguez not listing legally blind is unprofessional since he did not even exam me. No he declared me magically well and sighted. I think not.

(21)   allowing new so called doctor at new move is ludicrous especially since they do not even examine you. There needs to be uniform conformity between transfers disabilities that are permanent do not get magically healed on the bus ride between facilities my left leg did not magically grow 1 ½ inches so I don't need orthopedic shoes, etc.

(22)   see exhibit no 26 grievance no 1501-314-169 dated 1-29-15 by Dr. Rodriguez and LCI Warden Mazorra stating, "You are scheduled to be seen in April with another provider. If you need passes renewed or are experiencing medical problems please sign up for sick call.
       This was in response to my filing grievance about Dr. Rodriguez not conducting examination on serious medical issues, just laughing when I brought up a need or medical condition.

(23)   It clearly states I would be seen by another provider. Yet on 2-9-15 I tried to get my medical passes renewed and Dr. Rodriguez stated it was too early for me to wait one week before passes expire on 3-21-15.

(24)   On 2-15-15 Dr. Rodriguez called me and medical person K. Grimes took all my passes from me. This was after I met with (2-9-15) investigator Allen. I asked for a shake down slip if I had to give up all my passes. She was to lazy to write a shake down slip so I got my passes back for a few days.

(25)   On 2-17-15 again I was called to Dr. Rodriguez and he took all my passes and would not give my copies back even though I said I needed them for upcoming lawsuit. He cancelled 90% of my medical passes without even examining me or talking to me. I reminded him I was to see another provider not him per his grievance response. He said he did not care what grievance said. See ex 26

(26)   I got into confrontation with K. Grimes regarding my medical file being stripped. She stated that "snitches get the shit kicked out of them", I said is that a threat. Told me that investigator had no power, that nothing would change here.

(27)   pure and simple retaliation for speaking with investigator Allen on 2-1-15 – Too close for it not to be related. Especially since medical records keep disappearing from my file as reported P.R.E.A. – Nurse Robertson in 2014.

(28)   See exhibit 54 dated 12-23-14 – inmate request signed by Lumpkin

approval for talking watch but can't get watch till ADA approval. *I have had talking watch since 2012 I just needed new Battery. Took me 4 months to get my watch*

(59) See exhibits 55, 56, 57, 58 Coit educational qualification for work other than houseman 55 – Indiana University – Bachelorette Secondary Education degree; 56 is University of Northern Colorado – psychology; 57 theological Seminary (1988) Hebrew 58 United States Marine Corps (1974) *Laubach* Literary tutor course 2-74; 59 Unofficial Offender Transcript from Colorado - *Graphic* arts and computer aided Drafting and Diagram 2005 to 2009.

(90) See Newspaper Article on Problems (not provided) at F.D.O.C. 59 ( A) ( B) + (C) *Miami Herald*, womanizing assist Warden fired from troubled prison, (3 pg *exhibit* (60) State reevaluates prison health care old worries return (2 pages) *exhibit* (61) Cleaning up a prison *exhibit* (62) Report on Corizon health care

(91) See exhibit ~~63 grievance no 1412-34-246~~ *63 grievance no 1412-34-246* ~~1-5-15~~ later ~~1-5-15~~ Dr. Rodriguez and Mazorra proof Coit had wedge pillow passes but you have no order for this wedge pillow written by a doctor, which is needed.

Coit submits this as further proof her medical file was illegally stripped of doctor's reports. Both Dr. Burgess and Dr. Colone wrote passes for wedge pillow but no report of anything – doctor's visits is in medical file.

*65 - A + B – ADA Accommodation forms -*

(92) See exhibit ~~51~~ *grievance no 14-1096 dated 1-7-14* submitted to ( 1-7-14) FWRC and just re-~~scheduled~~ on 5-29-14 to LCI – AWP Lumpkin Lumpkin refused to accept this and had to resubmit new request which I did. see attached request exhibit no 66 – ~~not provided here~~ *at Back of exhibits.* *permitted*

(93) Coit alleges even though she had a medical pass for a knee brace due to her left knee swelling daily she was never issued one. She was told the type of knee brace she needs (wraps around with Velcro straps is too expensive that HCI/LCI only provides the pull on knee braces which Coit cannot wear due to her hand impairment. *See taylor's exhibit 5 line 2 – Knee Brace - (provided )*

(94) Coit came into F.D.O.C. on 1-28-11 with knee braces (2) see exhibit 9 A & B dated 1-26-11 allowable offender property for Interstate Corrections Compact transfer.

All items except orthopedic shoes and old set of Spica braces were ~~stolen~~ at BCI and HCI. *stolen*

14

(9̶5̶) <u>see exhibit 10</u> letter Coit wrote to Dr. Razdan HCI – regarding wheelchair, backpack, w/c cushion and bras.  see response "Your items will be gathered and sent to you."  R. Fernandez HAS <u>12-28-11</u> (exhibit Coit 00256) also see exhibit <u>7</u> Defendant #3 medically necessary shoes w/lift. ~~(9-1)   exhibit 9A & B = 2 page allowable property inventory dated 1-26-11.~~

(9 6) see exhibit Colorado (( DOC ) accommodation Resolution – 2010 – for Cost for only mobility accommodation ( wheel chair).

15

(97)   Dates of F.D.O.C. ~~Confinement~~ Transfer – on or about

Broward CI (BCI) 1-26-11 to 2-10-11 ( about 10 days )
Homestead CI (HCI) 1-10-11 to 10-20-11 (about 8 month )
Broward (BCI 12-20-11 to 10-25-11 ( about 5 days )
LCI Annex (LCI-A) 10-25-11 to dec 2012 ( about 14 months )
LCI Main (LCI-Main) dec 2012 to 5-15-13 ( about 6 months )
Homestead CI (HCI) 5-15-13 to 11-15-13 ( about 9 month )
Florida Women's Reception Cent (FWRC) 11-15-13 to 1-24-14 ( about 3 months )
LCI Annex 1-24-14 to current ( about 16 months or 2 or )

I have been transferred to back forth to 8-F.D.O.C. female facilities in 48 months. That's an average transfer every 6 months all because I apply for ADA accommodation request or report allegations of sexual misconduct of guards with inmates. Spoke to investigator at HCI – Anderson and ~~Regan~~ Ryan; at LCI – Investigator's Munnerlyn and David Allen chief law enforcement officer 2-9-15 and 2-25-15

(98)   Coit actually witness HCI officer E. Richardson getting a blowjob from black inmates. Another inmate also witnessed this "event" and she was rewarded with transfer to LCI – Main PRIDE (inmate _____ C-631279). Coit was left at HCI when Richardson gave her a DR for telling on him. DR was torn up by Warden Thorton. Inmate Griffin did not speak to investigator she just worked out deal with facility.

( 99)   Again this shows inmates who report sexual misconduct to investigators are punished and retaliated against. The officer Richardson who was just a TA when the sex act was reported is now/still and officer at HCI!

(100)   During BCI second transfer 10-20-11 to 10-25-11 Inmates told Coit of white mentally (slow) challenged inmates that was having sex with kitchen supervisor (black). Coit spoke with inmate and she confirmed she was having sex with him but he said he loved her and he didn't love his wife who was a Lt. there. Coit told he was taking advantage of her and asked if she would talk to the Sgt. about this. The inmate said yes. When Coit told the Unit Sgt he told her to mind her own business and Coit was shipped out the next day.

(101)   During HCI 2-10-11 to 10-20-11 Coit's ~~male~~ cell mate Deatra_____ Hunt was having sex with Sgt. Sharp. Sgt. Sharp accused Coit of telling but it was not

Coit that told.  He confronted Coit and called her a snitch.  Coit told him in front of all inmates   that she had not told, but that he was having sex with Hunt and now she would tell.  Sharp made a fist and Coit thought he would hit her but he just cursed her out.  Coit then notified investigator Anderson.

(103)   Coit applied for ADA accommodations at every facility she was housed in.

17

Other ADA Violations

(ₗₒ₃)   see grievance # 1402-314 116 dated 3-31-14 Coit complained of freezing on hours long trip to RMC that van she was transported in had no heat in cab back where she was handcuffed and bound in wheelchair van. See exhibit 33

The facility response was, "It should be noted that this motor vehicle has a heating system in the front cab but no heat system in place of the back." Clearly that proves Coit's point that the wheelchair accessible van had no heat or aid in the back cab where she was placed for hours at a time.

However note that Warden Mazorra further states, "The vehicle is and has been fully operational as required."

Apparently Warden Mazorra treats inmates less than dogs since even animals are not transported in airless or heatless vans with no way of getting heat or air. Florida summer temperatures get over 100 degrees and winter Ocala area gets in the low 30 degree range. Major constitutional violation (ₗₒ₄)   The F.D.O.C./LCI Annex refuses to accommodate impaired/disabled inmates with hand impairments. Due to Coit's dequarian's disease, arthritis and deformed hand she cannot use the dental rubber bands provided on canteen. LCI refuses to allow her to purchase dental floss that will accommodate her disability even though she has severe gum recession and has had a heart attack and stroke. Floss is very important and medical studies reflect not flossing exacerbates heart attacks and strokes.

see grievance no 1409-314-014 dated 9-9-14 by AWP Lumpkin and _____ CHO Dr. Delph – OBGYN. ₑₓₕᵢᵇᵢₜ 31

(ₗₒ₅)   See grievance no 1307-116 ᵉˣʰⁱᵇⁱᵗ 32 from Homestead Ms. Fernandez dated July 23, 2013. That is how long Coit has been trying to get appropriate dental floss. See response, "Have forwarded request to Tallahassee to see if possible to administer this type of floss. Request set 8-15-13 do not yet have response. Two samples have been given to Ms. Fernandez (HAS) to be allowed by security. J. ₒff₁ₑ 1 "Approved" and See exhibit 31 grievance #1409-314-dated 9-9-14 – "do not provide ~~dentures~~." "dental floss"

(ₗₒ₆)   Coit alleges she still does not have any dental floss she can use and that her gums are receding exposing her roots to pain and further decay. Not flossing exacerbates tooth decay and plaque buildup. as well as excerbate health problems

(ₗₒ₇)   Coit was given a thin plastic loop that would hold dental floss but no dental floss so useless by dentist. It was taken away and lost on 2-20-15 when her property was thrown away when she was put in confinement instead of Protective management.

*Res grievance response from classification head Mr. McBride grievance No. 15-6356*

Locked in Confinement on 2-20-15

(108)  I was told when I was handcuffed and put in Sierra Pod by officer Norman that I was being locked due to Investigator Allen emailing that "I was to be put in Protective Management." *But that was a lie. There is no "protective Management" at Lowell or any other penal facility in F.D.O.C.*

(109)  According to Lt. Suppes I am not in Protective Management I am in Administrative Confinement under FAC 33-602220 not protective management 37-602.221. Big difference.

(110)  I do not meet the criteria for Administrative Confinement. I have not broken any rules and I am not under investigation of anything. Unless he, (Suppes) invents some fake charges I cannot be held in Administrative Confinement. Because I broke no rules or regulations.

(111)  On 3-21-15 I was assaulted by guard while housed in confinement. She yanked my hair out by the roots when I was handcuffed behind my back returning from the shower. All was caught on camera. This attack was preceded with her telling the other officer "I dare you to dump her." This shows malice and intent. *(I was setting in my wheel chair) on way to shower.*

(112)  I am not safe at LCI/F.D.O.C. Ms. Mc Quire head of classification told me she would not recommend my return to Colorado. I have grieved her numerous times and caught her in a lie on paper. Per Mr. De Bell who called me in to discuss my grievance on Pride not having any disabled inmates working for ~~them~~ *them*, Ms. Mc Quire sent the grievance over to ~~her~~ *him* to respond. After speaking to me ~~and leaving~~ I ~~had~~ grieved Ms. Mc Quire *for not* ~~previously passed the grievance back to her.~~ *responding to my grievance. Mr. McBride claims she did not receive grievance.*

(113)  See exhibit 37 Mr. De Bell's response to me stating, "I did not respond to a grievance of yours. it would have been Annex classification Staff." Coit's inmate request stated, "Dear Mr. De Bell I did not get my PRIDE grievance back that you spoke to me about..." dated 1-5-14 *Mc Quire sent Mr. De Bell my grievance on Pride and he called me in to discuss it with me.*

(114)  Shoes issued 4-30-14
Dr. Comfort Shoes Coit wrote, "Hammer toes touch the top of shoe" F.D.O.C. don't have copy ~~will send~~ *they won't copy for me.*

*He asked me why Mc Quire sent the grievance to him & I said Because I grieve her.!*

Referenced herein:

(115)   Also attached see grievance no 1501 314-156 dated 1-29-15 clear backpack <u>exhibit 21</u> above ~referenced

<u>See exhibit 20</u> – Consultant Report dated 2-16-12 Dr. Moore – referred above

(116)   <u>See exhibit 30</u> – grievance no 15-0332 dated 3-15-15 – No toilet seat chair in confinement stating "The toilet in cell T1102 complies what ADA standard of being 17-15" therefore you will not receive any extra apparatus in your cell.

(117)   <u>exhibit 31</u> – grievance no 1409-314-014 dated 9-5-15 stating we do not provide dental floss (referenced above)

(118)   exhibit <u>37</u> – on not getting disabled inmate in PRIDE – inmate request dated 12-29-14 from Mr. De Bell – referenced above

(119)   exhibit 38 – grievance no 15-0388 dated 2-20-15 by AWP Lumpkin regarding no smoking – referenced above.

(120)   exhibit _____ grievance # 14-6-38614 – dated 1-12-15 – denial of access to use computer in library for grievance due to handicapped – writing illegible told can get assistance – but none available (missing)

(121)   <u>See exhibit 44</u> – grievance no 15-03-57 – dated 3-5-15 not put in protective management statute till State classification says you are administrative confinement But see grievance # 15-0356 – By McGuire
"There are no facilities for female in this status class( protective management)
(122)   No reason given for Administration Confinement I broke no rules, etc.
No reason not to transfer me out of 2 CF.
(123)   <u>See exhibit 45</u> grievance # 1407-314-066 dated 2-14-14 stating "Your chart states two inmates fell on you" Coit was in Papa dorm per Mc Quire instead of Sierra handicapped cell.  Coit was injured due to this placement by classification director Mc Quire.

(124)   <u>See exhibit 46</u> grievance no 1208-314-019 dated 8-8-12 regarding doctor at LCI not speaking English. As claimed notes on my breast were "warts" due to lack of english – Still not treated.
(125)   <u>See exhibit 47</u> grievance no 1412-314-036 bra ordered and approved for over 7 months still not given

(126) <u>See exhibits 48 & 49</u> dated 1-21-15 and 2-18-15 grievance nos 1501 – 314048 and 15-6-04449 both state to Colorado is responsible to grieve them.—
*( hearing aids referenced above )*

(27) <u>See exhibit 50</u> dated 10-29-14 grievance no 14-6-33623 – reporting PREA – of August 2014 – male nurse Robertson

(128) exhibit <u>51</u> grievance no 14-1096 dated 9-19-14 by AWP Martinez regarding I am allowed/approved for Braille machine. (referenced above
*( Now denied Braille machine per Manzanos ( warden )*

(129) see exhibit <u>52</u> grievance no 1412 314-184 dated 1-5-15 regarding denial of Periodontist report per dentist at LCI-Annex they are not allowed to recommend Periodontist visits even though my disability- hand impairment prevents me from flossing and cleaning teeth properly.

(130) See exhibit <u>43</u> grievance no 14-6-30633 dated 11-25-14 – per Tallahassee regarding Warden's not stocking items not on canteen submit request.

21

Denial of ADA appliances for the Sight impaired

(131) grievance no 14-1096 where Coit requested a Braille machine (see exhibit ~~62~~ for # 1. Braille machines are items allowed by F.D.O.C.) See AWP Martinez response, "Your informal grievance has been reviewed and is approved. I will inquire on getting a Braille machine here at Lowell CI – first if I cannot then we will pursue your purchasing of one with parameters for usage, storage, etc." See exhibit 42

(132) ~~No wonder my~~ *Now says* Braille machine will be *not* allowed even though it is allowed under Title II and F.D.O.C. *see # 6 above referenced*

(133) Coit purchased a Keefe radio so she could hear the TV since F.D.O.C. (LCI – Annex has on certain *t v's* accommodations for the TV that allows hearing impaired inmates to hear the TV on their radios.

(134) Coit's radio was defective. She continued to report that it was not working. Finally Keefe put out a note that all returns had to be submitted to property by 2-2-15 see exhibit 35 where inmate *Sullivan* witnesses my turning into property my defective radio. Still Coit has not received a new radio or credit for her radio she purchased strictly to hear TV for hearing impaired inmates (inmate *Sullivan* (Jennifer) Y39578 dated 2-2-15 at 11:17AM

(135) Radio issued on 11-10-14 see exhibit 36 property sheet sight impaired disabled inmates are allowed talking watches – Coit's watch battery died 6 months ago so she took it to medical to Mrs. Hernandez to get battery replaced. Ms. Hernandez had replaced the battery before. Now Ms. Hernandez refused to replace battery, Coit had told Ms. Hernandez of the sexual misconduct of nurse Tom Robertson in fact it was Hernandez who told her his name.

(136) Coit continued to try to get a new battery item was told must buy new watch so she did. It took her 3 months to get approved for her watch after it was sitting in LCI property see exhibit _54_ (missing) will send later, I can't find this exhibit *Watch still has to Be on AWA form. Unread - Had talking watch see 2012.*

(137) Medical should at least put in battery for talking watch for sight impaired/blind inmates since the battery is the same that is put in Coit's hearing aid and costs less than 50 cents. Charge inmate for battery in talking watch. There are only 2 inmates at LCI – Annex with talking watches. Ms. Cobb and Coit.

(138)  <u>See exhibit 39</u> – grievance #1403-314-185 unable to use *law library* Sat due to your religious beliefs.  This change gives you an extra ½ day more.  dated 2-25-14 – Warden Mazorra.  *Not given 1 days more - Still monday afternoon + need 2 fridays all day.*

(139)  National Federation of the Blind.  <u>see exhibit 19</u> letter 1-21-15 to order classes

(140)  <u>See exhibit 12</u> – property inventory sheet Braille *slate* and Braille stylus – 12-1-14  *Denied in Confinement*

(141)  <u>See exhibit 27</u> – Computer access through Mr. Glen – AWP Martinez 9-17-14  *above referenced*

(142)  <u>See exhibit 53</u> – grievance no 14-30633 – Warden can allow inmates special items.  *- see above.*

143
( 1 )  Inmates in confinement are denied mental health consultation.  I have been here over 20 days and have repeatedly verbally requested to see my mental health provider Ms. Thompson.  I need to see mental health, the screaming brings back flashbacks of assault and injury.  Inmates in general population can see mental health as requested.

Inmates in confinement must speak through a locked metal door – no confidentiality.  Violation of HIPAA.

144
( 1 )  My medical issued "fat intolerance diet" is not being allowed.  I am soy sensitive so the only meat I eat is chicken which is served once per week.  Confinement inmates are not allowed chicken as punishment.  LCI officers have illegally changed my fat intolerance diet by serving me soy patty in place of chicken on diet tray.  *will send grievance* _____

145
( 1 )  I had colon cancer but LCI medical refuses to write pass extra roll of toilet paper even 2 a week as was written by other F.D.O.C. female facilities.

Said facility does not allow this accommodation.  Inmates are issued 1 roll of this single ply toilet tissue per week.  Not enough rules state you can ask for roll of at officers station but they rarely have any and canteen sells out of toilet paper very often so none is available.  Officers told me to "use a sock or my hand", as a disabled inmate I seem to have more medical problems and I am 70 years old and incontinent.

146
( 1 )  I have been denied all jobs that I am qualified for ie: library and teaching and or computer aids.  This violates ADA & Title II.

147
( 1 )  I was just called to classification meeting with Warden and AWP and AWS and Mc Quire again asked if I would sign a waiver ⟨I said I don't think so.  I was assaulted by guard in confinement how safe I can I can.  No one responded. (3-11-15) Classification meeting Mc Quire   *for protect – in manage-ment*

I am not safe at LCI – Annex I have reported cigarette smoking by officers throughout the facility and I am trying to get the compound smoke and tobacco free.

148
( 1 )  Disabled inmates needs are not being met not just by medical but by Security and Programs.

149
( 1 )  There are not enough wheelchair table in dining hall, *some* outside bathrooms do not accommodate large wheelchairs can just get in them, not enough handicapped beds and disabled inmates are not given job

opportunities as non disabled inmates.  Disabled inmates are limited to being assigned as housemen.

(159)   Disabled inmates are given written permission for ADA accommodations for all above.  But the facilities do not honor what it written.  It has taken me one year to get accommodations merely to be moved/transferred to another facility that does not recognize the accommodations and the fight and file grievances begin again.  Now they (HCI) has gotten smart they merely say it was addressed in prior grievance and return the grievance thus preventing you from going forth.  The issue is not resolved and at Tallahassee level they just recite what facility said despite you providing documents that prove otherwise.

~~Respectfully Submitted,~~

~~Jill Coit~~
~~LCI – Annex~~
~~11120 N.W. Gainesville~~ Road
~~Ocala, Florida 34482~~

I am afraid guards/officers will physically assault me and hurt me.
Jill Coit 3-30-15

(151) Please accept as part of my exhibits and claims of FDOC - not obeying the Montez Remedial Plan or ADA Rules and Regulations.

Wherefore I pray this additional evidence and claims will help meet the criteria that the FDOC is not meeting the conditions set forth in the Colorado Civil Right case - Montez Remedial Plan and that I will be declared sight and hearing impaired under the Montez Remedial Plan. and ~~that~~ that CDOC will return me to CDOC or state that complies with the Montez Remedial Plan and:

**WHEREFORE,** for all of the above reasons I request that this Honorable Court allow me to be disabled under the Montez Remedial Plan and entitled to the ADA. Benefits of the Montez Remedial Plan.

I also request that I be returned back to Colorado where most of my ADA needs were met and there was not obvious so much obvious officer sexual misconduct and physical abuse by officers and C DOC obeys Montez Remedial Plan.

Respectfully,

Jill Coit DC# 163396
Lowell Correctional Institution – Annex
11120 N.W. Gainesville Road
Ocala, Florida 34482

## CERTIFICATE OF MAILING

**I HEREBY SWEAR UNDER THE PENALTY OF PERJURY** that I placed in the US Mail to the LCI Mail Officer in charge of accepting legal documents to the following.

**US DISTRICT COURT; ~~Nicole Gellar/Attorney General; Michael Dussart-Defendant.~~**

Respectfully,

3-30-15
Date

Jill Coit DC# 163396

26

*Exhibits are placed in order with where they appear in motion - not in numerical order.*

# EXHIBITS

(1)   "Please refrain from grieving issues that do not pertain to you." reference inmate screaming for help whole cellmate beat her in LCI Confinement.

(2)   US District Court Order Montez – "Remedial Plan would have applicability only if claimant remained a Colorado inmate but was houses in a Florida facility."

(3)   F.D.O.C. stating that they do not have to comply with Colorado Court Order.

(4)   Letter from F.D.O.C. Marty Taylor to Colorado AIC – dated 11-7-2011

(5)   Letter to Coit from F.D.O.C. – AIC – Taylor dated 3-29-12 – ie: hearing and visual impairment, hearing aid, orthopedic shoes, wrist 2 knee braces, tape recorder, etc.

(6)   Notice from HCI – classification on officer Taylor ADA Accommodations of Title II of ADA.  Braille machine, tape player, key lock, etc.

(7)   Colorado ADA Accommodations – 2010

(8)   F.D.O.C. – grievance – "Anytime you are transferred you must submit a request to your new facility as the accommodations may differ."

(9)   C.D.O.C. – allowable property for Interstate Corrections Compact transfer ie: manila envelop, glasses, wheelchair, backpack, medical shoes, spica hand wrist splints, dated 1-26-11 (2 pages)

(10)   HCI – "Your items will be gathered and sent to you."  12-28-11

(11)   Hearing aid, "BTE aid makes behind the ear bleed when worn with glasses and took new impression for ITE style aid dated 4-8-14

(12)   Belton – Mc Neal, "Took new impression for ITE style aid is recommended by Dr. due to size of canals and interference with glasses.

(13)   F.D.O.C. Inmate Management Plan 1-30-15

(14)   Eye Consultant "Pt is legally blind based on criteria for visual field and is eligible for services for the legally blind." dated 5-12-11

(15)   Grievance LCI – When you do not show a deadline, you have been approved for 3 days in the library plus the Saturday walk in for a total of 4 days per week.  By AWP Lumpkin dated 6-14-12

(16)   Eye Report for Hadley School for the Blind LCI Dr. Calderon dated 2-23-12

(17)   Request for Correspondence Court approval dated 9-24-14 – Hadley School for the Blind.

(18)   Property sheet LCI – dated 12-1-14 Braille Slate and Braille Stylus.

(19)   National Federation for the Blind letter 1-21-15 – for course in Braille

(20)   Eye Consultant Report – Dr. Moore – left eye 20/2000 – loose vitreous – right eye 2-16-12

(21)   LCI – grievance approval for clear backpack – 1-29-15

(22)   Grievance for computer classes Mr. Glen – 9-17-14 (approved)

(23)   grievance tape recorder LCI – will not follow you if you are transferred 5-12-13

(24)   LCI does not have any computer education classes for inmates 1-26-12 Poole regarding 6 hours of computer use Coit was awarded.

(25)   Classification report – D. Jordan – no lifers or long term inmates are allowed to take educational classes – state is the policy – 12-21-12

(26)   grievance no to see Dr. Rodriguez – see another provider 1-24-15

(27)   Medical pass issued for 3-21-14 to 3-21-15 Dr. Colone – Cacho _____ by Mr. Hernandez – LCI –

(28)   Abilities Unlimited 3-13-2008 Patient also is diagnosed with multiple sclerosis.

(29)   LCI – ADA accommodation request response from Lumpkin 9-17-14 to Coit 26 page accommodation request – "All transfer issues go through classification.  You have use of computers in the library for correspondence courses only not for general use."

(30)   grievance – complies with ADA standards of _____ 17 to 15 "therefore you will not receive an extra apparatus in your cell."  Response to Coit request to have her issued raised toilet seat chair in confinement cell that was in her old handicapped cell Sierra 1101.

(31)   LCI – "does not provide dental floss"  9-9-14

(32)   HCI – trying to accommodate Coit's hand impairment of not being able to use canteen dental rubber bands – 8-5-13

(33)   grievance – It should be noted that this medical van has a heating system in the front cab but no heat system in place in back 3-31-14

(34)   HCI – grievance documentation
See #1105-095 on 5-31-11 Incident at BCI – action – not yet

(35)   Proof of turning over defective radio to LCI – Annex property 2-2-15 by Jennifer _____ # V39578

(36)   LCI – property lost – GPX radio 11-10-14 –

(37)   Mr. De Bell's response to Pride grievance 1-5-14

(38)   grievance on smoking 2-20-15 Lumpkin's response "The warden does not allow officers to bringing in cigarettes or smoke on compound other than what is authorized by department."  2 packs per day are allowed.

(39)   grievance – not in use law library on Sat due to religious belief 1403-314-185

(40)   Dr. Rodriguez pass – (not provided

(41)   C.D.O.C. transcript of classes – CAD and Graphic Design

(42)   Shoes – 7Doe + CDoc

(43)   grievance on ADA – may request assistance – 14-6-386-14
        33-103.015(i) inmate assistance and staff assistance in completely grievance forms.

(44)   grievance 3-5-15 Suppes – in Confinement pending protective – unless _____ classification says so –

(45)   grievance – "You were seen in ER – 2-7-14 – Your chart says two inmates fell on you – chart not missing #1402-314-064

(46)   grievance #1208-314-019 – doctor not speaking English 8-8-12 –

(47)   Bra not in – grievance 1412-314-034

(48)   ITE hearing aid – grieve Colorado #1501-314-048

(49)   ICC – Colorado responsible for the decision – hearing aids #15-6-04449

(50)   grievance 14-6-33623 – PREA – confinement

(51)   Braille machine approved by Martinez #14-1096 dated 9-19-14

(52)   Periodontist – denied – 1-5-15

(53)   #14-6-30633 – Warden can order special items 11-25-14

(54)   talking watch approved by Lumpkin – but still must wait on ADA form

(55)   Indiana University transcripts ~~Sunday~~ Secondary education

(56)   University of Colorado transcript – psychology

(57)   theological _____ transcript

29 3 o

(58)   Marine Corp – transcript

(59)   Martinez Article – Miami Herald

(60)   State reevaluate person Health care

(61)   Cleanup a prison mess

(62)   Corizon Health report

(63)   grievance 1412-314-245 – no written order for wedge pillow

(64)   - No rehabilitation in 7DOC - men Hed *Resubmitted*
(65)

(66)   ADA Accommodation Request form 1-7-14 & 5-29-14 (2 page

(67.) grievance No 14-074 p - dated 3-18-14 - from A W P Lumpkin - Must re-submit - not housed at W R

(68) grievance No 15-0856 - There are 'no female facilities for female in the status class ( protective management) 3-13-15- Mc zure

(69) grievance No. 15-0784 - Not afraid of any inmate - officers - dated 3-16-15 Mc Swire - No list is afraid of staff/ Mc zure said list was afraid of inmate -

(70) grievance No 15-0842 hardicapped shower will not Be placed in all dorms as it is not required - mczure 3-12-15

(71) 20 major Program

(72) Medical record - Ortopedic 6-12-08 - Cu recommend ... and would Use special recognizing program for typing of her hands or key Board. Board.

(73) medical report Colorado .7-1-08 - " pat should not type or write except for signing "

(74) Colorado monthly Remedial Plan page regarding Computer use - 1011 library equipment ( .. Computers will Be available for use and when appropriate to Be checked out ...

(75) 7 DOC rules for 2 hearing aids allowed - properly reures.

(76) See affidavit of new court.

*Exhibit 76*

## US DISTRICT COURT FOR THE STATE OF COLORADO

Jill Coit, *Menter, et al*,

**Plaintiff,**

vs.

CASE NO.: *92-CV-870*

*Hickenlooper*

### AFFIDAVIT OF JILL COIT *regarding all that has happened to her in 7 DOC —*

**COMES NOW,** Jill Coit, Plaintiff in the above captioned case and does hereby state the following; violations at BCI; (1 A) On 1-26-11 when I arrived at Broward Correctional Institution (BCI) <u>my legal documents</u> (1983 Civil Rights Complaint-Court ready) was <u>confiscated</u> and read by the transportation officer. I was only given two exhibits back of the approximate 60 exhibits and 30 pages of the complaint.

Under the rules of Interstate Corrections Compact inmates are allowed one manila folder/file to be transported with them along with ADA medical equipment. Coit was allowed a manila folder which included her 1983 Civil Rights Complaint and the BCI transportation officer should not have confiscated it.

(1 B) During the initial sign in at BCI it was approximately 10pm at night the computers were down I was asked my name my social security number my date of birth and given the Florida ID number of 163936. I was told to shower and wash my hair I was issued a set of clothing which consisted of a shirt and pants in blue a bra that didn't fit one pair of socks and a pair of panties. I was also given a pair of crocs. *Under Monty Remedial Plan + ADA I was allowed the following items :*

(2) The transportation officer <u>confiscated</u> my <u>eye glasses</u> that I need for seeing and reading, my medical <u>orthotic shoes</u>, my <u>hand braces</u> (spica hand braces), my <u>wheelchair</u>, a <u>backpack</u>, my bra,.

(3) I was then placed in the infirmary because it was after 11pm and given a soy burger (cold) I am soy sensitive. This was the first food I had since leaving Kansas at 3:30am that morning. The Colorado Department of Corrections transport officers had food but I was not allowed any food during the entire trip. I suffer from hypoglycemia with shaking when extremely hungry *and severe headaches and blurred vision.)*

1

*Exhibit 76*

( ५ ) The next morning 1-29-11 the doctor, doctor Yvette Martinez saw me. She was the same doctor that did my Montez screening at the Denver Women's Correctional Facility in Colorado (DWCF) in 2005. When I say saw me she did not examine me she just spoke to me. I asked if she remembered me from Colorado and she said, "Yes I do and that I was trouble".

( ५ ) I broke no rules but she had me transferred to lock-segregation even though the regular orientation for new inmates dorm was handicap accessible my wheelchair had already been confiscated the night before so I did not have it.

( ६ ) While in lockup-segregation I had to climb up and down approximately 40 stairs every time I was removed from my cell for medical (6 trips); mental health (one trip); showers three per week (approximately). At these times I was fully shackled both hands and leg irons with chains. After falling numerous times an officer during the last two days of my segregation was allowed to assist me going up and down the stairs. There were no stairs in the orientation dorm But el was denied going there

( ७ ) While being transported to medical mental health appointment-I witnessed black fat male officer with a gold tooth touch a female officer's breast. The female officer stated, "I told you not to touch me!" the next time she stated this, I looked at him, he said "eyes forward inmate".

( ८ ) He sent her to get him something to drink and put me in the freight elevator in the medical building. He told me to walk back to the elevator and told me to face the wall. I complied. He then told me to turn around and come back to him. When I got to the center of the freight elevator he stepped on my leg chains and pushed me backwards. I was crying because I fell backwards about five feet and landed on the back/spine. I was shackled. I was shackled with my hands behind my back (I have torn rotator cuffs and I not supposed to be shackled behind my back) it was very painful. The black metal box that held my hand chains hit my spinal column about one third of the way down my back. I asked the officer why did you do that. He told me, "Shut the fuck up bitch no one will believe you. I heard about you while you are here you told a cop fucked you."

( ९ ) The other female officer arrived as he was helping me up by my arm she insisted in getting me up and was crying and scared

( १०) She said that I had to go to be seen by medical. He told her he would stay with me to go on back. He never left my side while I was being examined so I could not tell at that time. I was crying and hurt. He refused to let me answer the questions-

( ११) The next day I told the segregation officer I was still in pain my whole body hurt, my shoulder hurt and my back and spine hurt and that I had a severe headache. The segregation officer called medical and when the nurse came and spoke with me I tried to tell her what happened and she told me not to tell her. She would only address my headaches since that was what the segregation officer I do answered for me !

told her I complained about.  My spine is still very painful where I fell on the black box

(12) Later that week I saw Dr. Martinez in the hall when I was in the medical building and tried to tell her what happened, she did not want to hear it she told me she knew I was trouble.

(13) I wrote the BCI warden, filed four grievances and one ADA accommodation request during my two week stay at BCI (1-26-11 to 2-10-11)

(14) While at BCI I was told to initial and sign blank pages.  When I signed my name on the blank page I wrote that it was a blank page.  It was then torn up and I was ordered to sign my name only nothing else.  I complied

(15) I still was denied my glasses so I could not read the print or see very well.  I was in constant pain and had severe headaches when not wearing my glasses (and also falling).  I did not have my orthopedic shoes so my hip and leg constantly hurt (leg length discrepancy verified approximately 2 inches).  I was in constant pain.  My left knee was constantly swollen from being forced to climb stairs and falling.  I was denied my knee braces and there was no way to support my knee.

(16) My first two weeks in the Florida Department of Corrections has taught me that officers were allowed to physically injure inmates and that telling did no good.

(17)  That legal documents were allowed to be confiscated without giving you a shakedown slip or any remedy to get them back.

(18)  That filing grievances did no good they were not responded to.

(19) I filed a grievance on the physical abuse by being pushed down by the black officer.  I never learned his name but the grievances were never answered/responded to

(20) Finally at HCI Homestead Correctional Institution I received a printout of the grievances filed and there are two entries for BCI-but they were never responded to.  See exhibits 11 05-095 — date received 5-31-11 (I just kept on filing grievance even though they refused to log them or respond to BCI officer stepping on my leg chaes and pushing me backwards as well as refusing to respond to

(21) ADA accommodations. (Finally ADA accommodation request was responded to in part.).

(22) I spoke with investigator Anderson and investigator Regan at Homestead.  Nothing was ever corrected or done.

(23) See attached exhibit — part of the grievances I filed at Homestead.

3

Transfer to Homestead Correctional Institution (HCI from BCI on _or about_ 2-10-2011 to 10-20-2011.

(24) I was forced to walk approximately 400 yards to the dorm where I was assigned (Delta. Delta houses long term and lifer inmates.

(25) I was assigned as a houseman to clean rails from the first and second floor which meant that I had to climb approximately 24 steps three times a day to do this job. ( 72 steps just to do my job each day as houseman)

I had a swollen knee and was constantly falling up and down the stairs.

(26) Some sadistic officers made us march to the dining hall which is more than 300 yards away each way. When I ~~cannot~~ could keep up I was called, "retard, stupid, lazy, dumb bxxx, etc." I fell several times and my knee was constantly swollen and painful. My knee braces were confiscated at BCI and were supposedly mailed to the Colorado Department of Corrections, But they never arrived

(27) I was charged approximately eighty dollars to mail home my personal property at BCI. However my personal property did not arrive what arrived was numerous telephone books, stacks of newspaper, and a few personal items including my TV however my brand new headphones were substituted with a broken pair of headphones.

(28) According to the Interstate Corrections Compact the medical equipment is to be mailed back to Colorado however no medical equipment arrived at Colorado (ICC ?) not my knee braces not my extra set of hand braces orthopedic shoes etc. _see exhibit 1_

(29) I was given a pass for a knee brace by HCI medical but they only had pull on Velcro braces and due to my hand impairment/disability I could not pull on the braces. The type of braces that I had in Colorado that were furnished by Abilities Unlimited were deemed too expensive so I was not given knee braces. There is numerous documentation in my medical file at HCI. _see exhibit_ _____

(30) The chapel is on the second floor of the library at HCI. There were approximately 20 steps and when my knee was swollen I could not get up to the second floor to attend Jewish services for classes. LCI did have an elevator, however it had been broken for at least ten years. When I inquired to when the elevator would be fixed I was told they had no money and would not be fixed in the near future. (I was denied all programs and Jewish services due to my disability ( needed wheel chair - swollen knee - no elevator access)

(31) I continued to file grievances on ADA accommodations not being responded to and met being denied medical braces and treatments; due to deliberate indifference and denial of religious services and not being able to get to the chapel. _Some were responded to some ignored._

(32) I was ordered to sign blank pages by the property officer because she received a few pages of my confiscated BCI legal documents (civil rights lawsuit). I signed my name and wrote blank pages on it but it was torn up and a new one

was produced for me to sign with an order for me only to sign my name and not put blank pages.   *Blank pages*

(33) I signed the documents that stated that my wheelchair, orthopedic shoes, hand braces, bras and backpack were sent to me from BCI. All these items were delivered to Radzan's office at HCI medical.

(34) I was given my orthopedic shoes and hand braces by Dr. Radzan. The wheelchair, backpack and bras (bra had underwires in it size 36 DDD) all items were to be locked in HCI medical (Friday night) for me to be picked up on Monday after security checked the items.

(35) On Monday when I went to medical to get the wheelchair, backpack, and bras they were all gone. Security verified that no inmate left the facility or went out on a medical trip the entire weekend. They could not offer any explanation for how these items 'disappeared'. Especially the wheelchair which was large.  *see exhibit*

(36) Finally medical documented that my wheelchair and backpack would be returned to me when they found them. The facility had only about 600 inmates and every dorm was searched. According to sergeant some 'officer' had to have taken it. I asked why? He said could be sold on ebay.  *see exhibit  10*

(37) HCI sergeant Sharpe was having sex with my cellmate *Diedra Hurt* giving her outside food which I refused to eat when she offered me some. Someone reported him and her and sergeant Sharpe accused me by calling me a 'snitch' in the canteen line in front of lots of inmates. I told him it was not me that told that someone else reported him. But that since he called me a snitch I would he was getting blow jobs from inmate *Diedra Hurt* I named her I thought he was going to hit me but he didn't he just walked away.

(38) After that sergeant Sharpe would open my locker so my cellmate *inmate Hurt could* to help herself to my canteen.

(39) Sergeant Sharpe also tore up my legal documents before I could mail them to court. I had my response to case number _____ *Colorado Case 2010* for the defendant's motion for summary judgment typed in the law library and he tore it up prior to my being able to mail it. The case was dismissed.

(40) I finally reported to FDOC investigator Ms. Anderson all that sergeant Sharpe was doing including sex with inmates and taking my legal documents and unlocking my locker so my canteen items and my property could be stolen. Nothing was done.

I also reported to investigator Anderson that I was not able to get to Jewish services due to the fact that it was upstairs and the HCI elevator did not work and they did not have any plans for it to work. *1st amend. Violation denied religious right*

(41) I was transferred from HCI to BCI Annex on or about _____ *10-20-10* *till 10-25-11 — Second time at Broward CI (BCI) was only there for 4 days. Prior time we at BCF for 14 days.*

85



*"Your items will be gathered and sent to you"*

(12) See exhibit _____ ~~and~~ _____
where HCI medical said they would return my wheelchair and backpack to me
when they found it. "*Your items will be gathered and sent to you*"

(13) I was declared legally blind by optometrist/specialist at HCI and entitled
to all the benefits and services programs for the blind. See exhibit ___1 c___ *dated 5-12-11*

(14) Letter from Marty Martinez, ADA coordinator for the Department of
Corrections exhibit ___5___ *dated 3-29-12* stating that I was legally blind
and hearing impaired.

(15) Note from HCI classification officer Ms. Tate stating that she would
have to check to see what my ADA accommodation form listed at BCI. This
proves that I did complete an ADA accommodation form at BCI despite the fact
that Florida Department of Corrections ___*taylor 4 & 5*___ told
Colorado Department of Corrections that I had not applied for any ADA
accommodations. See exhibit ___*Julie Russell*___ *dated 5-26-11*

"*I need to check on status of the initial
paperwork submitted at Broward CI' By
HCI classifications officer Tate , A ADA accommodation
request was from 1st stay at Broward CI
( 1-26-11 to 2-10-11)( BCI

I was only at BCI for the second
time from 10-20-11 to 10-25-11 so I did
not have a chance to file for ADA accommodation
request form.*"

SECOND TRANSFER TO BCI FROM *Homestead* H C I 10-20 11 TO 10-25-11 .

(46) Upon arrival at BCI I was place in Delta dorm which had approximately 20 steps to enter the housing assignment.

(47) My cell was on the second floor and the door was broken and three glass panes of the jalousie windows were missing. Jalousie windows are the glass windows that are approximately three inches wide and if you turn the crank it opens and closes the windows however there was no crank to be able to turn the window you have to forcibly open them. I tried to put panties over the missing window panes to keep the bugs out but was unsuccessful. – *living conditions – 8th amendment*

(48) Inmates told me about a mentally slow white inmate in Delta dorm (where I was housed) that was having sex with the black kitchen officer. I spoke to her and she confirmed that she was having sex with him and that he 'loved her'. I told her he had a wife and that was a sergeant there and that he was just using her since she told me that he had not given her anything but that he was bringing presents to other inmates. I told her other inmates were concerned about her being taken advantage of since she was given the worst job in the kitchen by this officer I told her I was going to tell the sergeant and asked if she would tell what she told me if the sergeant asked her. She said she would tell if they asked her.

(49) I reported this PREA violation to the dorm sergeant on duty that day and was told to mind my own business.

(50) I was transferred out of BCI to Lowell Correctional Institution – Annex (LCI). ( *the next day* ) 10-25-11

(51) A lesson I learned- PREA violations even when violated against the mentally challenged/slow are ignored.

Transfer from ~~H~~CI (Broward ~~Homestead~~) to LCI Annex. On 10-25-11 to about 22 July 2012 10 ct

(52) I was housed in Sierra dorm-two man cell pod 4 but not in a handicapped cell.

(53) I was given permission to take courses from the Hadley School for the Blind ~~and~~ since I had been declared legally blind at Homestead Correctional Institution (HCI) see exhibit '7 dated 5-12-11

(54) Paper documentation by AWP Lumpkin never reached the Hadley School for the Blind despite my many attempts to take courses.

(55) λ CI-annex I was forced to walk sometimes march to the dining hall for breakfast which was more than 200 yards from Sierra dorm. I constantly got reprimanded for not being able to keep up. each way.

(56) On 11-23-11 I fell ~~on~~ the LCI Annex north dining hall and cut my face above and below my right eye. Both cuts were approximately 1 ½ to 1 inches long ~~and~~ they were done when I hit the metal dining room table and then bounced and hit the matching metal stool attached. (would not have happened if I had wheel chair.

(57) I was taken to the Ocala hospital where a plastic surgeon just happened to be treating another patient. He glued my cut shut so that I would not have ugly scares on my face. He gave me strict instructions, putting ice on my swollen eye and to take medication that was prescribed.

(58) I was sent back to LCI Annex infirmary with written instructions in my file for how to treat and medicate me.

(59) LCI Annex medical nursing staff said there was nothing in my chart and they would not even give me ice for my swollen eye. I do not have sight in my left eye so basically I was totally blind. Later I saw the instructions in my file.

(60) When I fell in the dining hall food landed on top of me which consisted of spaghetti in red sauce. I had it all over me and in my hair and all over my clothing.

(61) LCI Annex infirmary had no clothing or even a towel for me to wash the food off of me. I was not even given shampoo or soap. no help given

(62) The next day 11-24 Thanksgiving Day I checked out of the LCI Annex infirmary so that my friends in Sierra dorm could take care of me. the dorm officer allowed me to have a Thanksgiving lunch tray that was the only tray I was allowed ~~except for the ones she could sneak to me.~~ I received no care or help in the infirmary

(63) The pod officer let me have a few trays from the segregation carts. Sierra pod 1 and 4 are for general population inmates pod 3 and 2 are for confinement/segregation inmates segregation and confinement inmates receive trays for all three meals. When an inmate didn't eat a tray sometimes the officer would let me have the tray since I had no way of getting to the dining hall and my eye was still partially ~~closed~~ swollen shut. medical still refused to issue me a wheel chair, even though I entered FDOC-1-26-11, in a wheel chair. Said they did not have enough wheel chairs,

8

*Cont. with LCI – annex*

(64) The following day and continuing on during the week I borrowed a wheelchair and went to medical attempting to get a wheelchair and a pass to get my meals in the dorm since my eye was still partially swollen and I was in severe pain. I tried to get ice for my swollen eye but was denied all three requests. I was in severe pain from the fall and could not take care of myself.

(65) After repeated trips to medical where I received no help, I contacted investigator Munnerlyn. After showing her my Montez Remedial Plan, *and* my *court order* ADA accommodations from Colorado *and* ~~and~~ medical records from Colorado doctors ≥ — doctor Razarrio after speaking with investigator Munnerlyn decided to issue me a wheelchair and move me to I dorm on the LCI main complex.

*eve.* *XXX →* (66) I dorm is for people that are disabled and need assistance.

(67) If the Florida Department of Corrections/Homestead Correctional Institution/Broward Correctional Institution/and the Lowell Correctional Institution – Annex had issued me a wheelchair in the beginning to replace the wheelchair that was stolen by an officer, I would not have fallen and received severe injury. My eye is permanently damaged I punctured my right eye ball and *Viterous* fluid leaked.

(68) Colorado medical documentation documents the fact that I lost 35 to 45% of my vision in my right eye. I have no peripheral vision. This added trauma to my right eye and permanent damage was unnecessary. If I had been issued my wheelchair this accident would not have happened.

(69) LCI Annex had numerous documentation that I needed a wheelchair *too*. I had already fallen in the educational building and had to be taken to medical. Even with all the documentation of swollen knee and falling in the educational building I still was not issued a wheelchair. Medical excuse was that they didn't have enough wheelchairs.

*eve.* (70) If investigator Munnerlyn had not intervened there was no telling when I would have gotten my wheelchair. As it was, I went almost an entire year without a wheelchair being forced to walk three to four hundred yards per meal to get to the dining hall to get meals and just as far to go to the law library or any other services. *Cruel and Unusual punishment.*

(71) LCI Annex continued to violate the Montez Remedial Plan and ADA accommodations. I have a permanent mobility impairment/disability documented by Colorado court. I am member of the Montez Remedial Plan. *until 12-2011.*

(72) While at LCI Annex I was denied my wheelchair; denied raised locker; denied glasses; denied access to programs or jobs (still made a houseman despite being a college graduate.) The GED tutors are not college graduates but former GED students. *I am qualified to Teach and for Be Teacher's aid.*

(73) Ms. Mac Quire head classification officer's policy is for all disabled inmates especially wheelchair inmates to be listed as housemen. That

9

means we just get to dust and never use our brain.  There is no legitimate penalogical reason why I cannot at least work part time in either education or the library.  I worked in the ~~La Vista~~ Colorado La Vista correctional facility library for years part time.  There is not any legitimate reason why a disabled inmate cannot work part time I realize that I cannot work a full shift however I could be allowed to work a couple of hours per day. *see exhibit __2 5__ , Jorden 2012*

(74) According to the Montez Remedial Plan disabled inmates are allowed to work part time.

(75) I filed for a tape recorder which is allowed under the Florida Department of Corrections on disabled inmates.  See exhibit _____ which lists appliances and accommodations made for disabled inmates.  It includes a Braille machine and tape recorder with blank tapes for correspondence.

(76) When I filed for a tape recorder to use in the law library AWP Lumpkin ~~issued document listed~~ exhibit __2-3__ stating that she would order a tape recorder for the library but it was not to be taken with me when I am transferred. *Tape recorder to be property of LCF - will not follow if transferred*

(77) This should have been the handwriting on the wall that I was being transferred but I wasn't smart enough to see that. *I was denied all programs - educational opportunities while I was housed at LCF any.*

Transferred from Lowell annex to Lowell main complex no about 12-10-11 to 5-15-12.

Lowell ACI-main unit-I dorm is for inmates that are disabled and need assistance.

(18) In I dorm I was put in a single cell and some of my ADA needs were met. A. wheelchair for long distances

B. raised locker one locker put on top of another locker

C. finally allowed me more than one session in the law library per week. I filed a grievance and was given two whole days which is two sessions each day a half a day one session a total of five sessions per week in the law library due to my sight impairment and other disabilities by librarian Reynolds and endorsed by AWP Lumpkin. see exhibit _____

(19) While in I dorm I witnessed inmate Anita Gonzalez literally bleed to death. Gonzalez began bleeding on her arm and the skin literally broke open she was already black and blue from taking a drug called _Cumiden (?) Blood Thiner._ Anyway she was black and blue and she began bleeding the skin just broke open on her arm. She was taken to medical she was there for less than five minutes she stated all they did was placed a clear piece of wide tape on her arm within a couple of hours where the tape ended on her arm she began bleeding again again she was taken to medical was gone just a few minutes came back with another clear piece of wide tape on the cut this happened a third time, All medical did she stated was to put another piece of clear tape. It was obvious that they didn't do anything because she was gone just a few minutes and medical was directly next door to I dorm. The next day she began bleeding on the other arm and they continued to put clear plastic tape on it after several visits to medical the sergeant got involved and insisted that medical keep her but medical refused to keep her they didn't do anything but send her back to the dorm.

The next day she began bleeding from the nose obviously they couldn't put a clear piece of tape on her nose so they had to admit her that night she died.

(20) Another needless death that I witnessed was inmate _Le Blanc_ _____ was on a diet and had been on this diet for years doctor (27 yrs) Razzario placed this inmate who weighed less than 100 pounds and was over 5'7" on a peanut butter and oatmeal diet 3 times a day all this inmate got was a peanut butter sandwich no jelly and a helping of oatmeal at each meal

(21) Inmate La Blanc was the inmate's name and she one day requested that I give her my tray that had applesauce on it, Inmates in I dorm were allowed to eat their trays in their dorm rather than go to the dining hall. An officer saw her inmate La Blanc request this and told me that I couldn't give her the applesauce that she had to be on a peanut butter and oatmeal diet.

(22) I told the officer it was not healthy and wrote a note to Dr. Razzario saying that I thought it was unhealthy for inmate La Blanc to be on a oatmeal and peanut butter diet for years that obviously the woman was suffering from malnutrition you could see her ribs and she looked like she came from Auschwitz. Le again was told to Beat Out. LeBlanc died 2013.

I filed a grievance on not Being allowed to get Hardly School books Blind Test Book (Hard Back) and Was transferred Back to Homested (HCI) (all inmate are allowed Hard Back Books)

(A2) (B) When I saw Dr. Razziaro she informed me it was none of my business what kind of diet inmate La Blanc was on and to mind my own business.

(A2) (C) Inmate La Blanc died the next year.

(A2) (d) I again applied for permission to take courses from the Hadley School for the Blind and presented paperwork to AWP Lumpkin.  AWP Lumpkin responded that I would not be allowed to receive hardback books.

(A2) (e) I wrote back on my inmate request that all general population inmates were allowed to receive hardback books why was I not allowed to receive hardback textbooks and I filed charges against her under racial discrimination.

(A2) (F) The following week I was transferred out of I dorm back to Homestead Correctional Institution where there are no disabled inmate accommodations.

(A2) (g) What I learned while at LCI main unit was that the only way to get any ADA accommodations was to be housed in I dorm because that's the only place I could have a raised locker and that reasonably met my ADA needs.

(A2) (H) I also learned that even when you called attention to injustice and medical neglect as well as deliberate indifference you were ignored and inmates died.

5-15-2012 *to* 2-5-2013

My transfer to Homestead Correctional Institution (second time) from *Lowell Man* *to* 5-15-12 *to* 2-5-13 was a comedy of errors.

(23) I arrived in my wheelchair since I had finally been issued it officially and was housed in Gulf dorm.

(24) Gulf dorm is an open bay dorm that has approximately *80* *to* *80 Beds and* (2) telephones for the 80 inmates. bed space is less than 12 inches between the head of each bed *and less than 20 inches between Beds. No space for open wheel chair.*

(25) Gulf dorm has a raised officer station that is glass enclosed that overlooks the first three toilets and the showers for Gulf dorm *and Bed area.*

(26) I was ordered to use the first toilet because that is the only handicapped toilet there was in Gulf dorm. It is in full view of the officers and anyone in the office has a total view of my entire body and me using the toilet.

(27) Inmates in Gulf dorm were ordered not to use the first three toilets when a male officer was scheduled as the dorm officer. I was the only one that was forced to use the first toilet in full view of the male officers. *I was the only wheel chair.*

(28) There were approximately 4 toilets for more than 80 inmates. *except for 3 separate ones.*

(29) Due to continual plumbing problems (old plumbing old building) the showers and toilets were constantly backed up. Many times I stood and held onto *on a Bucket* a railing in the handicapped shower so that I could shower because there was sewer coming up the shower and that was the only way we could shower.

(30) The handicapped shower consisted of a couple of pipes secured to the wall and a metal flex pipe coming from the shower head, it was basically nothing but a piece of pipe there was nothing on the end of it and that's how you showered there was no shower head or anything else. *for the handicapped shower.*

(31) The plumbing problem became so severe that we couldn't shower even standing on 5 gallon buckets and couldn't flush the toilet we had to go to another dorm to use the bathroom. that Homestead Correctional Institution administration moved all but four inmates out of Gulf dorm *to 7 weeks for months.*

(32) I was one of the four inmates that was moved to the infirmary.

(33) This lasted for approximately 3 weeks until the plumbing backed up into the entire end of the (I guess it would be the west end of the facility) Gulf dorm ) . where Even the administration building the plumbing was backed up and you couldn't shower or use the bathroom. *in the infirmary.*

(34) HCI brought in portable toilets for dormitory use and administration and infirmary use, this went on for another two to three weeks.

(35) If you had to use the restroom in the middle of the night you had to have a guard escort you to the toilet. (*They were not happy about this.*)

(36) Eventually HCI administration had a company come in and dig up the approximately 20 yards of pipe that goes from the Gulf dorm to the other dorms I don't know how else to describe it. These day laborers they did not speak English

13

they had to have a Spanish person there telling them what to dig and everything else. They didn't even have their own equipment, they had to borrow HCI's metal carts to move their equipment to the area.  As an inmate (we) I would wheel down in my wheelchair To observe the digging process since there was nothing else to do.

(97) The Florida Department of Corrections women's facilities not only Homestead Correctional Institution but Lowell Correctional Institution Annex and Main Unit as well as Florida Women's Correctional Institution are not allowed any hobby crafts in any form that means not even colored pencils there is nothing to do whatsoever there's no hobby crafts there's no rehabilitation there's no programs. see 24

(98) At Homestead there were inmates that would teach various programs on their own, with no supervision just whatever the inmate felt like she wanted to teach, Homestead was willing to let her teach it.

(99) Most of the classes however were held in the chapel and I was not allowed to attend or even if I was enrolled there were days when I could not go to class because my knee was so swollen that I could not get up the stairs.  Basically any handicapped or wheelchair inmate was not allowed to go to the chapel because they could not get up the stairwell. Violated 1st amend access to Religion and programs.

(100) This is a direct ADA violation, inmates must be allowed the first Amendment and allowed to go religious services whether they are in the chapel or anywhere else.  Homestead Correctional Institution no longer houses inmates in wheelchairs because they cannot meet any ADA requirements. (2004 2014)

(101) All of the dormitories have either stairwells to get to the dorm or they have stairwells going to the first and second floors there is no way limit any dorm except outside of Gulf dorm that does not have a stairwell or stairs going to it or in it.

(102) While at Homestead Correctional Institution and housed on Gulf dorm I witnessed TA (that system means that the officer is not a real officer yet he is just a training officer) Richardson get a blow job from a black inmate.

(103) It was count time and I had to use the restroom because I had diarrhea so. I wheeled from my bed in the row directly cattycorner to the officer's station where I had full view of the officer's station to the first stall toilet, after using the toilet I stood up and turned to flush the toilet and I had full view of the officer's legs spread out with an inmate's black head going bobbing up and down.

(104) Obviously the inmate was not checking for lint it was various obvious very what was going on, I did not flush the toilet, I just wheeled around and returned to my cell at that time because I waved to several inmates for them to go up and look for I did not want to be the only one that was a witness to this obvious PREA violation.

(105) I contacted my brother he contacted the governor's office because my writing investigations did no good no one came to see me.

(106) After my brother reported to the governor's office investigator Ryan came to see me a female that recorded part of my conversation She did not record conversation.

14

the section where I told her all the abuses that were going on other than sexual (Richardson) misconduct.  I told her all about the officer Tobias in Gulf dorm bringing in cigarettes and openly distributing them to inmates that were inside grounds to distribute to other inmates.

(107) Officers are allowed to bring in 2 packs of cigarettes per shift.  The cigarettes sell for $10 a cigarette there are 20 cigarettes in a pack that means each pack of cigarettes cost $200 multiply that times 2 packs and each dirty officer is allowed to make $400 per day multiply that times one week which is five days so each officer is allowed to make $2000 per week off of selling cigarettes to inmates.  What usually happens is the officer has a friend or relative have an address where inmates can wire through Western Union allows families' inmates and friends to wire to said officer (or family member or friend of the officer) money and the officer merely brings in the cigarettes.

(108) This allows a dirty correctional officer to make approximately $2000 extra per month on top of his salary. It's interesting to note that Florida Department of Corrections officers are allowed free housing they pay $15 a month for housing and electricity.  They get a salary plus this extra money makes being a correctional officer in the Florida Department of Corrections extremely lucrative. for only b&b requirement.

(109) While at Homestead Correctional Institution I was offered numerous times a lip gloss or a eyebrow pencil that still had the Family Dollar store on it. The price was $.99.  Basically the inmates were giving blow jobs and having sex for officers for a $.99 eye brow pencil or lip gloss.  The inmates then turned around and sold the $.99 lip gloss for $15 worth of canteen.

(110) While at HCI I the entire compound was called into viewing a PREA film.  Assistant Warden Thornton spoke prior to the PREA film and after the PREA film never once did tell the inmates that they could file a lawsuit or in any way get compensation for being coerced into having sex with officers.

(111) My reputation for helping inmates file 1983 Civil Rights violations was well known since the law library did not assist any inmates in filing 1983 Civil Rights violations.

(112) After to reporting to investigator Ryan apparently TA Richardson was contacted he then proceeded to write me a disciplinary report for being in the bathroom during count.  This the time period I witnessed him getting a blow job.  I immediately went to assistant Warden Thornton and he tore up the disciplinary report and told me not to worry about TA Richardson being in the unit anymore.  However, TA Richardson continued to be our unit officer and continued to verbally harass me the entire time I was in Gulf dorm.

(113) One of the inmates that reported witnessing the blow job being given to TA Richardson was inmate Conchita Griffin #c-63! She was transferred to LCI main and given a job in PRIDE as a reward for telling. she did not speak to investigations - H C I - handled it internally.

15

(114) I was left at Homestead to be verbally harassed by Richardson and other of his friends. It was months before I was finally transferred out of HCI.

(115) I filed numerous grievances and continued to report sexual misconduct that was reported to me and help inmates file lawsuits I helped inmate _Carly Freeman_ file a 1983 Civil Rights violation because she had sex with an officer many years ago. However when she applied for a canteen job, the response for her written request to be hired for canteen was that ~~no~~ she had had sex with an officer, therefore she wasn't allowed to have the canteen job.

(116) Because of this written documentation of retaliation I told her about a 1983 Civil Rights lawsuit. It was interesting to note the reason why she had sex with the officer/educational director/teacher. Her daughter when she was sentenced to prison was a teenager and was attempting suicide. This staff person allowed her to use his phone day to talk to her daughter to get over the crisis of getting her beyond the point of wanting to die. She did not want the phone for drugs or illegal ventures just to help her daughter live! Inmates in FDOC are not allowed to use the phone except after 5 pm or on weekend.

Transfer from Homestead Correctional Institution on or about 11-13-2013 to Florida Women's Correctional Institution (FWRC) *about 1-24-14*

(117)   FWRC is the only F.D.O.C. Florida Women's facility that I felt safe and that the officers did not smoke or blow smoke on inmates.

(118)   The food was excellent and we received proper portion size – only at FWRC no other facility provided the proper portions.

(119)   The only issue/problem I had was the law library. The law librarian Ms. _____ refused to allow me to have my court documents typed. She stated that Colorado was responsible since I was an ICC inmate. I wrote a grievance and was immediately transferred back to LCI – Annex on 1-24-2014.

(120)   FWRC is the first and only female F.D.O.C. facility that officers were not smoking and blowing smoke on inmates. There was also no cursing or verbal abuse by officers. Program and work call was on time! There was no contraband on the facility that I knew about nor was there sexual misconduct/rampant with officers and inmates that I observed at the other F.D.O.C. Women's facilities ie: BCI; HCI; LCI – Annex, LCI – Main.

(121)   The warden at FWRC did not tolerate bad officers. Any valid report of misconduct and the officer was shipped out to another facility. The perfect example is Capt. Williams (white female in her 40's) was the officer on duty when inmate _____ died after being denied medical care and requested to be taken to medical. The officer (Capt. Williams) was demoted down to Sgt. Williams. While at LCI – Annex another inmate died while on her (Williams) watch inmate *Ellington* - _____ died of internal blunt trauma after being locked in segregation/lock up after reporting sexual misconduct by Sgt. Q and an inmate.

(122)   Officer Williams appears to be an angry officer who enjoys harassing inmates for petty offenses (like not having their shirt tucked all the way in while she was smoking.

(123)   What I learned while incarcerated at FWRC is that the warden determines whether or not the officers sexually abuse inmates, verbally abuse inmates, smoke, and bring contraband in the facility or not.

/ 7



If other female facilities in F.D.O.C./FWRC followed warden's _____ example there would be less violence/contraband, abuse of inmates and a safer environment.

(124)

( ¹ )   FWRC is the only F.D.O.C. facility that I ever got the proper portion of food in the dining hall.  The food and trays were clean not "greasy" like at LCI, HCI, or BCI.

(125)

( ¹ )   The FWRC kitchen supervisor is the only F.D.O.C. kitchen supervisor that uses the kitchen food budget to feed the inmates.  The other F.D.O.C. kitchen supervisor get a large check at the end of each year for the money they "saved" on its food budget.  This should be an illegal practice, cheating inmates out of food and getting rewarded for doing so.

(126)

( ¹ )   The only problem I had at FWRC is the law library supervisor Ms. _____ refused to allow me typing services and copy services for legal documents to go to the court.  She stated I was an ICC (Interstate Corrections Compact inmate) inmate and I had to get all legal work done in Colorado.

(127)

( ¹ )   I filed a grievance on the denial of access to the court and was immediately transferred to LCI – Annex.

(128)

( ¹ )   As I previously stated FWRC is the only facility I felt safe in.

129

( ¹ )   The only other problem I noticed at FWRC is that the law library supervisor allowed homosexual inmates to work together.  One of the couples – one inmate was kind and tried to help inmates the other of this pair was mean and would not let her partner do her job.  She was constantly kissing her and would not let her work with anyone pretty.  The law library supervisor condoned this behavior.

I do not believe the warden of FWRC was aware of this problem.

*Transfer from FWRC to ACI - anne*

(130)
( )   On or about 1-24-14 I was transferred to Lowell Correctional Institution – Annex from F.W.R.C.

(131)
( )   On or about July 23, 2014 I was violated under PREA by male nurse named Tom Robertson at LCI - Main

(132)
( )   Nurse Robertson (I learned after the abuse occurred) had a reputation for spreading his legs wide and putting the inmate close to him between his legs while drawing blood. Several inmates told me (after I had been violated) that nurse Robertson would put their hand next to his balls/penis and tell them "don't you want to at least feel my balls." He would continue talking till they masturbated him or jerk away and left. From what I heard this was standard practice. It did not matter what the inmate looked like. He was an equal opportunist sex offender/predator.

(133)
( )   Robertson told me he could cure my fear of having my blood drawn. I told him I did not think so that my fear of needles was long standing that the only way I could tolerate it was to keep my eyes closed through out the entire process. When he told me to open my hand, my hand hit flesh and cloth. At first my brain did not comprehend what I had touched and I just sat there with him moving my hand up and down. Once I opened my eyes I immediately jerked my hand back. I saw penis and blue pants. I think I also saw an anchor on his right arm. I was shocked and had words with him and I immediately left.

(134)
( )   I tried to report it to the officer at the desk/station but officer told me she could write me up for "disrespect" when I told him your blood draw nurse was a jerk. The officer cut me off and threatened to lock me. I was too upset to attempt any further discussion.

(~~ ~~)
(~~ ~~)   ~~LCI Annex had the same problems it had in 2001 when I was housed there~~

(135)
( )   ~~I was sexually molested by male nurse Tom Robertson~~ – I filed a complaint with investigator Munnerlyn case number   *IV - 15 - 146*   .

(136)
( )   Robertson had been reported numerous times by other inmates prior to his assault on me. Yet nothing was done to prevent further sexual misconduct. All Warden Mazorra did was not renew his contract when it expired. This is typical of officers who sexually abuse inmates – Nothing is done but the inmate usually goes to lock. I have ~~witnessed~~ several sexual misconducts by staff employees or on heard about

inmates and the officer rarely even get transferred to another facility, yet the inmate gets lock for up to 180 days in confinement.

(137)
( ' )   ~~New~~ Inmates in a 2 man cell must keep their door locked open except for over count. This means any male officer can see the inmate use the toilet, put in Tampex or get dressed. No way to avoid being seen. The ~~raised pod~~/office is staffed frequently by males and they have a full view of naked inmates.

(138)
( ' )   On November 10, 2014 – Colonel Sistrunk put out a memo stating there would be a "privacy barrier" one for each floor – The problem is they are ~~ones~~ 2 by 2 feet tall. We are not 2 ½ feet tall and the raised officer's station still see directly into the cells. It would have been effective if it had been at least 5 feet high. Only view it stops is the inmates sitting in the dayroom, they can't now see you. The

(139)
( ' )   This solution is too little, too late. If an inmate complains they are moved to an open bay dorm ~~when~~ all bathroom activities and dressing is in full view. and officers walk in Bathroom unannounced.

(140)
( ' )   I sent investigator A. Munnerlyn several requests to speak with her but she did not respond to my inmate request, To report Robertson. She did not respond until after my visit ~~with~~ Warden Mozarra see Below.

(141)
( ' )   After sending an inmate request to speak with Warden Mazorra I was called to administration where Colonel E. Sistrunk and Warden Mazorra were waiting for me.

(142)
( ' )   Basically I wanted to tell Warden Mazorra what I intended to tell Miami Herald reporter Julie Brown. I had requested that she be allowed to interview me.

I complained about officers smoking while at dining hall and escorting us to breakfast. Colonel E. Sistrunk asked me "did it kill or hurt you?" I said no but it was illegal and second hand smoke is harmful. She wanted to know if I had filed a grievance and I said I wrote one for my friend but it was denied because she did not name the officer out of fear or retaliation. I told her officers smoked on all shifts that everyone knows about this violation.

(143)
( ' )   She told me she could lock me for disrespect. I told her I did not think I was being disrespectful, that I was just stating the truth. That in Colorado

to be guilty of "disrespect" you have to use profanity or say something extremely rude but that telling the truth was not being disrespectful.

Colonel E. Sistrunk said, well she did not think much of Colorado. I said at least in Colorado inmates are not giving officers blow jobs for 99 cent eyeliners that had dollar store stickers still on them and that officers were not bringing in cigarettes and selling them for $200 per pack. The conservation went down hill from there. She nor I were happy with what the other said.

(144)
( 1 )   Finally Mazorra asked if I had any other complaints I said yes and told him about PREA violations with Robertson ~~so he did his job~~. He stated he fired Robertson so he did his job. He states he would notify investigations to see me. I stated I had written investigator Munnerlyn and sent several inmate requests. The meeting was concluded no one was happy.

(145)
( 1 )   Investigator Munnerlyn met with me and I gave her a tape recorded incident report. She did not give me a file number, said she would get to it me later. She still hasn't. ⁊ I - 15-146 – number on pamphlet she gave me, still no number on report.

new issue (146)   I was called down to administration building and questioned by 2 outside investigations and Tony Watts – Special Agent regarding any knowledge I had of an inmate threatening a Judge. I did not have real knowledge of the incident they were investigating. I did state on record that my pet peeve was officers having sex with inmates. Investigator Munnerlyn was present and she told me she would call me back down but she didn't. Inmate Karla Wooten charged Janelle Jones for doing legal work and then turned her into investigations.

(147)
( 1 )   Numerous inmates have told me they were coerced into having sex with officers and that they were afraid to tell because they would get locked for up to 180 days while F.D.O.C. "investigated". Investigations into misconduct in F.D.O.C. is a joke because only the inmate get punished. Most of the time the officer does not even gets transferred off the facility. So the inmate gets screwed both ways. F.D.O.C. needs to change its policies on PREA violation – officers having sex with inmates. In Sierra dorm where I ~~am~~ currently housed at least 8 inmates have had sex with officers. (alleged)  was ( until 2-20-15- lock up)

(148)
( 1 )   Four inmates have come to me asking for help in finding a Florida attorney so they can file PREA/rape charges against various LCI officers.

I told them my Colorado attorney was attempting to find a Florida attorney that would do a good job on suing F.D.O.C. – on PREA violation – denial of Jewish Services, deliberate indifference and medical neglect. Apparently attorney

Sheppard is going to file a class action on Corizon and I will probably join his class action if I am still housed in F.D.O.C. I was denied my wheelchair that I came in with. It was stolen by an officer at HCI. I fell at F.D.O.C./LCI Annex dining hall and punctured my right eye ball. My right eye is leaking vitreous fluid. Serious injury that could have been prevented if I had had my wheelchair.

(49)
( ) I have repeatedly told my classification officers that F.D.O.C./LCI does not meet my ADA needs.

Every time I filed an ADA accommodation form request or tell on sexual abuse by officers with inmates I am transferred to another facility.

(50)
( ) Every time you are transferred you must file for ADA accommodations. There are no uniform ADA accommodations in F.D.O.C. female facilities. see exhibit _____

(51)
( ) I am legally blind and have been approved for the Hadley School for the Blind on paper (2011) but it has not happened.

(52)
( ) F.D.O.C. gives you paper documentation of what your allowed but it is denied at facility level. ie: Braille machine, recorder to dictate Correspondence, raised locks, etc see exhibit _____

(53) There is no rehabilitation for lifers in F.D.O.C./LCI Annex. Per Governor Scott there is none in F.D.O.C. (article\

See exhibit _____.

(54) Under deliberate indifference, I have experienced the following:

(A)   Been tested for hearing impairment – have bilateral hearing loss. Need hearing aids new ITE – in the ear hearing aids but only given BTE (behind the ear hearing aids).
BTE hearing aids causes bleeding since I need glasses.
Have medical documentation of needing ITE hearing aids but denied ITE hearing aids

(55)
( ) Per LCI Annex doctor Almeyda I can either hear or see, can't do both

(56)
( ) I was provided with 2 right ear hearing aids, that is correct, instead of 1 for the right ear and 1 for the left ear – I was provided with 2 BTE hearing aids for the <u>right ear.</u>

22

(157)

( )   I came into F.D.O.C. with a wheelchair, 'wheelchair pad', orthotic shoes (to correct 1 ½ inch leg length discrepancy, bone spurs of the heel and a plantar fibroma on left foot); 2 pair of hand spica splints for DeQuarian's disease; prescription eye glasses that were taken from me at BCI – I am legally blind and can not see to read or function without glasses.  I have no sight in the left eye and only partial sight in the right eye.  No peripheral vision; have torn meniscus of left knee – had knee braces provided for by Abilities Unlimited in Colorado – buckle up Velcro – not pull on due to hand impairment; have torn rotator cuff of both shoulders so should not be handcuffed behind the back.  All the above have on m R I on X Ray and Specialist reports to document said impairments (hammer toes of left foot – 3 toes X-ray documentation).

(158)

( )   F.D.O.C. LCI - Annex provided me with shoes for diabetics.  The tops of the shoes rub on my hammer toes causing bleeding.  I showed RMC shoe provider that the shoes were not proper for me since they visibly touched my hammer toes.  He said that was all F.D.O.C. provided – nothing else would be provided.  I wrote on shoe acceptance that shoes touched/rubbed hammer toes. see exhibit _____.

(159)

( )   F.D.O.C./HCF and L CI annex – denied knee braces due to cost.  I was issued knee brace pass but not knee braces due to the fact HCI had pull on knee braces and I could not pull them on was told knee braces that wrapped around knee and hand Velcro closures were too expensive so I was denied knee braces.  I was constantly falling up and down stairs and could not walk the almost 300 yards to the dining hall.  My knee was constantly swollen and painful ( still is ) Dr Rodriguez refuses to look at or address my swollen knee (left)

(160) ( )   I am a member of the Montez Remedial Plan in Colorado, but F.D.O.C. does not have to obey Colorado court order per grievance response from Tallahassee and ADA coordinator.

(161) ( )   While housed at LCI – Annex 2011 one of my cellmates was Linda Weeks – she constantly complained to medical of arm and chest pain. Medical told her she was faking and refused to change her job.  She pulled heavy trash cans from units – inside grounds.  After almost 2 years of complaining she finally got to see the doctor that did test.  She was diagnosed with final stage of cancer and died within months of diagnosis.

Respectfully yee Cott
Sworn to Under the Penalty of Perjery this
Affidont is true & corect to the Best of my ability
yee Cott   2 - 15 - 15

(28)

3-10

# INMATE REQUEST

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

15- 0311 Alson

Mail Number: _____
Team Number: _____
Institution: _____

**TO:**
**(Check One)**

☐ Warden
☐ Asst. Warden
☐ Classification
☒ Security
☐ Medical
☐ Mental Health
☐ Dental
☐ Other

| FROM: | Inmate Name Queclove | DC Number 63593C | Quarters T 1/26 | Job Assignment HS | Date 3-2-15 |
|---|---|---|---|---|---|

## REQUEST

Check here if this is an informal grievance ☒

On 2-27-15 while housed as a protective management unit I heard an inmate screaming for help and heard something hitels from in the cell door or many times. There who no officer in the Unit I beat on the door to try to get help But the unit door was shut. Finally sargent orderly heard the screams and called the officer. There is no reason to allow an inmate in confinement to be beate. By house all into inmate in confinement should be housed alone or Panic (help) Buttons should Be placed in each confinement cell. There is no way to get help from Assault or for Emergency medical attention. Remedy house inmate separately and/or install panic help Buttons in each cell or intercom for calling for help -Colowts

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE

**DATE RECEIVED:**

RECEIVED
MAR 02 2015
ASSISTANT WARDEN
PROGRAMS OFFICE

Your Grievance is not in Compliance with ch 33. Please refrain from grieving issues that do not pertain to you. There will be no Panic buttons installed.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is Denied. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

Official (Signature): _____   Date: 3/4/15

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)

Incorporated by Reference in Rule 33-103.005, F.A.C.

*Vegador 2-25-15*

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

## INMATE REQUEST

15-0388   A/SOC

Mail Number: _____
Team Number: _____
Institution: _____

A W P

| TO:<br>(Check One) | ☐ Warden<br>☒ Asst. Warden | ☐ Classification<br>☐ Security | ☐ Medical<br>☐ Mental Health | ☐ Dental<br>☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name<br>*Yell Cort* | DC Number<br>163936 | Quarters<br>S 1101 | Job Assignment<br>H-S | Date<br>2-10-15 |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☒

I am grieving the fact that Warden Maynard
allows DCI-Army officers to smoke on the
compound. He allows officers to burn cigarette
2 packs per day that's 40 cigarette (20 pe pack)
in an 8 hour shift that cigarette to all proving
free officers and stop to smoke cigarette every
12 minute. What other job would allow this. Remedy
make this compound like FWPC. where cigarette are
only allow only in parking lot. My they (cigarette)
were banded completely it possible elements contraband,
PREA Violation and it would help clean up this facility
it would cause elements second hand smoke to stop

All requests will be handled in one of the following ways:  1) Written Information or  2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature) *Yell Cort*       DC#: 163936

*RECEIVED*
*FEB 16 2015*
*ASSISTANT WARDEN*
*PROGRAMS OFFICE*

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE                                    DATE RECEIVED: _____

The warden does not allow officers to burn on
cigarettes or smoke on the compound other than
what is authorized by the department. There are
designated smoking areas on the compound.

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____*denied*_____. (Returned, Denied, or Approved).  If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name): *vml X, N* | Official (Signature): _____ | Date: 2/20/15 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.  If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

32



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL HICKENLOOPER, et al.

     Defendants.

*[handwritten: FDOC ruled they did not have to obey Colorado Court order]*

---

Claim Number 03-129
Category III
Claimant: Jill Coit, #86530
Address of Claimant: HCI, 19000 S.W. 377th Street, #200, Florida City, FL 33034

---

## ORDER OF SPECIAL MASTER

---

    THIS MATTER comes before the Special Master on the notice of change of address filed by Claimant. *Doc. #5033*. On that document, Claimant has handwritten a question concerning the applicability of the Remedial Plan applying to a Florida correctional facility.

    The Special Master cannot provide advice to Claimant or other inmates. The Remedial Plan would have applicability only if Claimant remained a Colorado inmate but was housed in a Florida facility. Claimant should contact class counsel for further clarification.

    IT IS HEREBY ORDERED that Claimant's notice of change address is accepted for filing.

    SIGNED this 22nd day of April, 2011.

               BY THE COURT:

               Richard M. Borchers
               Special Master

2



DEC 2 4 2014

**PART B - RESPONSE**

| COIT, JILL | 163936 | 14-6-37443 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been received, evaluated and referred to the ADA Coordinator, who provided the following information: The court order pertaining to v. Hickenlooper et al. 92-CV-00870-CMA class action Remedial Plan is applicable only to offenders housed in Colorado Department of Corrections. The Colorado court does not have authority over Florida Department of Corrections and therefore the Department is not required to comply with such a court order. You have been advised of this on numerous occasions and it will not be addressed again in the future.

Based on the foregoing information, your appeal is denied.

T. Bowden

|  |  | 12/19/14 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

13

IRNO601

DC#: 163936
R/S: N/F

NAME: COIT, JILL
LOCATION: LOWELL ANNEX

EXTERNAL STATUS: ACTIVE
INTERNAL STATUS: GENERAL POPULATION

FLORIDA DEPARTMENT OF CORRECTIONS
INMATE MANAGEMENT PLAN

01/30/2015          11:14          PAGE: 1

85% DATE: 00/00/0000
TEAM: 65

TRD: 99/98/9999
BED: S1101L1

AM JOB: HOUSEMAN
PM JOB: HOUSEMAN

CUSTODY : CLOSE
VISIT STATUS : APPROVED

ASSESSMENT DATE: 01/30/2015

ASSESSED BY: CLA26 - CUMMINGS, L.A.
FACILITY WHERE ASSESSED: 367 LOWELL ANNEX
PERIOD OF ASSESSMENT: FROM: 01/30/2014  TO: 01/30/2015
CUSTODY DURING ASSESSMENT: CLOSE

## REVIEW PERIOD ADJUSTMENT

AVERAGE RATINGS
WORK/PROGRAM ASSIGNMENTS: ABOVE SATISFACTORY
HOUSING/SECURITY: ABOVE SATISFACTORY

TRANSFER DATA
GOOD ADJUSTMENT TRANSFER: N/A
EDUCATION/VOCATION TRANSFER: N/A

DISCIPLINARY RECORD
MAJOR DR'S THIS PERIOD:        0
MINOR DR'S THIS PERIOD:        0
TOTAL DR'S THIS PERIOD:        0
TOTAL DR'S SINCE ADMISSION:    0

GAIN TIME RECORDS
EARNED G/T THIS PERIOD: LIFE
G/T LOSS THIS PERIOD: LIFE
G/T NET AWARD THIS PERIOD: LIFE
G/T EARNED SINCE ADMISSION: LIFE
G/T LOSS SINCE ADMISSION: LIFE
G/T NET AWARD SINCE ADMISSION: LIFE

OVERALL ADJUSTMENT THIS PERIOD: ABOVE SATISFACTORY

## INTERESTS AND MOTIVATION

WORK ASSIGNMENT INTERESTS:
1. HOUSEMAN
2. N/A
3. N/A

PROGRAMMING INTERESTS:
1. ARTS/DESIGN VC
2. N/A
3. N/A

FAITH BASED PROGRAMMING: N
SI PROGRAMMING: N
RE-ENTRY FACILITY PROGRAMMING: N
P.R.I.D.E. ASSIGNMENT: N

MOTIVATION ASSESSMENT: EXCELLENT

THIS INMATE MANAGEMENT PLAN SHOWS YOUR OVERALL ADJUSTMENT DURING THE STATED REVIEW PERIOD. YOU ARE ENCOURAGED TO REMAIN DR FREE,
MAINTAIN POSITIVE INSTITUTIONAL ADJUSTMENT AND STRIVE FOR POSITIVE REVIEWS IN YOUR SECURITY AND WORK OR PROGRAM RATINGS.
YOU ARE ENCOURAGED TO PARTICIPATE IN SUBSTANCE ABUSE, EDUCATIONAL, VOCATIONAL AND RE-ENTRY PROGRAMS AS THEY BECOME AVAILABLE TO
YOU. THESE PROGRAMS WILL HELP FACILITATE A SUCCESSFUL TRANSITION BACK TO SOCIETY AND YOU WILL BE ASSESSED FOR THESE PROGRAMS
WITHIN A CERTAIN TIME FRAME PRIOR TO RELEASE WHICH WILL BE BASED, IN PART, ON YOUR ADJUSTMENT, NEEDS AND PROGRAM AVAILABILITY.

## CLASSIFICATION OFFICER COMMENTS

PROGRESS REVIEW COMPLETED. SUBJ IS INTERESTED IN GETTING    INTO THE ARCHITECTURAL DRAFTING AND HVAC PROGRAMS. SUBJ
IS ENCOURAGED TO KEEP A POSITIVE ATTITUDE, FOLLOW ALL DOC    RULES AND REGULATIONS, AND REMAIN CC AND DR FREE.
DISCUSSED RELEASE PLAN, PHONE LIST, VISITATION AND ADA       ISSUES. INMATE STATES THAT "HER ADA ISSUES ARE NOT BEING
ADDRESSED".

9/13

I have perfect disciplinary record
not given a C C and you can get a D.R. here
for someching. Mrs administrams given shit terrible in on
here But not male.

From:          "Taylor, Martie" <taylor.martie@MAIL.DC.STATE.FL.US>
To:            'Julie Russell' <Julie.Russell@doc.state.co.us>
Date:          11/1/2011 11:43 AM
Subject:       RE: Colorado Offender Jill Coit #86530

Just last month I got a request from her for a key lock, books on tape, a magnifying device, blank audio tapes, extra sessions in the law library, to take classes from Hadley School for the blind, to order books and educational material for tape player and  computer. Also she wanted to order a Kindle, a job change and to use the computer for classes and homework.
She was granted two extra sessions in the law library on Tuesdays. She was told the Education Department could schedule 6 hours per week to complete correspondence courses on the computer. If copies are needed she would be charged.  She was told she would be allowed to order educational material for the tape player and the computer. She was not allowed to order a kindle and she will not be changed from her houseman's position due to the number of medical restrictions she has.
By the way, Pilar Tournay is no longer with us. Ebony Harvey has taken her place.

From: Julie Russell [mailto:Julie.Russell@doc.state.co.us]
Sent: Tuesday, November 01, 2011 1:31 PM
To: Taylor, Martie; Tournay, Pilar
Cc: Amy Conner; John Martin; Keith Nordell
Subject: Colorado Offender Jill Coit #86530

Good Afternoon,
I was previously in contact with you in March, 2011 to inquire about any possible ADA accommodation requests made by Offender Coit since her transfer to Florida.  At that time, I was advised her only requests were clinical in nature and she had not specified a request for ADA accommodation/modification.

Would you please provide me an update from March to October regarding her ADA accommodations and if she has since made any requests that were approved or denied for any reason?

Thank you for your assistance with this matter,
Julie Russell

Julie Russell-AIC
Work Group Leader
Office of Legal Services, ADA Inmate Coordinator
Colorado Department of Corrections
(719) 226-4248
[cid:image002.jpg@01CC9B9B.E26208I0]



**FLORIDA**
**DEPARTMENT of**
**CORRECTIONS**

Governor
**RICK SCOTT**

Secretary
**kENNETH S. TUCKER**

*An Equal Opportunity Employer*

http://www.dc.state.fl.us

2601 Blair Stone Road • Tallahassee, FL 32399-2500

March 29, 2012

Jill Coit
DC# 163936/Sierra Pod
Lowell C.I.
19225 U. S. Highway 27
Clermont, FL 34715-9025

Inmate Coit:

The records I have available to me show that you have both a hearing and a visual impairment. I show you having passes for a hearing aid, orthopedic shoes, a wrist and knee brace, no being around heights, heave machines, hot water or chemicals. You have a pass to not be cuffed in the back and you are on a low residue, lactose diet.

If you need other passes, such as being allowed to leave your clothes out for the day or a raised locker, you will have to contact medical. You can also request that you be allowed to use a tape recorder for correspondence in the library as that is an accommodation we make for blind inmates. All of your passes are good through 2012 and 2013. The reason you are re-examined when you are moved is to make sure that nothing has been missed at another institution. You will also have to get medical or classification to approve your extra time in the law library.

You were approved previously for a key lock, and you can obtain one from the canteen after you discuss it with medical.

Sincerely,

*Martie Taylor*

Martie F. Taylor
ADA Coordinator
Department of Corrections

**NOTICE TO INMATE**

| Inmate Name | DC Number | Date | Housing Assignment |
|---|---|---|---|
| Coit, Jill | 163936 | 8/26/11 | D2110L |

**This is to advise you of the following information:**

1. Medical staff have received a recommendation to assess you for the need of an impaired inmate assistant who will assist you with reading/writing.

Pursuant to title II of the ADA, a qualified inmate with a documented disability may request an accommodation to allow her to participate in, or benefit by, the programs, services or activities of the department. this request cannot be used to request medical devices, passes, medicine, or any other medical request.

The form to request accommodations is attached.
Auxiliary aids include
1. Braille machines
2. tape player with headphones
3. books and magazines on tape
4. magnifying device
5. key lock
6. cane
7. blank audio tapes if needed for correspondence
8. orientation of facility

I need to check on the status of the initial paperwork submitted at Broward CI.

_____Tate_____
**C.R. Tate**
**Classification Officer**
**Homestead C.I.**

Coit, Jill      163936
Informal Grievances Received 2011

| Log # | Date Received | Subject | Date Responded | Action |
|---|---|---|---|---|
| 1102-058 | 2-15-11 | Papers from transfer | 2-22-11 | A |
| 1103-169 | 3-30-11 | Wants to see Mrs. Tate | 4-4-11 | R |
| 1104-031 | 4-11-11 | Legal mail log | 4-12-11 | D |
| 1104-032 | 4-11-11 | Wear dress? | 4-12-11 | D |
| 1104-033 | 4-11-11 | Wear scarf? | 4-12-11 | D |
| 1104-034 | 4-11-11 | Wants no smoking area | 4-12-11 | D |
| 1104-035 | 4-11-11 | Buy own food? | 4-18-11 | A |
| 1104-057 | 4-18-11 | Copies Colorado papers | 4-22-11 | A |
| 1105-039 | 5-10-11 | Tissue issue | 5-17-11 | A |
| 1105-042 | 5-11-11 | Where is property? | 5-18-11 | D |
| 1105-045 | 5-11-11 | Where is property? | 5-25-11 | D |
| 1105-095 | 5-31-11 | Incident at BCI | - | Not yet |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

(see no. 20 ) or Exhibit K

3 4



**PART B - RESPONSE**

| COIT, JILL | 163936 | 1301-314-009 | LOWELL C.I. | I1102S |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed, and investigated with the following response provided;

As stated in your informal grievance dated 12/14/2012 (log # 12-12326) the recorder has been ordered, you will be notified once it has been put in place in the library. The tape recorder will be the property of LCI and will not follow you if you are transferred.

Based on the aforementioned, your request for administrative remedy or appeal is hereby denied

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Bureau of Inmate Grievance Appeals

M. Blanks

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

MAY 2 1 2013

23

ej Exhibit 21

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1405-314-075 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

The response you received to informal grievance # 14-0506 adequately addressed your issue. I have answered all the ADA requests received in this office. According to the attached accommodation request, you were housed at FWRC when it was submitted. You were transferred before the request to FWRC could be answered; therefore your issue was moot at the facility. Anytime you are transferred you must submit a request to your new facility as the accommodations may differ. Lowell CI has not denied your accommodations. The same issue about your library hours was addressed in the grievance #'s 1403-314-185 and 1403-314-186. You should refer back to those grievances for reference.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

_____
SIGNATURE AND TYPED OR PRINTED NAME
OF EMPLOYEE RESPONDING

_____   05/13/14
SIGNATURE OF WARDEN, ASST. WARDEN, OR   DATE
SECRETARY'S REPRESENTATIVE

COPY DISTRIBUTION -INSTITUTION / FACILITY
   (2 Copies) Inmate
   (1 Copy) Inmate's File
   (1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
   (1 Copy) Inmate
   (1 Copy) Inmate's File - Inst./Facility
   (1 Copy) C.O. Inmate File
   (1 Copy) Retained by Official Responding

Mailed
05-15-14

8

*enpounded l2*
*2-3-15*

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1501-314-156 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

You were approved for a clear backpack. That is not what was sent in. Backpacks are not approved, as you are allowed to use the blue mesh canteen bags on th back of your wheelchair.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

*Dr. J. Rodriguez*
*Medical Director*
*LOWELL C.I.*

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 11/29/15 DATE |
|---|---|---|

*Mailed 01-29-15*

| COPY DISTRIBUTION -INSTITUTION / FACILITY | COPY DISTRIBUTION - CENTRAL OFFICE |
|---|---|
| (2 Copies) Inmate | (1 Copy) Inmate |
| (1 Copy) Inmate's File | (1 Copy) Inmate's File - Inst./Facility |
| (1 Copy) Retained by Official Responding | (1 Copy) C.O. Inmate File |
| | (1 Copy) Retained by Official Responding |

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1202-314-106 | LOWELL C.I. | I1102S |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Amended response: 6/15/12

Your grievance has been received, reviewed and responded.

Per Librarian Ms. Reynolds, when you show a legal deadline, you have been approved for library access 5 days per week plus the Saturday walk-in schedule for a total of 6 days per week. When you do not show a deadline, you have been approved for 3 days in the library plus the Saturday walk-in for a total of 4 days per week. During these times you are given computer access.

Since you issue has been addressed, your grievance is moot and being returned without further processing.

Assistant Warden D. Lumpkin

| | | 6/14/12 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
   (1 Copy) Inmate's File
   (1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
   (1 Copy) Inmate's File - Inst./Facility
   (1 Copy) C.O. Inmate File
   (1 Copy) Retained by Official Responding

RECEIVED
FEB 2 1 2013
HOMESTEAD CI
Asst. Warden's Office

15

B.

## CONSULTANT'S REPORT

**NO PROCEDURE(S) MAY BE PERFORMED WITHOUT PRIOR APPROVAL BY THE REGIONAL MEDICAL EXECUTIVE DIRECTOR, DEPARTMENT OF CORRECTIONS.**

Additional History:

67 WF —     Inf Altitudinal defect
            OD   2° Stroke

Findings:

BVA  20/50
     LP

Recommendations:

Pt is legally blind Exceed
on criteria for Visual Field
And is eligible for services
for the Legally Blind.

Consultant Signature/Stamp:

S. RAZDAN M.D.
CHO, Chief Health Officer
HOMESTEAD CI

Date: 5-12-11

## IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

Inmate Name  COTT, JILL
DC#  163936     Race/Sex  W/F
Date of Birth  6/11/1944
Institution  HOM CI
EOS DATE:  LIFE

USE ADDITIONAL SHEET(S) AS NECESSARY

Form is not to be amended, revised or altered without approval of the Deputy Assistant Secretary of Health Services Administration

DC4-702 (Revised 10/05) Page 2 of 2

Florida DOC.

*Whatever request a [illegible] user was documented for ADA inmate Disabilities needs.*

## REVIEWER'S ACTION

**TYPE OF ADA ISSUE:**
- ❑ **Program Service or Activity Access (not requiring structural modification)**
- ❑ **Auxiliary Aid or Device Requested**
- ❑ **Physical Access (requiring structural modification)**
- ❑ **Other** _____

Discussion of Findings: _____
_____
_____
_____
_____

_____          _____
Date Inmate Was Interviewed                Person Who Conducted Interview

**DISPOSITION**

_____ Granted        _____ Denied        ☒ Modified/Partially Granted

Basis of Decision: *All transfer issues go through classification. You have use of computers in the library for correspondence courses only not for general use.*
_____
_____

**Note:** If disposition is based upon information provided by other staff or other resources, specify the resource or staff and the information provided below. If the request is granted, specify the process by which the modification or accommodation will be provided, in the space below, with time frames if appropriate.

_____
_____
_____

_____    _____    _____
Disposition Rendered By       Title *Asst/AWD*  Institution/Facility *Lowell CI*

*9/17/14*
_____
Date Returned to Inmate

**FLORIDA DEPARTMENT OF CORRECTIONS**
**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**

**This form is not to be used to request medical devices, medical passes or to request any type of medical care. These issues must be directed to the medical department in accordance with chapter 33-103. This form is to be used to request access to the department's services, programs or activities only.**

You may use this form to request specific reasonable modification or accommodation which, if granted would enable you to participate in a service, activity or program offered by the Department/Institution/Facility, for which you are otherwise qualified/eligible to participate.

Submit this completed form to the Institution or facility's ADA Intake Officer (Asst. Warden for Programs or other designee). A decision will be rendered within 10 days of receipt at the Intake Officer's office and the completed form will be returned to you. If the decision made regarding your request is a denial or a modification of the original request this form will be sent to the Central Office ADA Coordinator for his/her review. If the ADA Coordinator concurs with the Intake Officer's decision you will be notified within 10 days of receipt of the form in the ADA Coordinator's Office. If the ADA Coordinator does not agree with the decision, after consultation with the appropriate directors, you will be notified within 20 days of the decision rendered in Central Office.

If you are not satisfied with the ADA Coordinator's review decision you may follow the Inmate Grievance Procedure and will be given an extension of the time required to file a formal grievance alleging a violation of the ADA.

_Coit, Jill_     _163936_     _FQ2R2S LCI—army_
Inmate Name (Print)     DC#     Institution/Facility

## MODIFICATION OR ACCOMMODATION REQUESTED

Description of disability: _Mobility - Wheelchair, hand; Vision and hearing disability and Hand impairment getting worse_

What verification do you have of your disability? _Medical Records (See attached)_

Describe the problem: _Need law library access - When you show a legal deadline, you have been approved for library access 5 days per week plus the Saturday walk-in schedule for a total of 6 days per week. When you do not show a deadline, you have been approved for 3 days in the library plus the Saturday walk-in for a total of 4 days per week. During those times you are given computer access. 6 accessing -_

What specific modification or accommodation is required? _See attached page_

_[signature]_     _5-29-14_
Inmate Signature     Date Signed

_for LCI - army_

DC2-530 (Effective 1/13)     Incorporated by Reference in Rule 33-210.201, F.A.C.     _635A_

**What specific modification or accommodation is required?** *p.m and wil 8 m*

*(tues, wed, thur* 1. Law Library access for research — *6 sessions per week - 3 full*
*and 7 mites)* *days -*

2. Tape recorder for correspondence with blank tapes

3. Dragon program for speech recognition for education and legal access. Inmate pays for all education and computer programs, books, and tapes.

4. Computer access for educational and correspondence courses. (Scheduled 6 hours per week. Allowed to order educational material for the tape player *and* computer)

5. Enlarged pens for writing for hand disability

6. Inmate aid assigned for daily living assistance.

7. ~~Canteen access once per week.~~

8. Backpack and raised lock with key lock.   *medical pass (have)*

9. Captioned television viewing. *( I have) - lower it or enlarge screen.*

10. Sign language classes/program, books, and flash cards for education.   *(med. have pass already)*

11. Additional time to eat, complete daily activities, and get around facility.

12. Comply with Montez Remedial Plan as best as you can. — *Raised lockers.*

13. Leave 15 minutes early for call outs.

14. Inmate pay for all books, computer programs, and educational materials.

15. Medical appliances kept out as needed. Separate property.

*16 Raised Locker - Have Medical pass and is part of Montz - Just put one locker on top of another. That is what L C I have did - also # C I. - No extra cost to you -*

*It hurts me to write -*

*17, Braille Machine - for Hadley School for the Blind and Braille equipment*

*18. allowed 6 hours on computer for school + educational opportunities*

*6 J-B*

# The Hadley School for the Blind
# EYE REPORT

## FOR U.S. STUDENTS AND APPLICANTS ONLY

To Be Completed By A Physician, Eye Specialist Or Blindness Professional

Patient's name: _Jill Coit #163936_

Street address: _11120 NW Gainsville Rd_

City: _Ocala_     State: _Fl_     Postal Code: _34482_

|  | O.D. | O.S. |  | O.D. | O.S. |
|---|---|---|---|---|---|
| Visual acuity | 20/_200_ | 20/____ | Object perception | ____ | ____ |
| Vision field (degree) | ____ | ____ | Hand Movements | ____ | ____ |
| Totally blind | ____ | ✓ | Counts Fingers | ____ | ____ |
| Light perception | ____ | ✓ |  |  |  |

1. Does this patient meet the standard definition of legal blindness?
   ☒ Yes   ☐ No
   Is the condition: ☒ Progressive   ☐ Stable   ☐ Unstable

2. Does the vision loss significantly affect daily living? ☒ Yes ☐ No
   If yes, and this individual is not legally blind, provide supportive
   documentation and indicate how: _____

3. Diagnosis (each eye): _Legally Blind, Floates OD_

☒ Physician   ☐ Eye Specialist   ☐ Blindness Professional

Name: _Cesar A. Calderon_

Street address: _11120 NW Gainsville Rd, Ocala_

City: _Ocala_     State: _Fl_     Postal Code: _34482_

Area code and phone number: _(401) 369-6643, 6646_

**RETURN PROMPTLY TO:**   The Hadley School for the Blind
                          Student Services Department
                          700 Elm Street, Winnetka, IL 60093-2554

Telephone: 800-526-9909      Fax: 847-446-9820

Physician or eye specialist's:

Signature: _____ M.D. Date: _02-23-12_

16

9-22-14

## Request for Correspondence Course Approval

**Name:** _Jell Cott_      **D.C.#:** _163986_      **Dorm/Bed:** _Sierra 1101-L_

The following requirements shall apply to all correspondence study courses:
1. All inmate participation in correspondence study courses must be approved in advance by the warden or warden's designee, and only materials that are specifically approved may be received. Any course materials received without prior written approval, or not in compliance with security requirements, will be rejected and handled as contraband, in accordance with Rules 33-802.201 and 33-802.203, F.A.C.
2. All materials must be mailed directly from the course provider to the institution via U.S. Postal Service.
3. The department will not pay any expense associated with an inmate's participation in a correspondence study program. Inmates will not be reimbursed for educational correspondence study materials that are rejected by the department.
4. Inmates in close management or on death row will not be _____ hardbound course materials.
5. Correspondence study courses that require that inmates h___ ___ ___ Internet will not be approved.

**Name of Course Provider & Complete Address:** _Hadley School for the blind – 700 Elm Street, Wennetta, Ill 60093_

**Course Name & Code:** _Braille #375_

**Cost of Correspondence Course:** $ _free for course - Supplies paid for by family if needed_

**Course Timeframe & Anticipated Completion Date:** _2 years_

**Will course materials be received on an ongoing basis:** ☒ Yes  ☐ No

**Will participation in this course require receipt of non-print media and access to audiovisual equipment?**
☐ Yes  ☒ No   If YES, what equipment? _____

### SPECIFIC LIST OF COURSE MATERIALS

**Printed material** (Specify title or description of material and quantity): _Text Books, Braille Paper (500 sheets + tablet), paper (250 sheets) Braille wooden erasers, signature guide, note taking Slate, plastic ruler, standard styles, enlarged Page Slate, index Card Holder_

**Writing Supplies** (Specify type and quantity): _(1) gum erasers, colored hi lighters, _____ colored large (12) pencils, plastic index Box; Plastic Box for supplies; Braille Paper (500 sheets), paper (250 sheets); and 25 file folders enaromic Black pens (2) + NO METAL_

**Non-print media** (Specify title, format, and quantity): _____

**Other** (Specify and indicate quantity): _Braille Machine (1) See ADA accomodation request form for picture & details_

### INMATES DO NOT WRITE BELOW THIS LINE

**REQUEST IS:** ☒ Approved   ☐ Approved In Part (See Comments)   ☐ Disapproved

**Comments:** _____

_P._____   9-23-14_
**Correspondence Study Coordinator / Date**

_____   9/24/14_
**Warden / Date**

cc: Warden or Designee (approving official), Institution Mailroom, Property Sergeant, Inmate Record
DC5-155 (Revised 9/06)

17

**Department of Corrections**

**Inmate Personal Property List**
**(Please Print)**

Inmate Name Coit, Jill

Institution LCI Annex

Number 163939

Date: 12-1-14

| Item | Number | ID # | Requested Disposition | Final Disposition | Date | Officer's Initials | Inmate's Initials |
|---|---|---|---|---|---|---|---|
| "Hadley School course catalogs" | 2 | ED Books | R | R | 12-1-14 | KD | R |
| Braille slate | 1 | Grey | R | R | 12-1-14 | KD | r |
| Braille stylus | 1 | green grey tip | R | R | 12-1-14 | KD | w |
| end | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | 1 | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Cash Total Amount** _____  Retained

**Amount Deposited** _____

( )   I agree to mail the above items marked M from my own funds.
( )   I do not have the necessary funds for postage.  However, I will obtain the necessary funds during the thirty (30) days allowed for disposition of these items.
( )   I agree that the above items marked D be disposed of by the state.

Request Items be Mailed To:

Name: _____

Address: _____

Witness: _____

Signature of Officer   Sgt. K. d

Institution or Community Facility   LCI Annex

Rank _____   Date 12-1-14

Signature of Inmate   Jill Coit

Inmate Number 163939   Date 12-1-14

**Distribution:**
White   -- To inmate when property is collected
Yellow   -- To property room when property is collected
Pink   -- To inmate's Personal Property file
Goldenrod   -- In package being mailed home or to inmate in case items are forfeited

**Symbols Indicate:**   D - Dispose
F - Forfeited
L - Lost/stolen
M - To be mailed

R - Return to inmate
S - Stored
W - Worn out

DC6-224 (Revised 11-00)

Incorporated by Reference in Rule 33-602.201, F.A.C.



NATIONAL FEDERATION
OF THE BLIND
*Live the life you want.*

Jill Coit – 163936 – S1101
Lowell Correctional Institute Annex
11120 N.W. Gainesville Road
Ocala, FL  34482-1479

PROVIDED TO:
LOWELL CORRECTIONAL ANNEX ON:

JAN 2 1 2015

BY: _____ FOR MAILING

Dear Jill

Thank you for your letter to the National Federation of the Blind. Braille paper can be purchased from our Independence Market.  You can contact the Market by mail at the mailing address below, or by telephone at 410-659-9314, extension 2216. The least expensive Braille paper is 100 sheets for $3.00 plus a $4.75 handling fee on all orders up to fifty dollars.

There are contractions to learn beyond the Braille alphabet. To purchase the Handbook of Braille Contractions, please visit https://ecommerce.nfb.org/asp/prodtype.asp?prodtype=50&ph=&keywords=&recor= &SearchFor=&PT_ID.

To learn about our Braille transcription course, please visit our website at https://nfb.org/braille-certification.

I hope this information helps.

Sincerely,

(Mrs.) Patricia A. Maurer
Director of Community Relations
Jernigan Institute
NATIONAL FEDERATION OF THE BLIND

PAM/jbw

*15*

MD 21230 | 410 659 9314 | www.nfb.org

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

Mail Number: _____
Team Number: _____
Institution: _____

TO: (Check One)
☐ Warden
☒ Asst. Warden
☐ Classification
☐ Security
☐ Medical
☐ Mental Health
☐ Dental
☐ Other

| FROM: Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|
| Jill Coit | 163936 | S-4109 | Horn | 1-25-12 |

**REQUEST**                              Check here if this is an informal grievance ☐

Dear AW (Ms) Poole,

① Would you please schedule me for the 6 hours per week to take classes in the Educational Department per Tallahassee letting Colorado I was allowed this.

② How do I go about ordering Educational Materials and computer programs? May I speak with you about this issue. I realize these are privileges and I do appreciate your helping me. See attached correspondence. Please send Back attachments. Also include attorney letter for ADA accommodations. X Do you want a copy of the monthly Remedial Plan? I will

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing. send it to you if you want it.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                              DATE RECEIVED: _____

Tower does not have any computer Educational classes for inmates.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: 1-26-12 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )

Incorporated by Reference in Rule 33-103.019, F.A.C.



**PART B - RESPONSE**

| COIT, JILL | 163936 | 1409-314-158 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

There are computers in education department for inmate use as it relates to GED. I spoke with Mr. Glynn, academic teacher who has a office in the law library. He advised he can schedule you hours per week to use the computers there. There is no space in the education building at the annex for additional computers; for that reason the computer you are referring to for use is in the library for correspondance classes only.  Mr. Glynn will meet with you to determined the needs of your request.  If it is authorized, you will be notified.

Approved in part in that you have use of a computer.

_____  _____  9/17/14
SIGNATURE AND TYPED OR PRINTED NAME          SIGNATURE OF WARDEN, ASST. WARDEN, OR          DATE
OF EMPLOYEE RESPONDING                                    SECRETARY'S REPRESENTATIVE

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

## SOFTWARE

ILA supplies many programs not presented on these pages. We have demo programs and detailed brochures for most of our computer software. We always carry the most recent voice recognition, screen magnification, screen reader and typing training versions of software. We can provide upgrades from previous versions as well as a full line of site, district and network licenses. Call our tech support department at 800-537-2118 for information and assistance.

# SCREEN MAGNIFICATION AND SCREEN READER SOFTWARE

## iZoom Magnifier/Reader on CD and USB

EN ESPAÑOL

As with all the iZoom family of products, iZoom Standard incorporates ground breaking screen magnification/reading software into an easy to use package. iZoom Standard on CD is perfect for individuals who primarily use only one computer. iZoom USB requires no installation and no administrative rights needed. No license restrictions.




| | | |
|---|---|---|
| #885250 | CD | $299.00 |
| #885250 | CD SPANISH | 299.00 |
| #885300 | USB | 399.00 |
| #885300 | USB SPANISH | 399.00 |

## ZoomText Magnifier

ai squared
making accessibility simple



**ZoomText products work with all current operating systems**

Magnify text on screen from 1X up to 36X

| | | |
|---|---|---|
| #870100 | ZoomText Magnifier | $399.00 |
| #870101 | Extended Service Plan w/Purchase | 199.00 |
| #870104 | Extended Service Plan only | 249.00 |
| #870111 | ZoomText Magnifier USB Drive Single User Domestic | 499.00 |

**INTERNATIONAL VERSION AVAILABLE**

## ZoomText Magnifier/Reader



Integrates all the magnification features of ZoomText Magnifier with a fully-synchronized screen-reading program.

| | | |
|---|---|---|
| #870157 | ZoomText Magnifier/Reader | $599.00 |
| #870158 | Extended Service Plan w/Purchase | 199.00 |
| #870104 | Extended Service Plan only | 249.00 |
| #870110 | ZoomText Magnifier/Reader USB Drive Single User Domestic | 695.00 |

**INTERNATIONAL VERSION AVAILABLE**

## ZoomText Express

A 2X screen magnifier that includes adjustable pointer sizes and colors, and high contrast cursor locators. Reverse color and tint options also available to reduce the effects of glare.



**#870118 Download $55.95**
**Package     59.95**



**NOT FOR SALE**
in the following states:
Arizona, California, Oregon,
Nevada, Utah, Washington.

# Dragon™ Naturally Speaking® Speech Recognition Software

Talk naturally to your computer with the included microphone, and the words appear on the screen. Integrated with Word Perfect and Word, commands are displayed right in the menu bar. The user can speak commands to proofread, revise and edit text and listen to and dictate e-mail. Switch between applications by telling the computer which program to open.

**#859075   $199.00**

## SOFTWARE RETURN POLICY

All software is not returnable once opened. If for any reason you ordered the wrong software or received the wrong software in error, please contact customer service immediately at 800.537.2118 for a return merchandise authorization (RMA). We can only accept software returns if it is in the original, sealed packaging from the manufacturer.




# ORTHOTIC PATIENT NOTES

**Patient Name:** Jill Coit
**Orthotic Device:** (B) WHFO
**Date:** 6/12-08
**Side:** Wrists
**Diagnosis:** Carpal tunnel syndrome
**Physician:** Dr. Martinez-Hochbe
**Occupation:** —
**Hobbies/Interest:** —
**Height:** 5'6"  **Weight:** 152 lbs  **Age:** 63 yo   **Language:** English

## SUBJECTIVE
**Patient states the goal is** " fitting and delivery of (B) WHFOs and ½" internal shoelift (L) leg.

## OBJECTIVE
1. **Where was the patient seen:** office
2. **How did the patient arrive:** w/ wicane
3. **Who accompanied the patient:** guards
4. **Skin status:** Intact (Compromised) (what and where) (R) wrist swollen

5. **ROM and muscle strength:** —

6. **Brief medical history including complicating factors in addition to diagnosis:** —

7. **Main purpose of this visit:** Fitting and delivery of her (B) WHFOs. She received Thermal RX-D-ring WHFO size SMALL, (R)x lea and (L)x lea.
8. **Extend of service provided during THIS visit:** ½" internal shoelift installed in (L) shoe to compensate leg length discrepancy. The
9. **List appropriate verbal or written instructions given to the patient / care giver:** expected 1½" needed lift do not fit in her shoes. Pt in process to try to get orthopedic shoes that the 1½" lift could be
10. **Did the patient / care giver understand the instructions:** YES  NO    installed.

## ASSESSMENT
**The patient assessment**  Pt advised to wear her WHFOs as much as she needs to. I recommend that she continues heat packs to her wrists and would use speech recognizing program for typing instead of her hands on keyboard. This was documented
## PLAN in her facility file.
1. **Is follow-up appointment scheduled:** YES (NO)
2. **Date for next appointment:** as needed
3. **Adjustment completed:** (YES)  NO   The patient instructed to contact office if additional service is required.
4. **Delivery completed:** (YES)  NO   The patient instructed to contact office if additional service is required.

**Practitioner Signature** Caitn Baumn CP   **Date** 6/12-08

```
======== QUERY ADMISSION SUMMARY ========          07/01/2008
= RECEPTION/DIAG                                    DW/UNIT2   PRES FACIL
Doc NO: 86530        COIT, JILL
========================================================================
Medical Level: 3  Qual Code: P   Desc: PERMANENT    Dtd Assigned: 02/27/2008
Dental Level: 2  Qual Code:      Desc:              Dtd Assigned: 05/10/1999
     Allergy: YES        Medical Hold: NO
+ Medical Housing Restrictions          Medical Assignment Restrictions
Date Assgnd  Restriction  Qualifier    Date Assgnd  Restriction  Qualifier
-----------  -----------  ---------    -----------  -----------  ---------
 06/12/2008  OTHER MEDS   TEMPORARY     03/15/2007  NO BENDING   TEMPORARY
 06/19/2008  OTHER MEDS   TEMPORARY     03/15/2007  NOHVY-LIFT   TEMPORARY
 06/27/2008  OTHR EQUIP   TEMPORARY     03/15/2007  NOHVY-MACH   TEMPORARY
Restriction   pt should not type or write except for signing
Comments


Med Lvl       Medical does not authorize extra pillows, blankets, or
Comments      mattresses, HANDICAPPED CELL

Diagnostic    According to the Colorado Department of Corrections
Narrative     Clinical
Press ESC key to Return to Housing Restriction Field
```

*Monts Remedial Plan   M R P   Monts Remedial Plan*
*ill document in*
*medical file. Under Monts*

G. MAINTENANCE OF ACCESSIBLE FEATURES AND EQUIPMENT

The DOC has a duty to maintain structural features and equipment in operable working conditions in order to make the prison system's services, programs, and activities accessible to disabled inmates. Isolated or temporary interruptions in service or access due to maintenance or repairs are not prohibited, as long as the facility is taking prompt action to correct the deficiency.

## XVII. LIBRARY EQUIPMENT

Electronic equipment, such as audio equipment, tape recorders, and computers will be available for use and when appropriate, to be checked out, in the general library and other areas where appropriate, for use by inmates with disabilities. Each facility will be responsible for training staff and inmates with disabilities, in the proper use of the equipment. Each facility shall provide a list of such equipment available to inmates with disabilities to the AIC and submit a protocol for the use of this equipment to be approved by the AIC. There will be a protocol, approved by the AIC that will be used for each facility. The librarians shall maintain a list of resources regarding available accommodations which can be provided, such as books-on-tape and inter-library loan programs.

## XVIII. INSTITUTION PROCEDURES

A. ORIENTATION AT PLACEMENT FACILITY

When an inmate with a disability initially arrives at a new facility, the case manager assigned to the inmate shall ensure that during the orientation process, the inmate is provided relevant information regarding the accommodations and/or assistive devices that will be made available to that inmate to accommodate his/her needs. The inmate shall also be informed of the availability of the AIC for assistance with programs, services or benefits at DOC and of the ADA Grievance Process. The information shall be provided in a format that is accessible to the inmate.

B. NOTICES, ANNOUNCEMENTS, AND ALARMS

1. Written and/or Recorded Materials

Each designated facility shall ensure that the printed materials that are distributed to inmates are accessible to inmates with disabilities. Accommodations such as large print, computer assisted devices, audio tapes, and Braille will be made available on a case by case basis. When such assistive devices are not adequate to communicate with the inmate, then it is the responsibility of the inmate's case manager to ensure that the inmate is aware of the distributed material. Each facility will adopt an Implementation/Adjustments (I/A) or an Operational Memorandum (O/M) that identifies a position that will be responsible for providing the assistance and equipment necessary to all inmates with disabilities to ensure that inmates who have

*Def. Set # 73q*

## INDIANA UNIVERSITY
### OFFICE OF THE REGISTRAR

OFFICIAL RECORD
COTT, JILL
BIRTHDATE: 06-11-44

PRINT DATE: 12-12-2007
UNIVERSITY ID: 0001217504  XXX-XX-4515

| UNIV COLORADO BOULDR 1986 | | |
|---|---|---|
| W UNIVERSE IN CLASSROOM | EDUC UND1 | 1.0 |
| TRANSFER HOURS  1.0 | | |
| | | |
| ANCILLA COLL 1986-88 | | |
| *THIS EVALUATION HAS MULTIPLE PARTS | | |
| THE SOLAR SYSTEM | AST A100 | 3.0 |
| INTRO TO ACCOUNTING 1 | BUS A201 | 3.0 |
| COMPUTER PROGRAMMING | CSCI C101 | 3.0 |
| INTRO TO MICROECONOMICS | ECON E103 | 3.0 |
| INTRO TO MACROECONOMICS | ECON E104 | 3.0 |
| EXP PERS DEMANDS OF TCH: LAB EXP | EDUC P201 | 3.0 |
| GENERAL EDUC PSYCHOLOGY | EDUC P250 | 4.0 |
| INTRO TO THE ENGLISH LANGUAGE | ENG G205 | 3.0 |
| ART APPRECIATION | FINA H100 | 3.0 |
| PHYSICAL GEOLOGY | GEOL G111 | 3.0 |
| HISTORY OF WESTERN CIVILIZ 1 | HIST H113 | 3.0 |
| MATH FOR ELEMENTARY TEACHERS 1 | MATH T101 | 3.0 |
| MATH FOR ELEMENTARY TEACHERS 2 | MATR T102 | 3.0 |
| ELEMENTARY ETHICS | PHIL P140 | 3.0 |
| SOCIAL PROBLEMS | SOC S163 | 3.0 |
| DISCUSSION & GROUP METHODS | SPCH S229 | 3.0 |
| TRANSFER HOURS  49.0 | | |

| SOUTH BEND EDUCATION | 1ST SEM 1988-89 | |
|---|---|---|
| GENERAL METHODS | EDUC M310 | 2.0 A |
| AUDIOVISUAL PROD OF MATERIALS | EDUC R301 | 1.0 S |
| ELEMENTARY COMPOSITION 1 | ENG W131 | 3.0 B+ |
| INTRO TO AMERICAN POLITICS | POLS Y103 | 3.0 B |
| CONTEMPORARY ISSUES IN PSY | PSY P104 | 3.0 A- |
| ELEMENTARY SPANISH 1 | SPAN S101 | 3.0 W |
| SEM HRS 11.0  PTS  38.0  GPA 3.45  HRS PASS 12.0 | | |

| SOUTH BEND EDUCATION | 2ND SEM 1988-89 | |
|---|---|---|
| INTRO TO EXCEPTIONAL CHILDREN | EDUC K205 | 3.0 W |
| INTRODUCTORY PRACT IN SPEC EDUC | EDUC K200 | 0.0 W |
| PRINCIPLES OF SOCIOLOGY | SOC S161 | 3.0 W |
| WOMEN: A PSYCHOLOGICAL PERSPECT | PSY P460 | 3.0 W |
| ABNORMAL PSYCHOLOGY | PSY P324 | 3.0 B |
| GENERAL PSYCHOLOGY | PSY P103 | 3.0 A |
| PUBLIC SPEAKING | SPCH S121 | 3.0 B |
| SEM HRS  9.0  PTS  30.0  GPA 3.33  HRS PASS  9.0 | | |

| PURDUE UNIV WESTVLLE 1988-89 | | |
|---|---|---|
| AMERICAN LITERATURE 1800-1865 | ENG L351 | 3.0 |
| AMERICAN LITERATURE 1865-1914 | ENG L352 | 3.0 |
| TRANSFER HOURS  6.0 | | |

| SOUTH BEND EDUCATION | 1ST SEM 1989-90 | |
|---|---|---|
| PSYCHOLOGY OF AGING | PSY P316 | 3.0 A |
| THE PSYCHOLOGY OF LEARNING | PSY P325 | 3.0 W |

| PSY OF CHILDHOOD & ADOLESCENCE | PSY P316 | 3.0 A |
|---|---|---|
| READINGS AND RES IN PSYCHOLOGY | PSY P495 | 1.0 A |
| INTRODUCTORY PRACT IN SPEC EDUC | EDUC K200 | 0.0 S |
| INTRO TO EXCEPTIONAL CHILDREN | EDUC K205 | 3.0 A |
| ELEMENTARY SPANISH 1 | SPAN S101 | 3.0 A |
| SEM HRS 13.0  PTS  44.2  GPA 3.40  HRS PASS 13.0 | | |

| SOUTH BEND EDUCATION | 2ND SEM 1989-90 | |
|---|---|---|
| CULTURE & SOCIETY | ANTH E105 | 3.0 A |
| EDUCATION & AMERICAN CULTURE | EDUC H340 | 3.0 C+ |
| METH OF EXPERIMENTAL PSYCHOLOGY | PSY P211 | 3.0 W |
| SUICIDE AND DEPRESSION | PSY P390 | 3.0 A |
| READINGS AND RES IN PSYCHOLOGY | PSY P495 | 3.0 A |
| FIELD EXPERIENCE IN SOCIOLOGY | SOC S494 | 3.0 A- |
| SEM HRS 12.0  PTS  38.1  GPA 3.18  HRS PASS 12.0 | | |

UNDERGRADUATE GPA SUMMARY
I.U. GPA HRS    45.0   GPA POINTS  150.3  GPA 3.34
TRANSFER HRS    56.0   TOTAL I.U. HRS PASSED  46.0

----ACADEMIC OBJECTIVE----
AS OF SECOND SEMESTER 1989-90
SOUTH BEND CAMPUS
EDUCATION
BACCALAUREATE, SENIOR
MAJOR:  SECONDARY EDUCATION

---END OF RECORD---

OFFICIAL UNIVERSITY TRANSCRIPT IS PRINTED ON CRIMSON SCRIP-SAFE PAPER AND DOES NOT REQUIRE A RAISED SEAL

Cathy Buckman, Assistant Vice Chancellor
Enrollment Services and Registrar

...ccordance with the Family Educational Rights and Privacy Act of 1974, information from this transcript may not be released to a third party ...out written consent of the student. Transcript explanation on reverse side.

2, 55

# UNIVERSITY OF NORTHERN COLORADO

Registrar's Office
Greeley, Colorado 80639
(970) 351-2231
www.registrar.unco.edu

| ACT/SAT Code | 0502 |
| FICE Code | 001349 |

Page: 1

**Record of:** Jill Coit

**Date Issued:** 20-NOV-2007

**Student ID:** ****4515

**Level:** Undergraduate

Course Level: Undergraduate

**Comments:**
UNC converted to a semester system fall 1988.
Beginning with fall 1976 term, all credits display
as semester/semester equivalent credits.

**Transfer Credit**
MANCHESTER COL N MANCHESTER,
IN 78-79   50 SH 10-91
U OF CO BOULDER 86,
1 SH 10-91
ANCILLA DOMINI COL DONALDSON,
IN 86-89 46 SH 10-91
PURDUE U W LAFAYETTE, IN
88-89 9 SH 10-91
COL OF MARIN KENTFIELD, CA
89 3 SH 10-91
IN U SOUTH BEND 88-90
30.50 SH 10-91

| SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|---|--------------|------|-----|-----|---|

**TRANSFER CREDIT ACCEPTED BY THE INSTITUTION:**

93            Aims Community College
Ehrs: 6.66 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00

**INSTITUTION CREDIT:**

Summer 1991
| ENG | 123 | | COLLEGE RESEARCH PAPER | 3.00 | A | 12.00 | |
| HISP | 101 | | INTRO MEX AMER STUDIES | 3.00 | B | 9.00 | |
| SOC | 332 | | SOCIAL PSYCHOLOGY | 3.00 | A | 12.00 | |

Ehrs: 9.00 GPA-Hrs: 9.00 QPts: 33.00 GPA: 3.67

Fall 1991
| EDF | 185 | | LAW AND THE CLASRM TCHR | 2.00 | B | 6.00 | |
| EDRD | 423 | | RDG/WRTG IN CNT ARS | 3.00 | A | 12.00 | |
| PPSY | 468 | | PSYCH OF WOMEN | 2.00 | A | 8.00 | |
| PSY | 240 | | PRINCIPLES OF LEARNING | 3.00 | A | 12.00 | |
| PSY | 407 | | INTRO TO COUNSELING THEOR | 3.00 | A | 12.00 | |
| PSY | 480 | | PHYSIOLOGICAL PSYCHOLOGY | 5.00 | I/B | 15.00 | |

******************* CONTINUED ON NEXT COLUMN *******************

---

| SURJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|---|--------------|------|-----|-----|---|

**Institution information continued:**
| PSY | 491 | | FIELD EXPERIENCE | 3.00 | S | 0.00 | |

Ehrs: 21.00 GPA-Hrs: 16.00 QPts: 55.00 GPA: 3.61

Summer 1992
| HEB | 333 | | ENGLISH ESSAY EXAMINATION | 0.00 | UM | 0.00 | |

Ehrs: 0.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00

Fall 1992
| BIO | 110 | | PRINCIPLES OF BIOLOGY | 4.00 | B | 12.00 | |
| CH | 408 | | INTRO TO GRANT WRITING | 0.00 | NC | 0.00 | |
| DNCE | 170 | | JAZZ DANCE | 0.00 | NC | 0.00 | |
| HEB | 333 | | ENGLISH ESSAY EXAMINATION | 0.00 | S | 0.00 | |
| PSY | 323 | | HEALTH PSYCHOLOGY | 3.00 | A | 12.00 | |
| PSY | 422 | | DIR STDY-HYPNOSIS RESRCH | 3.00 | | 12.00 | |
| SOC | 422 | | DIR STDY-NATIVE AM STUDNT | 3.00 | I/B | | |

Ehrs: 13.00 GPA-Hrs: 13.00 QPts: 45.00 GPA: 3.46

Spring 1993
| EDFE | 271 | | FIELD EXPERIENCE SEMINAR | 1.00 | I/U | 0.00 | |
| HIST | 101 | | AMER HIST 1877-PRESENT | 3.00 | B | 9.00 | |
| HIST | 113 | | ASIAN CIV 1600 TO PRESENT | 3.00 | B | 9.00 | |
| SOC | 422 | | DIR STDY-APPLIED RESEARCH | 3.00 | A | 12.00 | |
| SOSC | 341 | | TCHG SEC SOC STUDIES | 5.00 | C | 9.00 | |
| SOSC | 470 | | THEORY RESEARCH SOC SCI | 3.00 | B | 9.00 | |

Ehrs: 15.00 GPA-Hrs: 15.00 QPts: 45.00 GPA: 3.00

*************** TRANSCRIPT TOTALS ***************
| | Earned Hrs | GPA Hrs | Points | GPA |
|---|---|---|---|---|
| TOTAL INSTITUTION | 58.00 | 55.00 | 188.00 | 3.42 |
| TOTAL TRANSFER | 6.66 | 0.00 | 0.00 | 0.00 |
| OVERALL | 64.66 | 55.00 | 188.00 | 3.42 |

*************** END OF TRANSCRIPT ***************

---

Jill Coit
Unite 2-86530
PO Box 392005
Denver, CO 80239





Rebecca S. Barnes, University Registrar

An official signature is white with a navy blue background. Reject document as official if the white signature is distorted, altered or photocopied. Raised seal not required. Authenticity best information on reverse.

TRANSCRIPT GUIDE ON REVERSE

Exhibit 2

2 5-6

GEOLOGICAL SEMINARY

PERMANENT RECORD CARD

MILL VALLEY, CALIFORNIA 94941

NAME   STEELY, JILL

HOME ADDRESS   Culver, IN

SCHOOLS ATTENDED

DEGREES RECEIVED

DEGREE SOUGHT   Special Student

DEGREE AWARDED

Tu, Sem. Hrs. Credit

DATE ENROLLED Su. 1988

GRADING IS ON FOUR POINTS: 4 IS HIGHEST

| SUBJECT | NO. | COURSE TITLE | SEM. HRS. | GRADE | SUBJECT | NO. | COURSE TITLE | SEM. HRS. | GRADE |
|---------|-----|--------------|-----------|-------|---------|-----|--------------|-----------|-------|
| | | **SUMMER TERM 1988** | | | | | | | |
| B | 111 | Introduction to Old Test, Hebrew | 3 | P | | | | | |
| | | **SUMMER TERM 1989** | | | | | | | |
| C | 281a | Clinical Pastoral Experience | 1 | IP | | | | | |

DATE

G.P.A.

Exhibit B?



# United States Marine Corps

## This is to certify that

### Mrs. Jill COIT

*has completed the course prescribed by the*

COMMANDING GENERAL, FIRST MARINE DIVISION

for

THE LAUBACH LITERACY TUTORS COURSE 2-74

Given at

Human Affairs Section
1st Marine Division (Rein), FMF
Camp Pendleton, California 92055

this 21st day of June 19 74

CARL C. HOSSLI
Lieutenant Colonel, U. S. Marine Corps
Assistant Chief of Staff, G-1

NAVMC 184-PD (REV. 12-62)

EXHIBIT 3/

IOC # 86530

# Unofficial Offender Transcript

DOC Number: [_____] Coit Jill

Get Transcript

2862 South Circle Drive
Colorado Springs, CO 80906
Phone: (719) 226-4417 Fax: (719) 226-4524

Unofficial Transcript                    Transcript Date: 06/12/09

Name: Coit . Jill
Student Number: 86530

| Unit Title | Attempted Credit Hrs | Earned Credit Hrs | Grade Points | Letter Grade | Fac Code | Evalua |
|---|---|---|---|---|---|---|
| CAD101 Cad1 | 3 | 3 | 3.0 | B | DW | 08/01/ |
| CAD101 Cad1 | 3 | 3 | 4.0 | A | DW | 08/15/ |
| CAD102 Cad2 | 3 | 3 | 3.0 | B | DW | 10/04/ |
| EGT102 Tech Drf2 | 3 | 3 | 3.0 | B | DW | 10/17/ |
| MGD101 Intro Sur | 3 | 3 | 4.0 | A | DW | 05/01/ |
| MGD107 His Desn | 2 | 2 | 4.0 | A | DW | 05/11/ |
| MGD105 Typ & Lay | 3 | 3 | 4.0 | A | DW | 07/01/ |
| MGD113 Quarxpr | 3 | 3 | 3.0 | B | DW | 09/30/ |
| MGD114 Ad indes | 2 | 2 | 0.0 | W | DW | 03/23/ |

| Certificate Award | Issue Date |
|---|---|
| Level Ii Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level I Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level Ii Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level I Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level I Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level Ii Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level Ii Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level I Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level Ii Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |
| Level I Drafting & Design Technology Certificate 48.0201 | 08/01/2005 |

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: _____
Team Number: _____
Institution: _____

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☒ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Jill Cox | 165936 | I | 20 | 11-23-12 |

**REQUEST** ☐ Check here if this is an informal grievance

Dear Ms D. Jordan
I just wanted to make sure I heard and understood ACI's policy that no long term - lifers are allowed to take educational programs. In Colorado I was allowed to take Graphic arts program and CAD.
Respectfully
Jill Cox

RECEIVED DEC 21 2012

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                    DATE RECEIVED: RECEIVED DEC NOV 26 2012 LOWELL C.I.

This is a State wide policy it may or may not change later.
So for now unless you find other programs you will not go to school.
You can write Ms Evans + see what else she has.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): Jordan | Date: 12-21-12 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)

Incorporated by Reference in Rule 33-103.005, F.A.C.



*(Top form, rotated — Florida Department of Corrections Health Slip/Pass)*

**FLORIDA DEPARTMENT OF CORRECTIONS HEALTH SLIP/PASS**

The below-named inmate is authorized for:

☐ Bed rest lay-in   From ___ To ___
☐ Low/bottom bunk   From ___ To ___
☐ No shave   From ___ To ___
☒ Restricted activity   From 3.21.14 To 3.31.15
☒ Restrictions: Use Restroom as needed, Raised locker lap blanket for 1/2 hr. Keep heat Visor Pad, Can Work 2 hrs. only Afternoon.
☒ Other: Wedge Pillow   From 3.21.14 To 3.31.15

Inmate Coit, Jill
DC# 163936   R/S LWF
Date of Birth 6-11-44
Institution LCI

Authorized by: ___
(Initial & Name Stamp)
Date: S COLON-CACHO
CAL DIRECTOR
LL LCI/FWRC

Health Slip/Pass
DC4-701D (2/96)   White/Medical Yellow/Security Pink/Inmate

---

**FLORIDA DEPARTMENT OF CORRECTIONS HEALTH SLIP/PASS**

The below-named inmate is authorized for:

☐ Bed rest lay-in   From ___ To ___
☒ Low/bottom bunk   From ___ To ___
☐ No shave   From ___ To ___
☐ Restricted activity   From ___ To ___
☒ Restrictions: Wheelchair + Pad, talking book w/ headphones and, Ortho Shoes, hand braces (2), hearing aids, support hose, Key lock, hearing impaired

☒ Other:   From 3.21.14 To 3.31.15
to be housed 2 man cell, sensitive to mold, due to legal blindness & memory research Run Library Sessions.

Inmate Coit, Jill
DC# 163936   R/S LWF
Date of Birth 6-11-44
Institution LCI

Authorized by: ___
(Initial & Name Stamp)
Date: S COLON-CACHO
CAL DIRECTOR
ELL LCI/FWRC

Health Slip/Pass
DC4-701D (2/96)   White/Medical Yellow/Security Pink/Inmate

---

**FLORIDA DEPARTMENT OF CORRECTIONS HEALTH SLIP/PASS**

The below-named inmate is authorized for:

☐ Bed rest lay-in   From ___ To ___
☒ Low/bottom bunk   From 3.21.14 To 3.21.15
☐ No shave   From ___ To ___
☒ Restricted activity   From 3.21.14 To 3.21.15
☒ Restrictions: NO Push, Pull, lift, bend, twist or squat. No repeat motion. No house work, chemicals, caustics. Keep talking book at bed. Wear watch/Drawstring

☒ Other:   From 3.21.14 To 3.31.15
Back Pack, extra time eating and getting to Destination

Inmate Coit, Jill
DC# 163936   R/S LWF
Date of Birth 6-11-44
Institution LCI

Authorized by: ___
(Initial & Name Stamp)
Date: S COLON-CACHO
CAL DIRECTOR
ELL LCI/FWRC

Health Slip/Pass
DC4-701D (2/96)   White/Medical Yellow/Security Pink/Inmate

*Important*

**ABILITIES UNLIMITED, INC.**

R300B                    Print Patient notes                  Page : 18
                                                              Date : 08/31/10

**Notes for : JILL COIT**
orthosis. The shoes and foot orthosis did fit very well. I do plan to add
additional cushioning to the foot orthosis. I will then redeliver the shoes
and foot orthosis to the patient in approximately two weeks.

BILL BEISWENGER, CPO


On : 10/30/06 @ 2:55pm   For 10/30/06 by LISA

                                                 RE: TRANSCRIPTION

Name     JILL COIT
Chart #  04089

DATE:  10/24/2006

ASSESSMENT: Jill was seen today at Denver Women's Correctional Facility. She
states that she is satisfied with fit of the Shoes and foot orthosis. She did
have problems donning the shoes with the elastic closure. The shoes will be
brought to the Colorado Springs office to have the elastic closure modified.
The shoes will then be returned to the facility by UPS.

SERVICE:  The patient was seen today for fitting of her shoes and foot
orthosis. I was able to don the shoes with out problems however, due to Jill
arthritis condition she could not do this independently. I will change the
elastic closure to make this easer for Jill. These shoes will then be returned
by UPS. I do feel the shoes and orthosis do fit well and that she should have
minimal problems.

EDUCATION:  I did recommend to Jill that once she receive the shoes that limit
use of them to approximately one to two hours on the first day and to increase
time daily until at a full time use. I did recommend that if she have any
problems what so ever that she should have the medical staff contact me for a
follow up visit.

RETURN APPT:  As necessary.

BILL BEISWENGER, CPO



On : 05/14/08 @ 10:28am   For 05/14/08 by CAT

                                                 RE: TRANSCRIPTION

Name     JILL COIT
Chart #  04089


DATE:  May 13, 2008

PRESCRIPTION:  Received a prescription from Physicians Health to authorize
shoe lift.

DIAGNOSIS:  Left leg length discrepancy.  Patient also is diagnosed with
multiple sclerosis.

HISTORY:  63-year-old female approximately 5'6" tall weighing 155 lbs.
Patient is well known to Abilities Unlimited for fitting of custom molded

28

## CONSULTANT'S REPORT

### NO PROCEDURE(S) MAY BE PERFORMED WITHOUT PRIOR APPROVAL BY THE REGIONAL MEDICAL EXECUTIVE DIRECTOR, DEPARTMENT OF CORRECTIONS

**Additional History:**

**Findings:**

Eam's Unoccluded

BTE Aid makes behind the ear bleed when worn w/ glasses

**Recommendations:**

Took new impression for ITE style aid as Recommended by Dr. due to size of canals and interference w/ glasses

G. McNEAL BELTONE
SOPC
RECEPTION MEDICAL CENTER

**Consultant Signature/Stamp:** _____ **Date:** 4/4/14

## IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY SCHEDULING INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

Inmate Name Coit, Jill   W/F
DC# 163936   Race/Sex
Date of Birth 6/11/44
Institution cSLCI
DATE:

USE ADDITIONAL SHEET(S) AS NECESSARY

LOWELL CI

ised 12/1/10) Page 2 of 2

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**CONSULTATION REQUEST/CONSULTANT'S REPORT**

Scanned 4/8/14

| TO Institution: Beltone | FROM Institution: LOWELL CI | DATE OF REQUEST: 4/8/14 |
|---|---|---|
| **Reason(s) for consultation:**<br>Evaluate and recommend diagnostic plan_____<br>Evaluate and recommend treatment plan_____<br>Other (specify):_____ | **Type of consultation:**<br>Emergency _____<br>Urgent _____<br>Routine _____<br>Follow-up ___X___ | **DATE APPOINTMENT MADE!**<br><br>**Staff Signature:** CSimons |
| **Follow-up consults require justification** | | **APPOINTMENT DATE:**<br>See attachments |

Condition is (check one): ☐ Acute Trauma     ☐ Acute Illness     ☑ Chronic

History of present illness (include onset, presentation, progress, therapy):

Patient to follow-up... took new impressions for ITE style aid,

Physical findings:

Diagnostic findings (explain laboratory, x-ray, or other test findings):

BTE aid makes behind the ear bleed when worn with glasses.

Other pertinent information:

Provisional diagnosis: bilateral hearing loss

Health Care Provider Signature/Stamp: _____ J. ALMEYDA M.D. LOWELL C.I.

CHO/Designee Approval Signature/Stamp: _____

## AUTHORIZATION FOR SPECIALITY EVALUATION

I, the undersigned, have had explained to me and understand that I require _____
which cannot be accomplished at _____
I also understand that should hospitalization and/or surgery be necessary, a separate consent form will be signed prior to such hospitalization and/or surgery. I therefore consent to be referred to a reception and medical center, or such other health care facility as may be appropriate for the reason(s) stated, and consent to undergo health care services as may be necessary to evaluate my health status.

Signature of Patient: _____     Date: _____

Signature of Witness: _____     Date: _____

## IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY SCHEDULING INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

Inmate Name Coil, Jill     W/F
DC# 163936     Race/Sex
Date of Birth 6/11/44     life     LOWELL CI
EOS DATE: _____
DC4-702 (Revised 12/1/10) Page 1 of 2

CSimons
Lowell C1
Scheduler/Corizon

11

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1501-314-048 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

Interstate denied your ITE hearing aid, not the Florida Department of Corrections. They will only approve the BTE. You need to grieve with them, not us.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

Dr. J. Rodriguez
Medical Director
LOWELL C.I.

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE 01-21-15 |
|---|---|---|

mailed 01 22 15

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

498

Exhibit 174

| | | | |
|---|---|---|---|
| 2 | each | | Hearing aid (state issue or personal) |
| * | | | Hobby craft – at locations where program exists and subject to storage space limitations |
| 1 | each | | Insect repellant (canteen) |
| 1 | each | | Jigsaw puzzle (canteen order) |
| 1 | Each | | Keyboard (canteen) |
| 1 | each | | Laundry bag (state issue or canteen) |
| ~~1~~ | ~~each~~ | | ~~Lighter, disposable (approved type) (canteen)~~ |
| 1 | each | | Lip balm (canteen) |
| 1 | each | | Locks, combination (V68 series) (canteen) |
| 1 | each | | Make-up bag, clear only (female only) (canteen) |
| 1 | each | | Mirror – plastic, nonbreakable, 5" × 7" max. (canteen) |
| 1 | each | | Moisturizer – no mineral oils, no vaseline (canteen) |
| 1 | each | | Mouthwash (canteen) |
| 1 | each | | MP3 Player (canteen) |
| 1 | Each | | MP3 Player arm band holder (canteen) |
| 1 | each | | Nail clippers, not to exceed 2 1/2" (canteen) |
| 2 | pack | | Notebook paper (canteen) |
| 4 | each | | Pens, ballpoint, flair-type, pencils with erasers, or security Pens, no markers (canteen) |
| * | | | Periodicals – * as specified by Rule 33-501.401, F.A.C., and storage space limitations |
| 1 | each | | Photo album, non-metal (canteen) |
| 50 | each | | Photographs (personal) |
| 2 | decks | | Playing cards (standard) (canteen) |
| 5 | each | | Pony tail holder (fabric) or hair claws (plastic) (female only) |
| 1 | each | | P.R.I.D.E. service pin (issued to inmate from P.R.I.D.E.) |
| * | | | Prosthesis – * as approved by health services |
| 1 | each | 50.00 | Radio, DC/AM/FM only, "Walkman" type, maximum 4" × 5" (canteen) |
| 1 | each | | Razor, disposable (state issue) |
| 1 | each | 50.00 | Razor, battery operated, non-rechargeable (canteen order) |
| * | | | Religious requirements – as approved by chaplaincy services, (examples: head covering, prayer rug) |
| 1 | each | 50.00 | Religious medallion with chain (personal or provided by Chaplain) |
| 1 | each | 100.00 | Ring, engagement (personal, female only) |
| 1 | each | 100.00 | Ring, wedding (personal) |
| 1 | each | | Roller cap, clear only (female only) (canteen) |
| 1 | set | | Scrabble (canteen order) |
| 1 | each | | Screen protector (canteen) |
| 2 | each | | Shampoo (canteen) |
| 1 | each | | Shaving cream (canteen) |
| 1 | each | | Shaving powder (canteen) |
| 1 | pair | | Shoe laces (canteen) |

Exhibit 174

FEB 2 0 2015

**PART B - RESPONSE**

| COIT, JILL | 163936 | 15-6-04449 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

Please be advised you are an Instate Compact Inmate and therefore Colorado is responsible for the decision in reference to hearing aids.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY.
UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Ebony O. Harvey IISC

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 2/18/15 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

4c5

## CONSULTANT'S REPORT

### NO PROCEDURE(S) MAY BE PERFORMED WITHOUT PRIOR APPROVAL BY THE REGIONAL MEDICAL EXECUTIVE DIRECTOR, DEPARTMENT OF CORRECTIONS

**Additional History:** 68 w/o WF c H/o CVA x 3 (2005-2006) · Pt reports she fell on 11/23/2011 and sustained trauma to (Right) side of face with closure OR, ? & lid (laceration). Pt was seen at Ocala Hosp'l & repair of lids. When the swelling resolved she notice a Ash like

**Findings:** "membrane" in the vision which has persisted.

Meds- Celebrex     Allergies - Demerol, Darvocet,     PMH- HBP
ASA                 Tylenol, PCN, Motrin etc          CA colon
Cholesterol         PH- Mother Dim.                   (Lyes ___)

(20/200) / 13       VOM — ___ full EOM
20/___ / A17        Pupils — M O.D.

SLE 2+ NS OU
Fundus — OD- loose vitreous , OS- ad
           otherwise WNL to direct exam (no
                                          indirect
Imp ↑ PVD (OD)  ↓ ↑ VA (OS)- Etiology unknown Available)
                h/o "stroke"

**Recommendations:**
1) Consider for Vitrectomy (OD) — Hold unless
                                     symptoms get
2) RTC in 6 mos                      worse

DR. LUZ ROSARIO
CHIEF HEALTH OFFICER
LOWELL CI

ISAAC MOORE, M.D.
OPHTHALMOLOGIST
RMC

2-17-12

**Consultant Signature/Stamp:** _____ , MD     **Date:** 2/16/12

### IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

**Inmate Name** Coit, Jill
**DC#** 1639136        **Race/Sex** W/F
**Date of Birth** 6/11/44
**Institution** Lowell

RECEIVED
FEB 21 2013
HOMESTEAD CI

**USE ADDITIONAL SHEET(S) AS NECESSARY**

This form is not to be amended, revised, or altered without approval of the Deputy Director of Health Services Administration

DC4-702 (Revised 3/00) Page 2 of 2

Lowell

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1501-314-169 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

You are rescheduled to be seen in April with another provider. If you need passes renewed or are experiencing medical problems, please sign up for sick call.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

Dr. J. Rodriguez
*Medical Director*
*LOWELL C.I*

SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING

SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE

1/29/15
DATE

Mailed 02-19-15

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

2-6



# 'Daddy,' womanizing assistant warden, fired from troubled prison

LINKEDIN

PINTEREST

REDDIT

BY JULIE K. BROWN - JBROWN@MIAMIHERALD.COM

01/22/2015 2:56 PM | Updated: 01/23/2015 3:53 PM

E-MAIL

PRINT

ORDER REPRINT OF
THIS STORY



Marty Martinez, known as 'Daddy' (inset), former assistant warden at
Lowell Correctional Institution in Ocala.

Each day, the female inmates at Lowell Correctional Institution would line up at the back gate waiting to talk to "Daddy."

In the afternoons, the prisoners would take turns visiting his office, passing him slips of paper and asking for favors like special bunk assignments, chocolates or time to liaison with their female partners.

Assistant Warden Marty Martinez had so many women who wanted to spend time with him that it not only interfered with the daily operation of the facility, it caused jealous fights for his attention among inmates, according to an investigation by the Department of Corrections released Thursday.

Lowell corrections officers told the department's investigators that they were overruled, punished — and, in one case, even threatened — when they tried to discipline any of Martinez's favorites.

Martinez, who was fired last week, is among 44 prison staff across the state who have been dismissed since new DOC Secretary Julie Jones took the helm of the embattled agency on Jan. 5.

"The Department has zero tolerance for misconduct of any kind," department spokesman McKinley Lewis said in a written statement Thursday, adding that Martinez "failed to conduct himself in a professional manner and acted inappropriately toward staff and inmates."

Lowell has been in the spotlight since October, when 36-year-old inmate Latandra Ellington was found dead just 10 days after writing her family a letter alleging that a Lowell corrections officer — she knew him only as "Sgt. Q" — had repeatedly threatened to beat and kill her.

Daryl Parks, a civil rights attorney representing Ellington's family, said if a high-level administrator like Martinez was able to abuse his authority so blatantly, it's likely that other officers believed they could do the same.

S`5 A

"It clearly shows this prison is out of control and they need to do something to ensure the safety of inmates immediately," Parks said.

Martinez's dismissal capped a six-month investigation that involved interviews with dozens of inmates, corrections officers, commanders and other staff at the facility in Ocala.

The firing, for conduct unbecoming an officer, came to light Thursday, one day after the Miami Herald received a tip that Martinez had been fired and inquired about it.

"Nobody ever caught him in the act, but we all saw him locked in there with them," a corrections officer, who gave a sworn statement to DOC investigators, told the Herald. It would be a crime for a prison staffer to engage in sex with inmates.

The 56-page inspector general report describes in detail how Martinez would spend extended periods talking to young, pretty white or Hispanic women on a daily basis. One sergeant talked about how Martinez would lean against a fence, chatting up inmates and would "grasp his groin and 'adjust his boys' [genitals]." Others described seeing him lying prone on a bench, commiserating with attractive prisoners. When guards counseled inmates known to be close to the assistant warden, the inmates would threaten to report the corrections officers to "Marty."

Officers and inmates said he rarely spoke to inmates who were unattractive. He frequented the Wellness Center, where one of his favored inmates taught aerobics, several witnesses said. He often sat and watched the prisoners, clad in their gym shorts, participate in a Zumba class.

Martinez's own staffers described how he squired a parade of young women around the compound and invited some of them into his office and locked both doors. The women, who were overheard calling him "Marty" and "daddy," would stay in his office for between 10 and 60 minutes, the staffers said.

His behavior became so intolerable — and made some female guards so uncomfortable — that his subordinates reported his behavior to Warden Gus Mazarra, who, according to the report, stated it was news to him. But he did promise to look into it.

The probe was begun after one officer, John Meekins, went to the Marion County Sheriff's Office and filed a police report. He said he had been threatened with harm after conducting a search of two inmates' property, seizing an unusually large amount of contraband. The search, standard procedure, infuriated Martinez because, Meekins and other officers alleged, the two women were Martinez's girlfriends.

"You're going to get your ass beat in the parking lot after work," Martinez allegedly told Meekins in front of two other officers.

Martinez told Meekins that all the officers and sergeants on the shift were "pissed off" at him and that they would retaliate by beating him up.

Lewis, DOC's spokesman, said that the warden, Mazarra, remains in command at the prison.

"The department continues to review the circumstances surrounding these incidents to ensure that this type of activity does not occur again," Lewis said.

One of the officers interviewed in connection with the case was Sgt. Patrick Quercioli, who in October was placed on paid administrative leave pending the outcome of an investigation by the Florida Department of Law Enforcement into Ellington's death.

Quercioli was the "Sgt. Q" Ellington claimed had threatened to beat her after she allegedly caught him doing something inappropriate.

Three inmates, who asked to remain anonymous for fear of retaliation, wrote letters to Ellington's family claiming that inmates at the prison are routinely beaten by guards for sport, that they suspect that inmate "suicides" at the prison were really killings covered up, and that male guards sexually abuse and threaten inmates.

Two of the letters were very detailed, providing the last names of guards, the "cliques" they belong to and how they use inmates as "pawns" in their power struggle to control the prison.

"It was almost like a gang," wrote one inmate.

H. Collins P41698

59 B

Daddy: womanizing assistant warden, fired from troubled prison | The Miami Herald The Miami Herald                    Page 3 of 3

At the time she died, Ellington, a mother of four, was to be released in seven months after serving a 22-month sentence for grand theft. She was in confinement — separated from the general population — at the time of her death because the agency, DOC officials said, had taken her family's concerns about the alleged threats seriously.

A private autopsy conducted on behalf of the family showed she suffered blunt-force trauma to her stomach consistent with being punched or kicked, according to Parks, the family's lawyer.

Lowell Correctional and its annex, under unified management, have had 39 inmate deaths over the past five years, putting Lowell near the top among correctional institutions that don't serve as hospitals. The annex houses older inmates.

# State re-evaluates prison health care as old worries return

## Corrections secretary warns insurers of cancellation; No. 1 priority, she says

**By Dara Kam**
News Service of Florida

TALLAHASSEE | For more than 20 years, Florida and the lawyers representing prisoners wrangled over inmate health care, resulting in nearly a decade of federal-court oversight of health services in the Department of Corrections.

Now, lawyers who represented prisoners in the mid-1970s say conditions may be worse today than they were when attorneys for Michael Costello, an inmate at Florida State Prison, convinced a federal judge that inadequate health care amounted to a violation of Eighth Amendment protections against cruel and unusual punishment.

"It's going backwards, backwards, backwards," said Jacksonville lawyer Bill Sheppard, one of the lawyers in the landmark *Costello v. Wainwright* case. Sheppard played an integral role in the lawsuit, which included a court-appointed special master and monitor to ensure that prisoners received the health care they needed.

them out to bid again.

"The department has maintained a clear message that the care of inmates is the No. 1 priority in the provision of health-care services. I have personally met with our health-care contractors to express my expectations of excellence in quality care, I will continue to take steps to ensure that the department's expectations that all parties are held to the highest standards of transparency and accountability. Anything short of timely, effective and appropriate health care will not be tolerated," said Jones, who took over as secretary three weeks ago.

Jones, appointed by Gov. Rick Scott to take over the agency in the aftermath of reports of questionable inmate deaths and brutality by prison guards, told the Senate Criminal Justice Committee earlier this week that she is in discussions with Corizon Health and Wexford Health Services about possibly terminating the contracts, which would require 60 days notice from the agency or 120 days notice from the com-

vices being offered. However, we are confident the overwhelming majority of those concerns do not apply in the prison population to underwrite the contract amendments.

Two months after he linked the contract amendments, Crews threatened to stop payments to Corizon, saying the Missouri-based company failed to follow through after audits revealed shortcomings in multiple areas, including medical care, nursing and staffing.

"We consider it our mission to care for patients as we would our own family — with integrity and respect — and to deliver the very best treatment possible despite often challenging circumstances," Corizon spokeswoman Susan Morgenstern said.

Jones' scrutiny of the contracts came in tandem with her push for more oversight of prison health care. Right now, Jones and lawmakers rely on the Correctional Medical Authority to audit the companies, which are then responsible for fixing their shortcomings. The Correctional Medical

panies were promised extra money in exchange for agreeing not to walk away from the contracts.

On July 29 — less than four months before Scott, who pushed for the privatized Department of Corrections quietly agreed to pay Crews another $3.2 million to stay on the job for another year.

In the amendments signed by Crews in late July, the state agreed to pay Corizon an additional $2.9 million and Wexford an extra $300,000. Both companies complained that they had not received medical cost-of-living increases — about 3 percent — which did not approve the

months after the two companies were promised ex-

to the 15,000 inmates under our care in South Florida," said Don Hulick, director of operations for Wexford Health Care in Florida.

Jones' threats came just

hikes, Crews used money ability to impose fines or other punitive measures on the vendors.

set aside by the Legislature in the budget for growth other punitive measures on federal oversight.

Authority doesn't have the Sheppard said his office receives requests for help almost daily from inmates who say they are unable to get medical services.

The authority was created in 1986 as part of the settlement in the Costello case. The state's prison health system stayed under federal oversight until 1993, when a judge decided that the federal government could relinquish its role as long as Florida remained committed to using monitors like the authority to ensure prisoners' rights were not violated.

In the midst of deciding to privatize prison health care in 2011, lawmakers shuttered the agency by eliminating its $77,000 budget. That same year, Scott vetoed a measure that would have done away with the authority, calling it a "valuable layer of oversight." House and Senate leaders allocated $580,000 in 2012 to revive the agency, shrunk from 12 workers to six with an oversight board of seven governor-appointed members.

But critics of the revived authority say the agency no longer has the power it held

when U.S. District Judge Susan Black agreed to end federal oversight.

The complaints echo those he fielded three decades ago at the height of the Costello litigation.

"It's the same piece — they don't treat me. It's getting access, and then once you get access it's being seen property and then what the doctor orders, you don't receive," he said.

"You've got a lot of people dying and you've got a lot of unexplained deaths that are floating around here."

Last year, 346 of the state's 100,000-plus inmates died behind bars. More than half of those deaths — 176 — were initially unclassified, meaning that state investigators had no immediate explanation for the causes of death. According to the Department of Corrections website, 146 inmates died due to heart attacks, cancer, gastrointestinal diseases or other medical problems.

"It was the number of people that were dying, and that really caused the federal court to appoint the special master back in the 1980s who worked for 10 years to enforce the order," Sheppard said. "It's not going to get better. It's going to get a lot worse. And when it gets to the breaking point, there are going to be lawsuits. It's as simple as that."

Less than two years ago, private companies took over health care for the state's 100,000 inmates. But newly appointed Department of Corrections Secretary Julie Jones is now threatening to cancel the companies' contracts, renegotiate or put

panies.

Corizon is being paid $1.2 billion over five years to provide health care to more than 74,000 prisoners in North and Central Florida, as well as part of South Florida. Wexford will receive $240 million over the same period for health care for about 15,000 inmates at nine South Florida facilities.

Jones also accused the companies of failing to live up to the agreements and of putting inmates at risk by providing inadequate health care.

"Wexford Health appreciates and shares Secretary Jones concerns about the level of prison health ser-

# Cleaning up a prison mess

Kudos to Florida state Sen. Greg Evers for not just talking about cleaning up the prison mess, but showing that he means business.

Evers, the Pensacola Republican who chairs the Florida Senate's Criminal Justice Committee, has been conducting hearings during legislative committee weeks and has taken testimony from a variety of stakeholders and experts. The last meeting included new Department of Corrections Secretary Julie Jones, who has held the post for less than a month.



**PAULA DOCKERY**

A little history on the revolving door of leadership at the DOC is in order. Jones is the fourth secretary to serve under Gov. Rick Scott over the past four years and the seventh to serve in the past eight years. The lack of continuity is a huge problem at Corrections.

While scandals, deaths and questionable activities are not uncommon in the prison system, 2014 was exceptionally troubling. It was the deadliest year ever, with deaths up 13 percent. Additionally, there were reports of sex with prison staff, selling of contraband and excessive use of force. The prisons are understaffed, officers are undertrained and underpaid, facilities are crumbling and morale is incredibly low.

Moreover, those who were responsible for monitoring what goes on in the prisons, the investigators, had to seek whistleblower protections when the administration discouraged and discounted what they had to say.

Drastic measures are indeed warranted. That is why the tag team of Evers and Jones offers so much promise.

Evers went above and beyond when, unannounced and at night, he dropped in on two prisons — Suwannee and Jefferson — to see for himself what was going on. A staunch supporter of our public prisons and the hardworking men and women who work there, he seems determined to get rid of the bad apples and provide the resources, training and boost in morale the others need to better perform their duties.

And Jones is a no-nonsense career law-enforcement official with extensive experience as an administrator of a large government agency. She has already dismissed 44 prison staff across the state and identified a problem at Lowell, a women's prison. She fired an assistant warden, Marty Martinez, for inappropriate behavior. He was affectionately known as "Daddy" inside the prison fence where the inmates were vying for his attention.

Jones also offered refreshing candor when questioned by members of Evers' committee

about private prisons being able to cherry-pick the less expensive inmates. Within days, however, she walked some of her comments back. It seems someone in the administration was unhappy with that degree of honesty. This type of micromanaging is detrimental to the goal of reform.

The administration seems to ignore any lessons learned from its earlier interference. But then again, the administration is also on its fourth chief of staff in as many years.

Scott's first DOC secretary, Ed Buss, a respected prison reformer lured here from Indiana, was forced out by then chief of staff Steve MacNamara because Buss was not supportive enough of MacNamara's scheme to privatize more prisons.

It is imperative that the administration, which ignored the growing mess at Corrections, now steps back and gives its chosen secretary the authority and autonomy to clean it up. Jones will need help from inspectors general, trusted prison staff, and families of inmates with knowledge of the problems.

A great resource for Jones and Evers is Allison DeFoor, who has hands-on experience as a prison minister. DeFoor also chairs Florida State University's Project on Accountable Justice, a conservative think tank. He testified in committee and offered an honest appraisal of the existing problems along with workable solutions.



**State Sen. Greg Evers dropped in on prisons to see for himself.**

Unfortunately, the Legislature doesn't always listen to experts. Years ago a comprehensive plan was offered by Judge Steve Leifman, who served as special adviser on criminal justice and mental health for the Florida Supreme Court. His task force report was ignored despite its merits and effective implementation elsewhere. The excuse? We couldn't afford to do it. Had it been implemented, the state would be enjoying not only better outcomes but also significant savings.

In addition to administrative changes within the DOC, legislative changes will be necessary. Decriminalizing minor offenses, focusing on rehabilitation and re-entry and addressing the mentally ill need to be in the mix as well as fixing structural problems, adding correction officers, providing proper training and adhering to a strict zero-tolerance policy on misconduct.

Hopefully this go-round, legislative leaders and the governor will listen to the experts, trust those they've put in charge of the task, rid the DOC of the culture that encourages coverups, and provide the necessary resources to ensure true reform to a badly damaged system.

*Paula Dockery is a syndicated columnist who served in the Legislature for 16 years as a Republican from Lakeland. She can be reached at PBDockery@gmail.com.*

THURSDAY JAN. 29, 2015

OVER -

in an October 26 report, Palm Beach Post reporter Pat Beall described an extended roster of lawsuits, settlements and audits alleging the Tennessee prison health giant Corizon had provideddeficient care. They included an Idaho class-action suit, a critical federal report on an immigrant detainee's death and an audit conducted in Maine.

These reports arguably should have been disclosed as part of Corizon's 2012 contract bid – but they weren't.

The company won a $1.09 billion, 5-year contract by promising to sharply cut the state's prison health care costs.

One simple, but inhumane way to do that, would be to stop sending sick inmates to the hospital. In fact, Beall found the number of inmates being sent to outside hospitals is sharply down. At the current rate, admissions will drop by 47 percent compared with the last year the state oversaw inmate medical care.

If hospital care was being withheld inappropriately, it would theoretically show up in higher inmate deaths.

In January, Beall found, inmate deaths from causes other than murder or accidents hit 36, a 10-year high. Deaths for the first seven months of this year totaled 206, a 10-year high when compared with the first seven months of previous years.

A Corizon spokeswoman told Beall that the company believes that what the state wanted to know was included in the bid package. The state apparently agrees.

In the course of Beall's reporting, state Department of Corrections spokesman McKinley Lewis noted that the agency had put the company on alert that "specific measures (must) be taken to ensure that appropriate health care is provided to those in the Department's custody."

Corizon President and COO Scott Bowers traveled to Tallahassee on Oct. 22 to discuss an action plan that includes reviewing the company's systems and processes, he said. Beginning Oct. 1, the department began fining the company $2,500 for each failed state audit. There are 54 health units which are audited every six months.

Are audits and action plans really sufficient when lives are at stake?

The state now has all it needs to break its contract with Corizon; the question is, can a better contractor be found, or does the state need to take back responsibility for prison health?

62

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1412-314-245 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

Ms. Hernandez is not retaliating against you. You have a pass for the wedge pillow, but you have no order for this wedge pillow written by a doctor, which is needed.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

**Dr. J. Rodriguez**
Medical Director
LOWELL CJ

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 1/5/15 DATE |
|---|---|---|

Mailed 01·06·15

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

6 3

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

# INMATE REQUEST

Mail Number: _____
Team Number: _____
Institution: _____

14.0746

**TO:** (Check One)
☑ Warden
☐ Asst. Warden
☐ Classification
☐ Security
☐ Medical
☐ Mental Health
☐ Dental
☐ Other

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Jell Cort | 163536 | S110, | HS | B-10-14 |

**REQUEST** Violat A 33.210.201          Check here if this is an informal grievance ☑

Per Chapter 33 - FDOC - Reasonable modification or Accomodation Request are to be responded to with in 10 day. On January 7-2014 I submitted my modification or accomodation form to Classification out on 3-10-14 and I have not received a repone. The Classifcation off cer filled out the form & deneid my request. He made few logical error and did not list it in detail as my submitted hand written form did. Remedy: Respond to my ADA accomondation form request ASAP as per Chpter 33 - total see attached form - 2 pages.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE

RECEIVED
MAR 12 2014
ASSISTANT WARDEN PROGRAMS OFFICE

**DATE RECEIVED:** _____

You were not housed at Lowell CI on 1/7/14. All ADA requests should go to the ADA coordinator, the assistant warden of Programs. Classification cannot approve an ADA Request. If you submit an ADA request to me, it will be responded to.

[The following pertains to informal grievances only:
Based on the above information, your grievance is *denied*. (Returned, Denied or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: 3/19/14 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)

Incorporated by Reference in Rule 33-103.005, F.A.C.

COLORADO DEPARTMENT OF CORRECTIONS

## Allowable Offender Property for Interstate Corrections Compact Transfer

Offender Name: Jill Coit           CDOC #:   86530/ KS#98046

Facility: Topeka Correctional Facility       Date:   01/26/2011

Notice to Offender: The following items are the only allowable property for offenders who are transferred as part of an Interstate Corrections Compact transfer. You are limited to take the following items with you:

| Allowable Property | Mark if Applicable |
|---|---|
| (1) 11½" x 14½" manila envelope containing current legal mail. | (1) |
| (1) one pair of prescription eye glasses with case. | (1) pr yellow color rimless |
| (1) one pair contact lenses/solutions. | n/a |
| 30 day supply of prescription medicine. | With staff |
| (1) one plain wedding ring – no stones or patterns. | n/a |
| Allowable American Disabilities Act (ADA) *Durable Medical Equipment (DME)* | * |

 *Specify: (1) Wheel Chair, (1) Back Pack, (1) pair medical shoes with lifts, (1) pair hand/wrist splints.
All other medical property will be removed and returned to the Colorado Department of Corrections.

### Notice to Offender Regarding Disposition of Remaining Property

In accordance with AR 300-06, Searches and Contraband Control, if the offender can prove ownership and his/her remaining property item(s) do not in and of itself present a security or safety threat,

1)   He/she may be allowed to mail the item(s) to an address outside of DOC at his/her own expense. If an offender does not have the available funds to mail the item out within ten calendar days of notice, the item(s) will be destroyed in accordance with this policy. The offender will not be allowed to mail any items out of state to his/her ICC facility.

2)   The item(s) may be donated to a charitable organization; donation procedures must be defined by facility policies. Items not accepted by the designated charity will be destroyed in accordance with AR 300-06.

3)   The offender may also ask that the item(s) be destroyed."

4)   If the offender fails or refuses to designate one of the above options the items will be destroyed in accordance with AR 300-06.

The Property Officer will use this form, Allowable Offender Property for Interstate Corrections Compact (ICC) Transfer, to inventory and indicate the offender's request for disposition of each item in their remaining property. The offender will sign and be given a copy of the completed form prior to transfer. If the offender refuses to sign, the Property Officer will indicate "offender refused to sign" in the area designated for the offender to sign and have another staff member witness this process. The offender will be given a copy of this form. The property officer will forward copies per the distribution list.

| Quantity | Description of Item: | Mail Out | Donate | Destroy | Rtn CDOC |
|---|---|---|---|---|---|
| 2 | Black Knee Braces | | | | X |
| 3 pair | Ted Hose (1 white and 2 beige) | | | | X |
| 1 | White blanket | | | | X |
| 1 | Box Legal paperwork | X | | | |
| 1 | Timex Watch | | X | | |
| 1 | Brushy Creek Hot Pot | | X | | |

Page 1 of 2           Offender initials

Offender Name: Jill Coit
Facility: Topeka Correctional Facility

CDOC #: 86530/ KS#98046
Date: 01/26/2011

| Quantity | Description of Item: | Mail Out | Donate | Destroy | Rtn CDOC |
|---|---|---|---|---|---|
| 11 | Hair Clips | | X | | |
| 1 pair | Drew Velcro Shoes | | X | | |
| 1 | Conair blow dryer | | X | | |
| 2 | Beige bras with extenders | | X | | |
| 1 | White bra with extender | | X | | |
| 1 | 8 inch Massey fan | | X | | |
| 1 | Red Coleman Cooler | | X | | |
| 1 | Eye mask | | X | | |
| 1 | 13 inch Color LCD TV #08/10/011D8NS | X | | | |
| 1 pair | Copper color wire frame YSL sunglasses w/blk cs | X | | | |
| 1 | Shower caddy | | X | | |
| 1 | 3 sided ruler | | X | | |
| 3 | Utensils | | X | | |
| 1 | Muscle rub | | X | | |
| 1 | Zinc Oxide Ointment | | X | | |
| 1 | Miconazole 7 | | X | | |
| 4 | Pens | | X | | |
| 1 | Mascara | | X | | |
| 6 | Books | X | | | |
| 1 | Water bottle | | X | | |
| 1 pair | Black flip flops | | X | | |
| 1 | Sweatsuit | | X | | |
| 1 | Yellow exercise band | | X | | |
| 1 | Orange/black mesh bag | | X | | |
| 1 | Pink and White electric shaver | | X | | |
| 1 | Aztec flat antenna | | X | | |
| 1 | CL4 head phones | X | | | |
| 1 | Orange handle scizzors | | X | | |
| 2 pair | Footies | | | X | |
| Several | Miscellaneous papers | | | X | |
| Several | Miscellaneous dougnuts, chips, cookies. | | | | |
| n/a | End of inventory/form – nothing further. | | | | |

(Signature verifies inventory) Sgt S. Hutton   Date: 01/26/2011   x _Sgt Hutton_

_Renae Watts_   Date: 01/26/2011   x _Signature_
Inventory DOC employee        Print Name

(Signature verifies disposition choice) D. Watson, CLO   _D. Watson CLO 01-28-11_
Inventory DOC employee        Print Name        Signature

Offender Signature _Jill Coit_        Date _1-28-11_

Distribution: Working File, Department File, Property Officer, Offender

COIT-01638

Medical

Exhibit 30

10-28-11

Jill, Coit #163936

Medical Dr Rozdon

When I last saw you in May/June 2011 - My wheel chair, wheel chair cushion, Orange Book pack and 1 white Bin was stored in the closet in your office.

You were not present when I left for Lowell.

Might I please have my property sent to Lowell? If you will send it to Sgt. Patterson/John, in HCI property room she will forward it to me.

I was told to file a Grievance But I see No reason to do that - Your an honest person -

Please Track down my property

Respectfully

Jill Coit # 163936
Lowell Correctional Institution
B-Dorm 4102 - Annex
11120 NW. Gainsville Road
Ocala, Fl. 34482 -

Your items will be gathered and sent today
R. FERNANDEZ
H.S.A.
12/28/11

exhibit 10

*Exhibit 4*
*Colorado ADA accommodations*
*2010*

# ACCOMMODATION RESOLUTION

Offender Name: COIT, JILL
DOC#: 86530

## You DO HAVE A MOBILITY DISABILITY

Following a disability screening it has been determined that you have a mobility disability and are therefore, entitled to the following accommodations:

1. Wheelchair
2. Raised Locker Box
3. Medically Necessary Shoes w/ lift
4. Backpack
5. Assignment to a designated facility
6. Assignment to an accessible cell
7. Access to accessible bathroom facilities to include a shower chair or bench and a toilet of appropriate height
8. Seating at an accessible table during meals
9. Lower Bunk
10. Lower Tier
11. Not required to use stairs and when housed at a facility that maintains an elevator for offender use, you are allowed to use the elevator
12. May be seated in wheelchair and present ID for standing count.
13. Additional time to arrive at destinations within the facility
14. Additional time to complete activities of daily living
15. Requires staff assistance when cuffed and/or shackled. Refer to Section XXII of the Remedial Plan
16. Requires staff assistance during transport when embarking and disembarking from the vehicle
17. Reasonable accommodations will be provided during searches. Refer to Section XXIII of the Remedial Plan
18. Requires staff assistance during an emergency or evacuation
19. Transportation in an accessible vehicle. Refer to Section XXIV of the Remedial Plan.
20. Assistance with carrying and disposing of food tray contents by offenders assigned as dining room workers.

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

**You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or becomes inoperable for any reason.**

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list. Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1402-314-116 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Amended Response-

Your administrative appeal has been reviewed and evaluated.

The wheelchair van (DC8700) that you are referring to not having heat had a routine schedule maintenance on February 22, 2014. There was no documentation of any complaints. All DC2-547 Vehicle Maintenance records reflect no discrepancies with the heat. It should be noted that this model vehicle has a heating system in the front cabin but no heat system in place in the back. The vehicle is and had been fully operational as required.

Therefore, your issue at this point is moot, and as such your appeal is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

Colonel Sistrunk

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 3/31/14 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility.
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

Mailed
04·01·2014

No heat or air reaches disabled Wheel Chair Inmates' — We are transported 4 to 6 hours aways on cold or hot -100 degrees 5 ither — Look I thes responses — it is ludicrous — they did not fix the problem Just the Vans fully operational — Unreal

33

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1409-314-014 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

We do not provide dental floss.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

| R. DELP MD acting CHO | | 09 09 14 |
|---|---|---|
| OB GYN | | 09 09 14 |
| SIGNATURE AND TITLE OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

31

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

Mail Number: _____
Team Number: _____
Institution: _____

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☒ Security | ☒ Medical ☐ Mental Health | ☐ Dental ☐ Other *1307-116* |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | *Jill Gut* | *163936* | *Dov* | *HS* | *7-26-13* |

REQUEST                                Check here if this is an informal grievance ☒

I can not use the rubber Band type of
dental Floss due to my hand impairment.
Please do not tell me to file ADA paper work
you recognize my disability due to fact
you issued medical Braces. I go into this
Prisnaria denial of dental floss -
my teeth are Building up tater due to
my inability to Floss which is necesary
for healthy teeth and gums. Remedy
issue dental floss on canteen or
provide it. (You provided all the tool -
for holder of dental floss - But no dental
floss

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                          DATE RECEIVED: 

RECEIVED
JUL 2 3 2013
HOMESTEAD CI
Asst. Warden's Office

Have forwarded request to Tallahasse to see if possible
to administer this type of floss. Request sent 8-5-13 do
not get have response.
two samples have been given to Ms. Fernandez (HSA) to
be cleared by security

[The following pertains to informal grievances only:
Based on the above information, your grievance is __*Approved*__. (Returned, Denied, or Approved). If your informal grievance is denied,
you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | *Jor A Joffe, DDS* | Date: | *8-5-13* |
|---|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

3 2

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as
required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no
later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)                    Incorporated by Reference in Rule 33-103.005, F.A.C.   *113 30372*

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

Mail Number: _____
Team Number: _____
Institution: _____

_L C F - Mar M, De Bell_

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Jell Coit | 163536 | S/1101 | 415 | 12-29-14 |

**REQUEST**  Check here if this is an informal grievance ☐

Dear Mr. DeBell
I did not get the PRIDE
grievance back that you
spoke to me about

also please send me another
application for PRIDE
since it doesn't seem
to reach me -
I will put it in envelope addressed
to you. Thanks Jell Coit

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

**DO NOT WRITE BELOW THIS LINE**    RECEIVED DEC 3 1 2014

**RESPONSE**    DATE RECEIVED: DEC 3 0 2014

I did not respond to a grievance of yours.
It would have been Annex Classification staff.

As for the PRIDE app - drop a request to
Mr Alvarez in PRIDE concerning this. Complete it
and return it to him - not me.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: 1/5/14 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)

Incorporated by Reference in Rule 33-103.005, F.A.C.

Exhibit   37

3-10

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

Mail Number: _____
Team Number: _____
Institution: _____

15-0357 A/50C

| TO: (Check One) | ☐ Warden ☑ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name Jill Court | DC Number 163936 | Quarters T1102 | Job Assignment H5 | Date 2-4-15 |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☑

The perfect example of retaliation
I am supposed to be in protective management
But in according to Supples in administrative
confirmed - electronil Be rused by F.A.C 33-602-
221 - Not 220. I believe a 15-0630 conditions
I was Being subjected to - Thea is just the
latest P.M. elrrvestigator Ward Allen's
e-mail I am to Be in protective custode, management
subject to P.M. rule Remedy- make me
protective management mode as shown the
rules - as attached 15-0630. ett took 9 days
for me to get reply dated 2-27-15 ........

All requests will be handled in one of the following ways:  1) Written Information or  2) Personal Interview.  All informal grievances will be responded to in writing.

Inmate (Signature) _____   DC#: _____   RECEIVED   MAR 04 2015   ASSISTANT WARDEN PROGRAMS OFFICE

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                                    DATE RECEIVED: _____

You are in administrative Confinement pending protection.
You will not be assigned as a PM inmate
unless State Classification Says you are. You are to follow
all rules / restrictions of Administrative Confinement.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is **Denied** . (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name) T. Suppes Lt | Official (Signature) _____ | Date: 3/5/15 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.  If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.
DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

44

3-10-15

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: _____
Team Number: _____
Institution: _____

**INMATE REQUEST**

15-0332 AlSOC

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☒ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Quil Cox | 163936 | T1102 | 148 | 3-2-15 |

**REQUEST**

Check here if this is an informal grievance ☒

~~At Raeford today~~ L.C.I army doctor gave me a raised toilet chair - I used it in handicapped cell Sierra 1101 and it was just Brought to Tango 1106 But officers say I can not have it in my cell to raise the toilet height, I have RSMR I-a torn left knee menusus, It hurts me to sit on low toilet seat. I need this raised toilet seat - I also have severe arthritis in the left hand and degenerous disease so I can Not use my hands/arms to lift me off the toilet I am ADA disabled. Remedy, give me the raised toilet ~~seat~~ seat for my ~~handicapped~~ HCP cell I need it soon as poss.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

RECEIVED MAR 03 2015 ASSISTANT WARDEN PROGRAMS OFFICE

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                    **DATE RECEIVED:** _____

The toilet in Cell T-1102 Complies with A.D.A. Standers ~~of~~ of being 17"-19", therefore you will not receive any extra apparatus in your cell.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is ___Denied___. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Signature): _____ Lt (T. Supp?)        Date: 3/5/2015

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person. You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)            Incorporated by Reference in Rule 33-103.005, F.A.C.            30

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1402-314-064 | LOWELL ANNEX | P2128L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

You were seen on 2/7/2014 in the ER. Your chart states that two inmates fell on you. Your chart is not missing. If you are still experiencing problems, please follow procedure and sign up for sick call.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

Dr. Colon, Medical Director

| | | 02.14.14 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

Mailed
02-17-14

45

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1208-314-019 | LOWELL C.I. | I1102S |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

Your formal grievance was received and notes complaint of provider not being able to explain issue in English. After careful review of you medical chart which reveals that you were evaluated by physician on 08/01/12. Note that you will need to watch the call out for scheduled appointment with physician to discuss your chronic illness clinic results from 8/1/12.

Based on these facts your grievance is approved pending scheduled callout to review (CIC) results.

Dr. Rosario, CHO

DR. LUZ ROSARIO
CHIEF HEALTH OFFICER
LOWELL C.I.

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 8/8/12 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

*Bra's ordered 7-21-14*

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1412-314-034 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

These items were already ordered. I will check with main unit and find out if they are in the stock room. You will be called down to receive them, once I have them.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

Dr. J. Rodriguez
Medical Director
LOWELL C.I

12/18/14
*Mailed 12-19-14*

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

COPY DISTRIBUTION - INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

47

MAILED/FILED
WITH AGENCY CLERK

OCT 3 1 2014

Department of Corrections
Inmate Grievance Appeals



**PART B - RESPONSE**

| COIT, JILL | 163936 | 14-6-33623 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule.

The process in place for Inmate's who report misconduct or make PREA allegations is to protect the Inmate.

Your request for administrative appeal is being returned without action.

A. Bailey

| | | 10/29/14 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

14-1096                    AW

Mail Number: _____
Team Number: _____
Institution: _____

TO: ☐ Warden          ☐ Classification     ☐ Medical        ☐ Dental    AWP
(Check One) ☑ Asst. Warden    ☐ Security          ☐ Mental Health  ☐ Other  Masters

FROM: Inmate Name: Jill Coit    DC Number: 163936    Quarters: S110 1    Job Assignment: HS    Date: 9-14-14

**REQUEST**                    Check here if this is an informal grievance ☑

I first asked for Braille lessons and Machine in 2011 at Broward Correctional, last in Jan 2014. (on proof see Classification request to DCF-response) I have filed a ADA recognition - at BCI, HCI, FWRC and LCI - (anne + main) each I have also asked for Braille machine lessons. So far Braille for 4 years Jan 2011 thru Sept 2014 a Braille machine has not been provided. I am aware on DC I'm the only legally blind inmate (offender) in DOC, yet I am told "We are still waiting on approval." (under it's separate to 33-APP Lumpkin Remedy) allow me to purchase and have my own Braille machine.

† All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

DO NOT WRITE BELOW THIS LINE

**RESPONSE**                    DATE RECEIVED:

RECEIVED
SEP 17 2014
LOWELL C.I.

Your informal grievance has been reviewed and is approved. I will enquire on getting a braille machine here at Lowell CI first, if I cannot, then we will persue your purchasing of one with parameters for usage, storage, etc.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____ (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

Official (Signature): _____    Date: 9/19/14

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)

5f

Incorporated by Reference in Rule 33-103.005, F.A.C.

*refered 1-8-15*

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1412-314-184 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

Dental has to refer you to a Periodontitis, no medical. Please follow procedure and sign up for dental sick call to be evaluated and referred to a specialist, if one is needed.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

Dr. N. Rodriguez
Medical Director
LOWELL CJ

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 1/6/15 DATE |
|---|---|---|

Mailed 01-8015

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

*exhibit 52*

MAILED/FILED
WITH AGENCY CLERK

JAN 14 2015

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| COIT, JILL | 163936 | 14-6-38614 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been received, evaluated and referred to the Americans with Disability Act Coordinator, who provided the following information: Chapters 33-103.006(1) and 33-103.007(1) require an inmate to utilize the DC1-303, Request for Administrative Remedy or Appeal when filing a formal grievance or administrative appeal. Chapter 33-103.001(2) states you may request assistance through the institution library to complete the appropriate form and Chapter 33-103.015(1) authorizes an inmate to " ... seek assistance from other inmates or staff members in completing the grievance forms as long as the assistance requested does not interfere with the security and order of the institution." The required forms, DC1-303, Request for Administrative Remedy or Appeal which is to be used for formal grievances and administrative appeals and Form DC6-236, Inmate Request, which is to be used for inmate requests and informal grievances, are not available in electronic form for an inmate to utilize via computer. You are directed to request assistance, if you so choose, from the institution library as set forth in the above cited rules.

Based on the above, your request to use a computer to type inmate requests, informal and formal grievances, and/or administrative appeals is DENIED.

T. Bowden.

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

43

I witness Coit 0163536 turn in radio to Sgt.-Property on 2-2-15 @ 10:17 am

Jennifer Sellika
V39578

35

Department of Corrections

Inmate Personal Property List
(Please Print)

Inmate Name _Coit, Jill_        Number _163936_
Institution _LCI Annex_        Date: _11-10-14_

| Item | Number | ID # | Requested Disposition | Final Disposition | Date | Officer's Initials | Inmate's Initials |
|------|--------|------|----------------------|-------------------|------|-------------------|-------------------|
| GPX radio | 1 | w/buds | R | R | 11-10-14 | KC | |
| ener | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Cash Total Amount _____       Retained _____       Amount Deposited _____

( )   I agree to mail the above items marked M from my own funds.
( )   I do not have the necessary funds for postage.  However, I will obtain the necessary funds during the thirty (30) days allowed for disposition of these items.
( )   I agree that the above items marked D be disposed of by the state.

Request Items be Mailed To:

Name: _____                    Witness: _____

Address: _____

Signature of Officer _Sgt. K. _____   Rank _____

Institution or Community Facility _LCI Annex_   Date _11-10-14_

Signature of Inmate _Jill Coit_   Inmate Number _163936_   Date _11-10-14_

**Distribution:**
White        -- To inmate when property is collected
Yellow       -- To property room when property is collected
Pink         -- To inmate's Personal Property file
Goldenrod    -- In package being mailed home or to inmate in case items are forfeited

**Symbols indicate:**      D - Dispose        R - Return to inmate
                          F - Forfeited      S - Stored
                          L - Lost/stolen    W - Worn out
                          M - To be mailed

3 b

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

# INMATE REQUEST

Mail Number: _____
Team Number: _____
Institution: _Warden_

TO:          ☑ Warden          ☐ Classification          ☐ Medical          ☐ Dental
(Check One)  ☐ Asst. Warden     ☐ Security                ☐ Mental Health    ☐ Other _Mazono_

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Jill Coit | 63936 | S/101 | HS | 12-16-14 |

**REQUEST**  I was told to write you for permission          Check here if this is an informal grievance ☐

My talking Watch Battery died. May I had permission to have a new talking watch? the old Model is no longer available and had to order the next one. I believe it was less than $15.00 including postage. My old watch Battery cost 3 cents but LCI does not provide talking Batteries so I had to purchase a new watch. it took a hearing and Batteries to had it replaced in 2012 - I am legally Blind.
Thanks - Jill Coit

*All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.*

---

### DO NOT WRITE BELOW THIS LINE

## RESPONSE          DATE RECEIVED: _____

Your watch has been approved. Per Policy you must still complete a new ADA form for this watch. Once the form is turned into Dr. Marling you will receive the watch. Colonel Sistrunk addressed me she already spoke to you about this.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | | Date: | 12/23/14 |
|---|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)

Incorporated by Reference in Rule 33-103.005, F.A.C.

54

**PART B - RESPONSE**

| COIT, JILL | 163936 | 1403-314-185 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and investigated with the following response provided.

You will not dictate to staff when you will utilize the law library. You have been given more time in the library than any other inmate due to your ADA accommodations. As stated in a previous grievance, you have been given a daily allowance of library usage 1/2 day Mondays and full days Wednesday and Fridays. Thus a change since you state your are unable to use the library on Saturdays due to your religious beliefs. This change gives a you 1/2 day more per week than you were given previously. This schedule will apply to both libraries. This schedule is an accommodation to you by the administration and is in addiction to Chapter 33; therefore it is subject to change. No one is retaliating against you. It is a simple matter of trying to accommodate you and the other 3000 inmates will have on the compound.

Your grievance is Denied.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal completing the form and providing attachments as required by 33-103 and forwarding your complaint to the Office of Inmate Grievances.

Assistant Warden Lumpkin

| _____ | _____ | 3/25/14 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

Mailed
03-27-14

39



RECEIVED
WITH AGENCY REPORT

DEC 0 3 2014

Department of Corrections
Inmate Grievance Appeals

**PART B - RESPONSE**

| COIT, JILL | 163936 | 14-6-30633 | LOWELL ANNEX | S1101L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been received, evaluated and referred to the Bureau of Contract Management, who provided the following information: 604.602 (5)f. (a) states:

(a) Wardens desiring to stock items not on the attached list must submit their requests, with justification, to the regional director for review.
1. If the regional director agrees, s/he will submit the requests to the canteen review team chairperson for coordination with other institutions.
2. Wardens desiring not to make available any of the approved canteen items must likewise submit their requests, with justification, to the regional director for review and submission to the canteen review team chairperson.

Please comply with the rule and submit a request for a new item to the warden.

Based on the foregoing information, your appeal is denied.

T. Bowden

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 11/25/14 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

53

**US DISTRICT COURT**
**901-19th Street, Denver, Colorado 80294**

_[handwritten marginalia: 91/850 66 resolution ADA orsame mobile care form]_

Montez, et al,

vs.                                                    ~~CASE NO.: 92-CV-870 JLK~~

Hickenlooper, et al,

_Non Compliance with Monte_

(A)   Description of Disability; ▸ to include wheelchair and hand impairment; vision and hearing disability.

(B)   What verification do you have of your disability?  See medical records and attached documents.

(C)   Description of problem; Jill's exhibit _____/_____ Florida Department of Corrections letter from Martie Taylor, ADA coordinator Department of Corrections dated March 29, 2012.

(D)   "The reason you are reexamined when you are moved is to make sure nothing has been missed at another institution".

(E)   ~~Jill's exhibit~~ _r_ on _____ ~~per~~ grievance ~~number~~ Coit was allowed 5 sessions in the law library dated _which 4 WP Hampden allows,_ stating _see exhibit 15_

(F)   _Coit request the following accommodations. 1 through_ Coit was granted law library access on Monday 1:30pm, Wednesday at 8:30am and 1:30pm, and Friday at 8:30am and 1:30pm. _for appointment_ _see exhibit grievance no 1403-314-185_

(1)   Issue; Coit wants to change the law library times to correspond with the Florida Administrative Code 33F.A.C. 33-501-301, law libraries page number 5 of 16 (g) inmates in open population who do not have deadlines described in paragraph (3F) shall be expected to use the library or access law library services during off duty hours.

Coit would like to change her law library hours to correspond and meet this section (g) to her off hours.  Coit requests the following times Monday 1:30pm, Tuesday, Wednesday, Thursday, Friday 8:30am.  That would mean Coit would only have _4m_ hours for the law library.  Coit's vision is better in the morning and it only makes sense to use the law library's computers when she sees the best.

Jill's exhibit _____2(A)_____ Health Department of Corrections health slip/pass dated 3-21-14 to 3-21-15 it states can work 2 hours only afternoon.  The Doctor was Lourdes Colon-Cacho medical director LCI/FWRC and Coit has the same _restriction_ from doctor Jerry Burgess Jr.-MD it was written on 2-5-14 to 3-5-15 stating the same thing.

Coit has had the same restriction for pm work for the last 2 to 3 years. (over)
Coit being an Interstate Compact Inmate and a member of the Montez Remedial
Plan which lists that disabled inmates can have shorter work hours. exhibit — see medical File
See exhibit Complete — Montez Remedial Plan. — 14 in medical

At the ADA Lowell Correctional Institute Annex meeting on 7-29 Coit
addressed the issue with the associate warden of programs Ms. Lumpkin and was
told    to send her an inmate request regarding this issue.

(2) (A) Tape recorder for correspondence with blank tapes See Jill's exhibit 3 m
dated 8-26-11 from Homestead Classification Officer, C.R. Tate which states the
following "medical staff have received recommendations to assist you for the need
of an impaired inmate assistant who will assist you with reading/writing."

Pursuant to Title 2 of the ADA, a qualifed inmate with a documented
disability may request an accommodation to allow her to participate in, or benefit
by, the programs, services, or activities of the department.  This request cannot be
used to request medical devices, passes, medicine, or any other medical request.

The form to request accommodations is attached.  Auxiliary aids include; 1.
Braille machines 2. Tape player with headphones 3. books and magazines on tape
4. magnifying device 5. keylock 6. cane 7. talking audio tapes if needed for
correspondence 8. orientation of the facility.  I need to check back on the status of
the initial paperwork admitted at Broward CI. "

(B)   Coit requests a tape recorder to be used in the law library and was furnished see exhibit 17
with an Olympus Digital Voice Recorder VN-702PC is approximately 1 ½ inches
wide by 6 inches long.  Coit alleges it is much too small for her to see since she is
sight impaired and has a hand mobility problem.  It also does not have blank tapes
it is strictly a recorder that is used to submit to the law library typist to have legal
documents typed. Coit uses recorder for legal documents to be typed.

(3)   Jill submits exhibit          4          it is a letter from Martie Taylor to
Julie Russell at Colorado      Department of Corrections, Julie Russell is the
office of legal services ADA inmate coordinator.  Dated 11-1-2011 subject :
Colorado Inmate 86530.  Second paragraph states "she was told the education
department could schedule 6 hours per week to complete correspondence courses
on the computer.  If copies are needed she would be charged.  She was told she
would be allowed to order educational materials with a tape player and a computer.
She was not allowed to order a Kindle and she will not be changed from her
houseman's position due to the number of medical restrictions she has." The first
paragraph states just last month I got a request from her for a key lock, books on
tape, a magnifying device, blank audio tapes, extra sessions in the law library, to
take classes from the Hadley School for the Blind, and to order educational
materials for a tape player and a computer.  She also wanted to order a Kindle, a
job change, and to use the computer for classes and homework. "

Still not allowed classes for Hadley School for
the Blind — No computer access and not allowed
Braille tools —

2



(A) Coit alleges that she has been allowed a keylock, a magnifying sheet/device (*worn out*) and to take part in the books on tape library program (that is not a prison program but it is for people that are sight and vision impaired.) *Books on Tape.*

) *Remedy* → Coit has not been allowed to utilize the computer to take correspondence courses. *allow her this accommodation.*

(4) *u* Jill's next exhibit is an inmate request dated 1-24-12 to AWP Ms. Pool it states (one) would you please schedule me for 6 hours per week to take classes in the educational department per Tallahassee (letter telling Colorado I was allowed this.) (Two) how do I go about ordering educational material and computer programs? May I speak with you about this issue.  AWP Ms. Pool's response was "Lowell does not have any computer educational classes for inmates.  It was dated 1-26-12. *exhibit 5*

Coit alleges this is a direct violation of what the Florida Department of Corrections ADA coordinator is telling Colorado.  Coit is allowed to take classes in Colorado where there is none available *to her* in the State of Florida therefore, Coit is not allowed to take any computer classes or educational *computer* programs.

(5)   Coit requests permission for the Dragon program for speech recognition for *the comput* *for* education and legal access.  She is willing to pay for all educational material and for programs, books, and tapes. *ex. exbs. 6 and 4.*

(6)   Coit submits Jill's exhibit ~~# # / L~~ which is an order by the Special Masters in the Montez Class Action lawsuit it's dated April 22nd, 2011, the second paragraph states; "the Special Masters cannot provide advice to clients or other inmates.  Our remedial plan would have applicability only if claimant remained a Colorado inmate but was housed in a Florida facility."

Coit alleges she is a Colorado inmate housed in a Florida facility.

(7)   Jill's next exhibit _____ *P* _____ is from the orthopedic patient notes dated 7-12-08 physician Dr. Martinez-Hochbe _____ it states under assessment "I'll recommend that she continues to use heat packs on her wrists and would use speech recognition programs for typing instead of her using her hand on the keyboard.  This was documented in the facility file." *also deft. ex cor 00572 — (Dragon program)*

(8)   Coit alleges that she has a hand and a vision impairment and under the Montez Remedial Plan she is allowed see Montez Remedial Plan page 22 Jill's exhibit- XVII Library equipment; "electronic equipment such as audio equipment, tape recorders, and computers will be available for use when appropriate to be checked out in the general library and/or areas where appropriate, for use by inmates with disabilities." *ex. exbit 9*

3



*Coit request she be allowed to purchase a computer.*

(9) Coit requests computer access for educational and correspondence courses she wants to be scheduled at least 6 hours per week and be allowed to order educational materials for the tape player and for the computer. *exhibit 7* *exhibit 18*

*grievance no. 1202-314-106*

(10) Due to hand impairment Coit requests enlarged pens and or ergonomic pens that will facilite her ability to write. Jill's exhibit _____10_____ dated 7-1-2008 Colorado Department of Corrections – Query Administration Summary. Restrictions patient should not type or write except for signing. *need Block ink* *years* *can use Batten*

(11) Coit requests a backpack to be used on her wheelchair. Jill's exhibit _____11_____ Colorado Department of Corrections allowable property for interstate corrections compact dated 1-26-2011 at the middle of the page specifics; one wheelchair, one backpack, one pair of medical shoes with lifts, one pair of hand/wrist splints, all other medical property will be moved and returned to the Colorado Department of Corrections. *(also exhibit 19)* *(12 no 4)*

(12) Accommodations resolution it's Defendant's exhibit Coit 00256 number 4 listed backpack. "You do have a mobility disability. The following disability screening it has been determined that you have a mobility/disability issue and therefore entitled to the following accommodations; number 4 is a backpack. *exhibit 12*

(13) Coit requests a raised locker see the above exhibit Jill's exhibit *( 12 no 2 )* *also def* number 2 listed is a raised locker. Coit was issued and allowed to have a raised *coit 01062* locker at Homestead Correctional Institution as well as at Lowell Correctional Institution on the Main, when she was in I dorm. All the raised locker involves is setting one metal locker on top of another which raises it to wheelchair height. This is an easy accommodation Coit is currently housed in Sierra dorm handicapped cell, there is more than enough room to have a raised locker. *Coit has medical permit for raised locker see exhibit 2 (A)*

(14) Coit requests being able to view the television with captioned ~~television~~ *(words printed)* viewing. Currently the televisions in the Florida Department of Corrections Lowell Annex are up high and Coit cannot see the screen or the printed caption below. Coit requests a television low enough so that she can see it. *and tapes*

(15) Coit requests sign language classes/programs, books and flashcards for education to learn sign language. Coit is hearing impaired and needs to learn sign language. *There are no provisions for viewing tapes to learn sign language.*

(16) Coit requests a Braille machine with tools to use to learn Braille see exhibit which is a page out of an ADA catalog which shows various tools used to learn Braille. *exhibit 13*

4

(17) Coit requests additional time to eat and complete daily activities around the facility Coit has a medical permit that allows her extra time to eat.  See medical pass exhibit Jill's exhibit _2 (and exhibit ____) 2 No 14 + 20_

(18) Coit requests that her medical appliances be allowed to be kept out on her bed due to the fact that she is sight impaired.  Coit has a medical permit to have her talking book recorder left out on her bed.  It does not fit into her locker.  If it is in her locker it runs the risk of it getting broken.  It is a $400 machine and there is not logical penalogical reason to force Coit to put it in her locker where it can be (see exhibit 2 perm C) damaged when she has a medical permit stating she can have it on her bed.

(19)   Coit requests that she not be retaliated against by having her medical passes revoked as was done to other inmates.  This has not been done to Coit in the past and she certainly hopes that it will not be done to her in the future.

(20)   Coit submitted a request for a modification or accommodation request at the Florida Women's Reception Center on 1-7-14 it was typed by her Classification Officer and submitted, however Lowell Correctional Institution – Annex AW Pool refuses to accept the modification or accommodation request.  Coit filed a grievance and was told that it had to be submitted to each facility, Coit has been unable to get her Classification Officer to fill out her accommodation request form therefore she has not submitted a new one.  After repeated attempts to meet with Coit's Classification Officer Ms. Cummings she has filed numerous grievances asking for copies of blank forms Ms. Cummings had her sign at the ADA accommodation meeting prior to the one on 7-29-14. _exhibit 20 and 21_ _grievance 1405-914-075_

(21)   Coit respectfully submits this modification of ADA accommodation request to AWP Ms. Lumpkin and the court to show that she has formally made these requests. _see exhibit 22 A + 23 B ( 2 pgs) date 1-7-17_

(22)   Coit wishes to notify this court that the Florida Department of Corrections has repeatedly notified the Colorado Department of Corrections that Coit's disabilities have been accommodated when they haven't this is evidence that will be taken to court because according to the Interstate Corrections Compact Coit is allowed the same privileges as she would have been allowed in Colorado.

(23)   This is especially true since Coit has a court order from the Montez Remedial Plan stating that she is disabled and she is entitled to various programs and benefits under the Montez Remedial Plan. _exhibit 16_

(24)   Coit submits the final document it is a Florida Department of Corrections Consultation Report dated 5-12-11 stating that patient is legally blind based on criteria for visual field and is eligible for services for the "legally blind."

(25) Issue Wheelchairs _exhibit 14_

Coit is a member of the Montez Remedial Plan per Jill's exhibit _16_ dated April the 22nd 2011 order from the Special Masters stating and.

see exhibit 2 B- wheel chair + pod. See exhibit 23 wheel chair cost - Colorado will pay for wheel chairs need wheel chair to get to programs services + activities cost thus an ADA issue.

5

(26) Request - Blind Camera - so I can read all materials non disabled - Sighted inmates are allowed. Not a security risk - Coit will have family pay for Blind Camera that identifies object and reads printed materials/documents. Exhibit 24

(27) Chapter 33 allows for Nail clippers to Be up to 2½ inches. Coit submitted a copy of handicapped Nail clippers to AWP Lumpkin - Lumpkin stated at ADA meeting she had a file on items Coit submitted for ADA accommodations. so see file. Carters Nail clippers are to small to use for hand impairment and Vision impairment.

(28) A way to dental floss her teeth. Per ACT she was granted this accommodation. See Exhibit 25 Dental is a service - Coit's teeth are going to Rot too.

(29) Extra time to move about facility, do chores/job and get to appointments through gates and etc. see Exhibit 12 No 13, 14, +20

(29½) Transported in wheel chair accessible van with appropriate heat and cooling. see exhibit 12 (No 19)

(30) all policy + procedures of 7500 put on Law Library Computer so sight impaired have access to read them.

(31) Kindle to use for enlarging print for Books and Magazines - Coit will pay for. one. / see exhibit (31 13)

(32) Hardcopied all - I customize in one. /

Respectfully submitted. I see Coit. None of the accommodations are a security risk and are allowed at other SCF prisons. Due to Coit's Multiple disabilities - legally Blind, hearing impaired, hand disability, she requires specific ADA accommodation. Coit will pay for all items.

page 6

Case No. 1:92-cv-00870-CMA-MEH   Document 5509   filed 04/06/15   USDC Colorado   pg 134
of 136

Gov. Scott wants to reform Florida prison system - Florida - MiamiHerald.com          Page 1 of .

Exhibit 100

SERVICES     SUBSCRIPTIONS     DIGITAL NEWSPAPER     PLACE AN AD     MIAMI.COM     MOMSMIAMI.COM     DATA SLEUTH     ELNUEVOHER



$159/month for 39 months with $1,899 due at signing
No security deposit required. Tax, t:tle, license and dealer fees extra.
Mileage charge of 0.20/mile over 39,000 miles

Low mileage lease example
for very well qualified lessees

The Miami Herald > News > Florida

# Florida

Sunday, 03.06.11  Welcome Guest   •   Login   •   Register

Miami-Dade | Broward | Florida | Legislature | Americas | Cuba | Haiti | Nation | World | Politics | Action Line | C

Posted on Tuesday, 02.08.11                          A                email   print   comment   reprint

0Share

Top Searches: (

# Gov. Scott wants to reform Florida prison system

Gov. Rick Scott wants to reform Florida's prison system as a way to cut costs, reduce inmate recidivism and turn some prisoners into productive citizens.

**Related Content**

- Budget cuts could mean closure of four S. Fla. parks
- Gov. Scott seeks to kill drug database that would combat pill mills
- Lawmakers demand Florida budget details from Gov. Scott
- On Twitter | Opinions on #budgetcuts
- On Twitter | Contact Gov. Rick Scott @FLGovScott

BY STEVE BOUSQUET
HERALD/TIMES TALLAHASSEE BUREAU

TALLAHASSEE -- — Eager to cut costs in Florida prisons, Gov. Rick Scott is taking a cue from reform advocates and proposing more money to help inmates fight drug and alcohol abuse, improve mental health and learn literacy skills.

The proposal marks a shift in strategy for Scott, who campaigned on cutting the prison budget. Now he wants to redistribute resources in a way lawmakers and reformers have long discussed: to make inmates more productive citizens, so they are less likely to return to prison.

"We're clearly not 'correcting' anything, much less rehabilitating them," said Vicki Lukis, a member of an agency task force. "The old model was lock 'em up and wait for them to return ... I hope that in a couple of years, we'll see a very different Department of Corrections."

In Florida's revolving-door prison system, one of every three inmates commits new crimes after release and is back in custody within a few years.

Exhibit C4

# DEPARTMENT OF CORRECTIONS
## OFFICE OF HEALTH SERVICES

# ACKNOWLEDGMENT RECEIPT OF
# THERAPEUTIC SHOES

I hereby acknowledge receipt of therapeutic shoes.  I understand that replacement will be my personal obligation if such is needed in less than a year.

Shoe Make: _Dr. Comfort Shoes_____ Size: __8____ Width:_____

_Hammer toes touch the top of shoe + will cost._

_____
Inmate Signature

_1639736_____          _4-30-14_____
Inmate DC Number                          Date

_____
Witness Signature            WILLIAM N. LANG
                             ADVANCED BRACE/SOPC
                             RMC

_____          _4-30-14_____
Name Stamp                                Date

Reason for issuance of special shoes:

____  Postsurgery recuperation          _to acco_
____  Significant deformities           _(L) log length_
                                        _discrep_

Issuing institution:_____

Extraneous circumstances (if reissued within one year):_____

_____

_____

Inmate Name _Coit, Jill_____
DC# _CU8681_____ Race/Sex _WF_
Date of Birth _6-11-44_____
Institution_____

Distribution:
   White - Health Record
   Canary - Inmate

**This form is not to be amended, revised, or altered without approval of the Deputy Director of Health Services Administration**

Durable Medical Equipment  Sec 4DME CONTRACT



# COLORADO DEPARTMENT OF CORRECTIONS

## Durable Medical Equipment (DME) Contract

Jill Coit     86530     LVCF
**Name**         **DOC #**       **Facility**

I am being issued: Black Shoes   Surefit/Barry   8 Med. Width
           Equipment type     Product / Model      Size

Style # S116-1             on this date 5/14/10.
    Serial/ID #          Model #

I understand that I share in the responsibility to keep the durable medical equipment listed above in good working order by using it only for its intended purpose.

I will not allow other offenders to use this durable medical equipment. If I allow others to use this equipment, my use of the durable medical equipment may be limited, restricted or removed.

I understand that I must report any issues concerning the repair of this durable medical equipment to Clinical Services staff through the kite system. DOC is responsible to repair or replace the equipment within 60 days of receipt of my kite indicating there is a problem with the equipment.

I understand that, if the preponderance of the evidence shows that I altered, cut on, damaged, or destroyed this equipment, I will be responsible for the replacement cost of the equipment. In this event, I may request replacement of the same equipment at my own cost. Arrangements for payment will need to be made in advance. If I am unable to pay the cost of replacement, that cost will be charged to my inmate account.

I understand that if I misuse, alter, cut on, or otherwise damage or destroy this durable medical equipment, I will face COPD charges for abuse of clinical services, and destruction of state property.

I understand that if I use this durable medical equipment inappropriately and my inappropriate use of such equipment results in a COPD violation, my use of the assigned durable medical equipment may be limited, restricted or removed.

_____      _____
Offender signature             Staff signature & date 5/14/10

Original in Medical File
    cc:    Facility Property Officer
        HQ CLS ADA Scheduler     Fax# 719-226-4565
        CLS Medical Case Manager    Fax # 719-269-4075 or 719-269-4072

May 2009

COIT-00143