FILED
UNITED STATES DISTRICT COURT
DENVER COLORADO

MAY 1 2 2015

JEFFREY P. COLWELL
CLERK

## IN THE US DISTRICT COURT OF COLORADO

**Montez, et al**

**vs**                                    **Case No 52-CV-00870**

**Hickenlooper, et al**

---

### OBJECTION TO JUDGE AGRUELLO'S RULING ON DOCUMENT NUMBER 5515 FILED 4-21-15 DENYING APPOINTMENT OF COUNSEL, ETC.

---

**COMES NOW** Jill Coit, pro se, legally blind member of the Montez Remedial Plan. Coit alleges the following regarding ~~The~~

~~When~~ appointment of counsel filing docket No. 5504 filed 2-2-15, docket no 5508 and docket No 5509:

(1)    Judge Arguello completely reversed "Order of Special Master," Judge Richard M. Bouchers, Special Master order of April 22, 2011 which was well within the time frame of the Montez Remedial Plan since the Colorado Department of Corrections (C.D.O.C.) was not in compliance with the Court Ordered Montez Remedial Plan.

(2)    Exhibit docket No. 5504 Page 36 of 96 Special Master, Richard M. Bouchers stated, "The Remedial Plan would have applicability only if Claimant remained a Colorado inmate but was housed in a Florida facility."

(3)    Coit is a Colorado inmate housed in a Florida Facility and has been since January 26, 2011 therefore the Montez Remedial Plan has applicability.

(4)    Coit had no control over where the Colorado Department of Corrections houses her.

(5)    This Court has an ~~objection~~ obligation to enforce the Montez Remedial Plan to its legitimate member. Coit is legitimate member of the Montez Remedial Plan.

(6)    Per Deposition taken for Defendant Dennis Houghnon on 2-19-15 by attorney Ed. Ramey for case no- ___12 - c v - 00609___ .
Beginning on page 76 line 24 & 25 continuing to page 81.

Ramey, "For example, if – let's just say hypothetically that in some manner Ms. Coit was being or improperly treated by the Florida Department of Corrections, whether the inappropriately or Colorado Department of Corrections would care or have anything to say about it. (pg 76 & 77)

1

(pge 72 line 5)Houghnon, "Yes, we would care."
line 6, Ramey, "Okay well, tell me about that.  How –"
line 7, Houghnon, "Well, it's our inmate.
line 11, Houghnon, We're charged with housing the inmates."
line 13, Houghnon, "and part of that is treating them like humans and taking
care of them, I mean there're criminals, but they're still human beings,"
line 24, Houghnon, "As far as the treatment goes, I would hope, but, again, I
don't know, that would be made aware of it and would either correct it if it
was improper or move her out of there or whatever.  But I don't know.  I
don't know how –I don't know what happens once they move out of state."

Pge 79-line 15, Houghnon, "In another facility, I actually set it up to where
we had an investigator from Colorado in the facility at least three days a
week.:

Page 80 line 17, Ramey, "OK, I assume if there was something completely
off the charts, like you learned that Ms. Coit was being water boarded
somewhere or something your office would investigate."

line 21 – "Houghnon, "Definitely, yeah"

Page 81 line 1, Ramey, "And something like an ADA violation American's
with Disabilities Act."

line 3, Houghnon, "Right"

Line 4, Ramey, "If Ms. Coit was required to be in a wheelchair and they just
didn't give her one, your office would investigate?

line 12, Houghnon, "We would assist with anything they needed, though."

line 14, Ramey, "Okay, But I mean, that would be of concern to the
Colorado Department of Corrections, I assume."

line 17, Houghnon, "Yes"

line 18, Ramey, "Because it's your inmate."

line 20, Houghnon, "Yes"

(7)     As this Court can plainly see it is still the Colorado Department of Corrections responsibility to take care of Coit's ADA needs not being met by the Florida Department of Corrections.

(8)     Coit also alleges that It's also this Court's responsibility Under the Montez Remedial Plan to make sure Coit's ADA under the Montez Remedial Plan were carried out just as if she were still in Colorado, tenth Circuit Court.

(9)     Coit was seriously injured Because F.D.O.C. guard stole her wheelchair and Coit was placed in a F.D.O.C. facility that did not have ADA accommodations to meet her ADA needs.

(10)    Colorado ADA - _A l c_      _Ᵽᵴᵙ_      director of clinical Services Joanne Shoemaker did not notify Florida DOC of Coit medical needs, ADA needs not disabilities.

(11)    Coit was denied all her Colorado Medical records including MRI's, X Ray's, Medical Specialist reports and C.D.O.C. medical doctor's reports to present to F.D.O.C.

(12)    F.D.O.C. is so financially strapped it did not have adequate number of wheelchairs to replace Coit's _płᵗᵤᵢᵦᵣ_ wheelchair that she arrived in F.D.O.C. with on 1-26-11 therefore Coit was seriously and permanently injured.  Coit's eye Ball was damaged – (Vitreous fluid loss) Coit is still suffering from this injury and her vision is even more impaired, restricted.

(14)    to F.D.O.C. declared Coit legally blind see exhibit pge 36 & 96 – docket No 5504.

(15)    Coit has no way to access LCI-Annex Computers in the law library to provide this Court with legal sites to support her claim that Montez is applicable to her in Florida and that she could use the support her objections to Judge Arguello's decision.  _Coit is legally Blind and can not read normal size print. Her friend reads her_

(16)    _this courts rulings_ Judge Arguello's pge 2 of 2 statement, "Ms. Coit is reminded that she my pursue any further complaints that she is the victim of discrimination on account of her disability or concerns regarding substandard medical treatment or equipment in a separate act on, under the Eighth Amendment or relevant state statutes.  See Rhodes V Chapman 452 U.S. 337, 346-47 (1981)

(serious deprivation of basic human needs may ~~be~~ constitute cruel and unusual punishment ~~is~~ in violation of the Eighth Amendment of the U.S. Constitution)

(17)   This is not a means for Coit to take.  Coit does not even have access to the case ~~noted~~ _cited_ by Judge Arguello.

(18)   Coit is legally Blind – She ~~needs~~ _needs_ case cites on the law library computer which enlarges print, she has no access to the law library computers and no future means of access.

(19)   Coit as in fear of her life (retaliation).  Guard assaulted Coit on cameras 2-21-15 and she has been verbally threatens by medical employees.

(20)   Inmate _Ellington_ died for the same reason Coit was threatened.  (reported illegal guard actions)

(21)   Due to Coit's advanced age and multiple disabilities she can do no more than report what has happened to her and what she fears will happen if C.D.O.C. and this Court does not move her from F.D.O.C.

(22)   Coit's home state is Alaska and Colorado houses Alaska inmates. Alaska could trade one of their disabled inmates for Coit or return Coit to Colorado where Montez does apply.  Coit is confident that a New Montez will be filed and she will be a part of the new ~~claim~~ _class_ action.

**Wherefore,** Coit prays this Court will appoint counsel due to Coit ( _legally Blind_ ) disabilities and inability to represent herself since Montez was applicable during the time ~~most~~ of Coit's ADA and Montez Remedial Plan Violations occurred and are still occurring.  My hand hurts I cannot write anymore it is swollen and I am an extreme pain with no means to communicate my ADA needs.

Respectfully Submitted,

Jill Coit #763936

Jill Coit

LCI ~~address~~ Ocala Florida 34482

23 See attached ex. Coit 00254 - which is C Doc - 2008 - ADA accommodation form. See line 23, "In addition to the ADA accommodations, you are entitled to the Benefits enumerated in the Montez Remedial Plan."

24. - 2010 ADA accommodations, Coit 00256, enclosed says the same thing. I am entitled to the benefits of Montez, It does not say[4] I have to be on Colorado - Just Doc - member of Montez.

See enclosed 6 pages of Houghnon Deposition and 2 pages of exhibits listing Judge Bouchers and Medical document for legally blind status.

Certificate of Mailing

I hereby swear under the penalty of perjury that I have mailed the above for the following by LCI-Annex legal mail person

US District Court

~~attorney General~~- _First Class_

postage prepaid.

on this _7th_ day of _May_ _____ 2015

_[signature]_                    5-7-15



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL HICKENLOOPER, et al.

      Defendants.

---

Claim Number 03-129
Category III
Claimant: Jill Coit, #86530
Address of Claimant: HCI, 19000 S.W. 377th Street, #200, Florida City, FL 33034

---

## ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the notice of change of address filed by Claimant. *Doc. #5033.* On that document, Claimant has handwritten a question concerning the applicability of the Remedial Plan applying to a Florida correctional facility.

The Special Master cannot provide advice to Claimant or other inmates. The Remedial Plan would have applicability only if Claimant remained a Colorado inmate but was housed in a Florida facility. Claimant should contact class counsel for further clarification.

IT IS HEREBY ORDERED that Claimant's notice of change address is accepted for filing.

SIGNED this 22nd day of April, 2011.

BY THE COURT:

Richard M. Borchers
Special Master

# CONSULTANT'S REPORT

## NO PROCEDURE(S) MAY BE PERFORMED WITHOUT PRIOR APPROVAL BY THE REGIONAL MEDICAL EXECUTIVE DIRECTOR, DEPARTMENT OF CORRECTIONS

**Additional History:**

67WF        Inf Altitudinal defect
            OD  2° Stroke

**Findings:**

BVA  20/50
     LP

**Recommendations:**

Pt is legally blind based on criteria for Visual Field And is eligible for services for the Legally Blind.

S. RAZDAN M.D.
CHO, Chief Health Officer
HOMESTEAD CI

**Consultant Signature/Stamp:**

Date: 5-12-11

## IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

Inmate Name __COIT, JILL__
DC# __163936__   Race/Sex __W/F__
Date of Birth __6/11/1944__
Institution __HOM CI__
EOS DATE: __LIFE__

USE ADDITIONAL SHEET(S) AS NECESSARY

Form is not to be amended, revised or altered without approval of the Deputy Assistant Secretary of Health Services Administration

DC4-702 (Revised 10/05) Page 2 of 2

Florida DOC.

**Coit v. Zavaras**                    **Dennis Hougnon**                    **2/19/2015**

Page 76

```
 1          A.    That's what I was told, yes.

 2          Q.    Okay.  I assume that transfer was done

 3   under what's known as the Interstate Compact?

 4          A.    Yes.

 5          Q.    Okay.  I don't know if you would know

 6   these things.

 7          A.    I have some knowledge of how that process

 8   works.

 9          Q.    Okay.

10          A.    But I'm never involved with it.

11          Q.    Okay.  To the best of your knowledge, does

12   the Department of Corrections have any control or

13   influence over the nature or conditions of confinement

14   of a Colorado inmate who has been transferred out of

15   state under the Interstate Compact?

16          A.    I do not know.

17          Q.    Okay.

18          A.    I would hope so, but I don't know.

19          Q.    Okay.  And I'm trying not to ask that as a

20   legal question, because I'm sure Ms. Gellar and I could

21   go do some research and figure it out.  But I don't

22   want to.  But I was wondering if you knew?

23          A.    I do not know.

24          Q.    For example, if -- let's just say

25   hypothetically that in some manner Ms. Coit was being
```

1    inappropriately or improperly treated by the Florida

2    Department of Corrections, whether the Colorado

3    Department of Corrections would care or have anything

4    to say about it?

5              A.    Yes, we would care.

6              Q.    Okay.  Well, tell me about that.  How --

7              A.    Well, it's our inmate.

8              Q.    Okay.

9              A.    It's our inmate.

10             Q.    Okay.

11             A.    We're charged with housing these inmates.

12             Q.    Okay.

13             A.    And part of that is treating them like

14   humans and taking care of them.  I mean, they're

15   criminals, but they're still human beings.

16             Q.    Okay.

17             A.    So you have to take care of them.  Okay?

18   Inmates out of state have to follow the rules of those

19   prisons.

20             Q.    Okay.

21             A.    Not the rules of Colorado, the rules of

22   those prisons.

23             Q.    Okay.

24             A.    As far as the treatment goes, I would

25   hope, but, again, I don't know, that we would be made

1    aware of it and would either correct it if it was

2    improper or move her out of there or whatever.  But I

3    don't know.  I don't know how -- I don't know what

4    happens once they move out of state.

5         Q.   Okay.  So has the Inspector General's

6    office, to the best of your knowledge, ever been

7    contacted about or involved in investigating anything

8    that's happened or alleged to have happened at a prison

9    facility out of state to which a Colorado inmate has

10   been transferred?

11        A.   Yes.

12        Q.   Okay.  First off, approximately how many

13   times, to the best of your recollection, or how often?

14        A.   I know of two situations.  One situation

15   is -- involved several allegations.

16        Q.   Okay.  And have either of these situations

17   involved Ms. Coit in any way?

18        A.   No.  Not at all.

19        Q.   Okay.  And generally, without giving me

20   the identity of the facilities or the names of inmates

21   or anything like that that I have no need to know, what

22   are the nature of the circumstances with regard to

23   which your office has been contacted that you're

24   describing?

25        A.   Basically, it's the -- that we were

**Coit v. Zavaras**                    **Dennis Hougnon**                    **2/19/2015**

Page 79

```
 1    contacted by inmates about the ineptness of the

 2    facility.  They're private facilities that we

 3    transferred inmates to several years ago because we

 4    were overcrowded.  Private prisons come under my

 5    control.  So those prisons were out of state.  They're

 6    private prisons.  I had to transfer -- I had to go down

 7    to those locations and ensure that the inmates were

 8    being treated properly, that -- that they weren't

 9    allowed to get away with tattooing, you know, having

10    drugs brought in, and those type of things, and that's

11    what some of the inmates alleged was going on --

12            Q.    Okay.

13            A.    -- in one facility.

14            Q.    Okay.

15            A.    In another facility, I actually set it up

16    to where we had an investigator from Colorado in the

17    facility at least three days a week.

18            Q.    And what was the nature of the allegation

19    about that facility?

20            A.    Same thing.

21            Q.    Okay.

22            A.    Same thing.  But it happened in real time

23    because I had an investigator there.  So if there was

24    an allegation, he went and handled it almost

25    immediately.
```

Coit v. Zavaras                        Dennis Hougnon                        2/19/2015

Page 80

1        Q.    Okay.

2        A.    But not being treated properly.  You know,

3   They don't call me -- you know, they don't say

4   Mr. Smith, they just call me Smith.

5        Q.    Okay.

6        A.    I mean, that's some of the allegations.

7        Q.    Okay.

8        A.    But you have to address some of that,

9   because it festers.

10        Q.    Okay.

11        A.    There were allegations that there were

12   drugs coming in, tattooing, that there was sex going on

13   with the inmates.

14        Q.    Okay.  And your office would look into

15   that?

16        A.    Yes.

17        Q.    Okay.  I assume if there was something

18   completely off the charts, like you learned that

19   Ms. Coit was being waterboarded somewhere or something,

20   your office would investigate?

21        A.    Definitely, yeah.

22        Q.    Okay.

23        A.    I would hope so.

24        Q.    Okay.

25        A.    Yeah.

Coit v. Zavaras                    Dennis Hougnon                              2/19/2015

Page 81

1          Q.    And something like an ADA violation,

2    Americans with Disabilities Act.

3          A.    Right.

4          Q.    If Ms. Coit was required to be in a

5    wheelchair and they just didn't give her one, your

6    office would investigate?

7                MS. GELLAR:  Objection as to form.

8          A.    I'm not sure we would investigate that,

9    because there's people who have better knowledge of

10   that.

11         Q.    (BY MR. RAMEY)  Oh, okay.  Okay.

12         A.    We would assist with anything they needed,

13   though.

14         Q.    Okay.  But, I mean, that would be of

15   concern to the Colorado Department of Corrections, I

16   assume?

17         A.    Yes.

18         Q.    Because it's your inmate?

19                MS. GELLAR:  Objection as to form.

20         A.    Yes.

21         Q.    (BY MR. RAMEY)  In terms of incidences or

22   number of incidences of sexual assault upon female

23   inmates in Colorado at any of the women's Colorado

24   facilities, you indicate that you keep data on -- of

25   some sort of allegations and criminal proceedings that

## ACCOMMODATION RESOLUTION

### You DO HAVE A MOBILITY DISABILITY

Offender Name: **COIT, Jill**
DOC#: **86530**
Date of Resolution: **June 2, 2008**

Following a disability screening it has been determined that you have a mobility disability and are therefore, entitled to the following accommodations:

1. Cane
2. Knee Brace
3. Assignment to a designated facility
4. When you are housed at a facility that maintains an elevator for offender use, you are allowed to use the elevator
5. Lower Bunk
6. Lower Tier
7. Special cuffing & shackling considerations
8. Staff assistance during an emergency or evacuation
9. Access to accessible bathroom facilities to include a shower chair
10. Not required to climb stairs
11. Medically necessary shoes w/ lift
12. Backpack
13. Special transport considerations
14. Assistance securing, carrying & disposing of food tray contents

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or damaged.

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list. Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

If you feel you require additional accommodations, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

### You DO NOT HAVE A VISION, HEARING, or UPPER EXTREMITY DISABILITY or any other MEDICAL CONDITION RISING TO THE LEVEL OF A DISABILITY

### Your MENTAL HEALTH CONDITION DOES NOT RISE TO THE LEVEL OF A DISABILITY

Page 1 of 2

COIT-00258

2010

## ACCOMMODATION RESOLUTION

Offender Name: COIT, JILL
DOC#: 86530

### You DO HAVE A MOBILITY DISABILITY

Following a disability screening it has been determined that you have a mobility disability and are therefore, entitled to the following accommodations:

1. Wheelchair
2. Raised Locker Box
3. Medically Necessary Shoes w/ lift
4. Backpack
5. Assignment to a designated facility
6. Assignment to an accessible cell
7. Access to accessible bathroom facilities to include a shower chair or bench and a toilet of appropriate height
8. Seating at an accessible table during meals
9. Lower Bunk
10. Lower Tier
11. Not required to use stairs and when housed at a facility that maintains an elevator for offender use, you are allowed to use the elevator
12. May be seated in wheelchair and present ID for standing count.
13. Additional time to arrive at destinations within the facility
14. Additional time to complete activities of daily living
15. Requires staff assistance when cuffed and/or shackled. Refer to Section XXII of the Remedial Plan
16. Requires staff assistance during transport when embarking and disembarking from the vehicle
17. Reasonable accommodations will be provided during searches. Refer to Section XXIII of the Remedial Plan
18. Requires staff assistance during an emergency or evacuation
19. Transportation in an accessible vehicle. Refer to Section XXIV of the Remedial Plan.
20. Assistance with carrying and disposing of food tray contents by offenders assigned as dining room workers.

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

**You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or becomes inoperable for any reason.**

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list. Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

COIT-00256