IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

JOHN HICKENLOOPER, et al.,

Defendants.

## AFFIDAVIT OF KEITH NORDELL

I, Keith Nordell, upon being duly sworn under oath, of lawful age, and having personal knowledge of the matters set forth herein, depose and state as follows:

1. This affidavit is based upon my personal knowledge.

2. My full, legal name is Keith Charles Nordell.

3. I am employed by the Colorado Department of Corrections (CDOC) as the associate director of the Office of Legal Services in which capacity I am also the ADA Inmate Coordinator.

4. I have been employed by the CDOC since March 1, 2001

5. As part of my job, I manage Americans with Disabilities Act (ADA) and ADA Litigation Remedial Plan compliance.

6. I hold a J.D. from West Virginia University College of Law.

7. I have also taken special ADA training which consists of CDOC's ADA refresher training, and review of the monthly ADA Compliance Guide publications.

A-1

8. Under former Executive Director Mr. Zavaras, Administrative Regulation 750-04 was revised to codify the role and purview of the AIC. That clarity around the important role of the AIC remains intact, "The associate director of the Office of Legal Services has the final authority on determination and enforcement of the ADA within the CDOC as it pertains to offenders and prison operations and reports directly to the executive director... on such matters." See AR 750-04 (V)(A), eff. 12/15/14.

9. To be clear, neither my office nor my authority has been diminished between September of 2012 and the present.

10. Rather, I believe that my role has been strengthened.

11. During my tenure as the AIC, I have undertaken efforts to surround myself with a team of what I call my "subject matter experts."

12. I have three on-site staff at the Office of Legal Services in Colorado Springs, CO who have received ADA training and are certified through the University of Missouri's ADA Coordinators' Training Certification Program.

**Tracking:**

13. Each day, my team tracks the location and accommodation of all *Montez* Class Members as well as our larger ADA- impacted offender population.

14. We have a number of sophisticated systems in place to aid in this very serious and important role. We utilize them daily.

15. Some of our newer systems, including the Accomodation Tracking System ("ATS"), have built upon what was established in the *Montez* litigation and have been expanded to track and serve all ADA-impacted offenders.

16. We take our obligations under the Remedial Plan ("RP") and the ADA quite seriously.

17. At any given date and time, I or my staff can immediately ascertain (1) where an individual is presently housed, (2) what ADA accommodations have been made for that individual, by whom, and when that accommodation was made, (3) when we last received and responded to correspondence from that individual, (4) what, if any, grievances that individual has filed regarding their ADA accommodations; and (5) what related medical conditions and care have been rendered.

**Authority:**

18. If there is a discrepancy with Clinical Services regarding the determination and enforcement of ADA policy within the CDOC as it pertains to offenders and prisons operations, including what ADA accommodations might be reasonably provided to any offender, I am the final authority and report directly to the executive director on such matters.

19. My office works intimately in partnership with our peers in Clinical Services to make sure each offender is properly accommodated based upon their disability.

**Notice Posters and overall Notice and Training:**

20. Plaintiffs complain that a series of yellow posters was removed from the cell houses during the MP. Initially, these posters were not required to remain in the cell houses during the MP. They were kept up during Compliance as part of the 2006 and 2008 stipulations.

21. Although they were removed during the MP, they remain available for all offenders to access in each facility library, as required by the RP.

22. It is worth noting that at some point, the cultural shift and changes which grew out of the *Montez* litigation have simply become culturally ingrained in how we do business in CDOC. This deeper commitment to the overall ADA is more significant that any non-required posting could ever be.

23. Each offender who enters the CDOC receives information around their ADA rights and the *Montez* matter.

24. Each new staff member is trained on ADA policy.

25. Current staff receive refresher training to be sure that the commitments made remain salient.

26. The training for staff has actually been expanded over the past several years.

27. Although Clinical Services always has and continues to make assessments regarding medical need, my office retains its "jurisdiction" over all things ADA. Where there is any overlap, the AIC "trumps."

**The role of Clinical and the role of the AIC:**

28. Previously, there was some conflation of health care appliances with ADA accommodations. Over the years, we've worked to provide clarity around that distinction. But, to be clear, this does not mean that anyone is left "without" something. Rather, it means that we work closely, as I discussed above, with medical staff to make sure each offender is appropriately provided for.

29. Thus, where one of my staff is obliged to "Deny" something as not an accommodation because it is medical care related, they are trained to, and do, immediately follow up with clinical.

30.     There is no lag time and no "delay." Instead, even though an offender may be confused and come to the AIC seeking medical care, we make efforts to ensure they are promptly provided for by those capable of making medically sound decisions on their behalf.

31.     This allocation of responsibility has been consistent since before the 2012 finding of substantial compliance.

32.     We've undergone an overall cultural shift: away from seeking to label offenders as "disabled," and towards analyzing each accommodation request as to whether it is "reasonable" under the ADA.

**When something is made available for purchase:**

33.     My office is also a part of the larger CDOC mission which is to equip our offender population for their re-entry to larger society. As a part of that important mission, we help establish accountability and self-sufficiency.

34.     It is as part of that spirit and all important correctional goal that we have made vibrating watches available to a wider inmate population via the canteen.

35.     But, it is important to distinguish between our obligations under the RP to make something available to an offender versus to provide it affirmatively free of charge.

36.     My office has and does make efforts to ensure that replacement accommodations are promptly and efficiently provided when an offender requests one.

37.     For example, hearing aid batteries are provided for free to those who require them. This is done for *all* offenders, not just Class Members pursuant to AR 700-34 (p. 3-4).

38. My staff and I work hard daily to maintain our substantial compliance with the letter and spirit of the RP as well as the ADA. Over the duration of the 30 month MP, we have done so.

FURTHER AFFIANT SAITH NAUGHT.

_____
Mr. Keith Nordell

Subscribed and sworn before me in the County of El Paso, State of Colorado, this 19th day of May, 2015.

My commission expires: 3/5/2016

Teresa B Reynolds
Notary Public

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Legal Services
2862 South Circle Drive, Suite 152
Colorado Springs, CO 80906-4195
Phone: 719.226.4236

Office of ADA Inmate Coordinator (AIC)



John W. Hickenlooper
Governor

Rick Raemisch
Executive Director

## MEMORANDUM

**TO:** OFFENDER # Facility-

**FROM:** Office of Legal Services, ADA Inmate Coordinator (AIC)

**RE:** Remedial Plan copy

**DATE:**

By agreement of the Remedial Plan, upon entering into the two year "monitoring" phase of the ADA litigation on October 1, 2012, offenders are no longer entitled to one free copy of the Remedial Plan. However, you may purchase a copy of that and the two subsequent stipulations by submitting a miscellaneous withdrawal slip to the AIC. The cost is $.25/copy, or $.35/double-sided copy. The Remedial Plan is 32 pages; 2006 stipulations 4 pages; and the 2008 stipulations 8 pages.

You may also review these documents in your general library free of charge.

According to the ADA, no qualified individual with a disability shall, on the basis of disability, be excluded from participation or denied the benefits of DOC services, programs or activities or be subjected to discrimination. For more information, see Administrative Regulation 750-04, "*Americans with Disabilities Act-Offender Request for Accommodation.*"

cc: AIC File