IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

JOHN HICKENLOOPER, et al.,

Defendants.

## AFFIDAVIT OF JULIE RUSSELL

I, Julie Russell, upon being duly sworn under oath, of lawful age, and having personal knowledge of the matters set forth herein, depose and state as follows:

1) This affidavit is based upon my personal knowledge.

2) My full, legal name is Julie A. Russell.

3) I am employed by the Colorado Department of Corrections (CDOC) as the ADA Inmate Coordinator as delegated to me by Keith Nordell, Legal Services Manager.

4) I have been employed by the CDOC since March 1, 1997.

5) As part of my job, as the ADA Inmate Coordinator Designee, I am responsible for ensuring reasonable accommodation is provided to offenders incarcerated within CDOC and ensuring they are not subjected to discrimination, or excluded from participation in or denied the benefits of CDOC services, programs, and activities. I directly review and investigate offender accommodation requests and grievance complaints.

A-2

6) I am a Certified ADA Coordinator (ACTCP) through the University of Missouri, School of Health and have taken specialized ADA training which consists of numerous CDOC internal and external classes, webinars and online course training specializing in both Title I and Title II ADA subject matter:

1. I attended the 2010 National ADA Symposium in Denver Colorado
    a) *A four day symposium sponsored by ADA National Network comprised of ten regional centers that provide information, training and materials on the Americans with Disabilities Act. The conferences are held annually to provide the most comprehensive training on the ADA and disability related laws, regulations, guidelines, implementation strategies and best practices through interactive sessions. http://www.adasymposium.org/about.html*
2. Received ADA Coordinator Certification August 6, 2013
    a) *This is a program designed for ADA coordinators to provide necessary training in all areas of the ADA with the required knowledge of ADA regulations and guidelines. http://www.adacoordinator.org/*
3. I again attended the 2014 National ADA Symposium in Denver Colorado
4. Various ADA training from 2009 to current.

Tracking Systems:

7) Over the past few years we have greatly expanded our tracking efforts with respect to our Class Members and as to our ADA-impacted population as a whole.

5. Conversion from paper to electronic AIC files – November 2010
6. Continued use of specialized computer software programs
    a) **ADA Montez** *used to identify and screen offenders for disability related placement needs, medical restrictions and health care appliances and identify ADA accommodations.*
    b) **Accommodation Tracking System (ATS)** *implemented January 1, 2012 to aid CDOC with tracking all offender ADA accommodations.*
      - With the ADA Amendments Act in 2009, CDOC took a proactive approach to create and implement additional ADA accommodation tracking for those offenders who are not litigation class members but require reasonable accommodation under the ADA nonetheless.

- Montez litigation only covers lower mobility, vision, diabetes and hearing.

c) **Grievance Tracking System (GTS)** *specialized tracking and response system for offender grievances enabling staff to better identify ADA subject matter complaints and assign appropriately to the AIC staff and Director of Prison's for review and response.*

8) During the Monitoring Period we shared a wealth of documentation to Class Counsel in the form of Quarterly Monitoring Reports. Each Quarterly Report contained the following information (See attached Index for full listing):

a) Monthly statistical reports for offender disability identification at Intake and ADA Montez Screenings and new/intake facility Orientation.

b) CDOC Policy, procedures and annual ADA Audit information including schedules and standards of review for compliance.

c) Daily ADA Rosters identifying each individual class member, their claimed disability and facility location.

d) Documentation regarding reasonable accommodations authorized for offenders to include common assistive devices, sign language interpreter invoices and policy.

e) CDOC Staff Training to include Basic Training and required Annual Re-fresher training for all staff.

9) Indeed, since changes were made with the ADA Amendments Act, our office has maintained its compliance with the Remedial Plan while also helping to design and implement a number of companion systems which house information on all offender ADA matters, including our Class Members.

10) There have been no changes to the criteria set forth regarding screening for the four predicate disabilities during the 30 month monitoring period ("MP").

11) We view the duty of our office as not being limited to *Montez* which narrowly focuses on four finite categories of disability but instead as ensuring overall systemic compliance with the ADAAA and modern correctional norms as well as maintain compliance with the RP.

12) We implemented various electronic systems over the past several years as part of a sustained effort to improve compliance efforts and ensure the most efficient tracking to provide reasonable accommodations for our ADA-impacted offender population.

13) These efforts have taken our capabilities beyond those required of us in *Montez* but these expansions and upgrades to our tracking capabilities have in no manner frustrated or impeded our compliance with the RP, instead they are part of our concentrated efforts to comply with the ADA.

14) Although our means and methods for tracking all disabled offenders, including Class Members has grown, the core screening criteria and the implementation of the changes inspired by *Montez* remain consistent.

15) Plaintiffs inaccurately allege in their Notice they received several empty files and allege that is evidence we are not adequately tracking our Class Members.

16) Pursuant to this Court's Order, our office provided *excerpts* from individual's electronic files for the window of September of 2012 to the present.

17) That some offender files were "empty" for this specific time period was the result of a lack of activity during the timeframe, not indicia of an overall failure to track.

We explained this phenomena through Counsel when we turned over those files to Class Counsel.

19) Our office tracks where each Class Member is on a *daily* basis. We provided copies of that information as part of the aforementioned Quarterly Reports and to assist class counsel in facility visits during the Monitoring Period.

The Role of the AIC:

19) One of those important criteria or policy standards is that the AIC still has the final say, when and if a disagreement may arise regarding provision of reasonable accommodation to or for a Class Member.

20) The AIC reports directly to the Executive Director.

21) However, it is important to understand that at no point did we agree to a policy whereby non-medical staff, such as those of us in the AIC office, make medical care and treatment decisions. Rather, as always, clinical staff assesses incoming offenders congruent with the criteria agreed upon in *Montez*.

Our Partnership with Clinical Services:

22) Our office works with and alongside clinical services on a daily basis to make sure our Class Members receive both health care appliances (prescribed through Clinical Services) and ADA assistive devices (authorized by the AIC).

23) In my experience, offenders achieve greater benefit through direct contact with Clinical Services regarding medically related concerns as it reduces the time and additional processes they may otherwise encounter through delay of utilizing the AIC staff as a third party who simply relays the offender's request for medical care, treatment and plans of care.

24) For example, if an offender requires the use of a wheelchair, Clinical Services should intuitively be the first stop to provide direct and immediate access for medical needs and provision of health care equipment that can only be assessed and authorized by trained medical staff.

25) Medical treatment and plan of care needs are best addressed through direct access of the on-site medical clinic at the individual's facility.

26) The AIC will then authorize reasonable ADA accommodation or modification of policy to coordinate with the medical treatment plans of each individual. This may include additional time for movement, assistance in the dining hall or use of an elevator as an appropriate companion accommodation based on identified medical needs or restrictions.

27) When medical provides health care equipment as a result of a medical evaluation, provision of items issued as a result of a class member screening are identified on the offender Litigation Resolution.

28) There is no requirement to identify health care appliances or medical restrictions as an ADA accommodation, therefore the AIC does not duplicate provision of such items or restrictions on any offender ADA Accommodation Approved/Denied Report.

29) Prior to the implementation of the Accommodation Tracking System in January 2012, both health care equipment and medical restrictions as well as ADA accommodations were enumerated on the offender's Litigation Resolution. It became necessary to separate these two documents with the implementation of ATS to track ADA accommodations for all offenders regardless of class member status.

30)     The AIC now tracks all ADA accommodations separately on the ADA Offender Approved/Denied Report generated by the ATS system.

31)     Some health care appliances or medical restrictions may not be identified on an offender's class member Litigation Resolution if the medical item/restriction was authorized by medical staff either prior to or subsequent to an offender's class member screening or to manage a particular (non-*Montez*) condition.

Progression of Class Members:

32)     Administrative Regulation 600-01, Section IV. H. includes provision for mandatory overrides to an offender's custody/security designation to enable CDOC to appropriately place offenders in the custody that best meets their overall needs, including medical treatment needs.

33)     The AIC works in conjunction with Offender Services and Clinical Services to ensure appropriate placement and progression for all disabled offenders. This may be accomplished through authorization of a waiver to a lower custody facility based on the overall needs of an offender.

34)     Notably, this is precisely the way it was *prior* to Judge Kane's finding of Substantial Compliance with the RP.

35)     During the Compliance Hearings, Plaintiffs complained offenders were inhibited from progressing from level III to level II.

36)     Nevertheless, Judge Kane still ruled we were in Substantial Compliance.

37)     CDOC continues to strive to improve the progression for all offenders regardless of disability.

38) In addition, attached please find information confirming 12 examples where the discretion afforded in AR 600-01, was used to override and *progress* offenders to a lower custody/facility than that for which they were scored.

FURTHER AFFIANT SAITH NAUGHT.

_____
Ms. Julie Russell

Subscribed and sworn before me in the County of El Paso, State of Colorado, this 12th day of May, 2015.

My commission expires: 3/5/2016.

_____
Notary Public



**ADA Coordinator Training Certification Program**
100 Corporate Lake Drive
Columbia, MO 65203
(573) 882-3600 voice
(573) 884-4925 fax

Julie Russell
CO Dept. of Corrections
2862 S. Circle Drive
Colorado Springs, CO 80906

August 19, 2013

Dear Julie,

Congratulations on completing the ADA Coordinators' Training Certification Program (ACTCP)!

By completing the required curriculum and passing the final exam, you have more than earned your enclosed Certificate of Completion. I have also enclosed a copy of your ACTCP Credit Record. This includes all of the course work you completed for credits in the Program in order to earn your Certificate.

Congratulations again on a job well done!

*Lisa Hamburg*

Lisa Hamburg
Events Manager

*Mike Edwards*

Mike Edwards
ACTCP Coordinator



The ADA Coordinator Training Certification Program is offered through the University of Missouri School of Health Professions Disability Studies and Policy Center & the Great Plains ADA Center.

# ADA Coordinator Training Certification Program Record

| | |
|---|---|
| Name: | **Russell, Julie** |
| Title: | ADA Inmate Coordinator |
| Company/Org. | Colorado Dept. of Corrections |
| Address 1: | 2862 S. Circle Drive |
| Address 2: | |
| City/State/Zip: | Colorado Springs, CO  80906 |
| Phone: | 719-226-4248 |
| Email: | julie.russell@doc.state.co.us |

| | |
|---|---|
| Application Date: | 4/27/2010 |
| Status: | Approved |
| Certification Completion Date: | |
| Pre-requisite completed: | Yes |
| Foundation Level Requirements: | |
| Foundation Level Optional Reqs: | |
| Elective Requirements: | |
| Total Credit Hour Requirements: | |

| | Required Credits | 2-13-13 NADAC4 Completed Credits |
|---|---|---|
| | 12 | 9 |
| | 6 | 6 |
| | 22 | 23.5 |
| | 40 | 38.5 |

**Foundation Level Requirements: (all)**

| | Hours | Date Completed: |
|---|---|---|
| Self-Eval & Transition Planning (3) | 3 | 6/23/2010 |
| DOJ Role of the ADA Coordinator (3) | 3 | 6/21/2010 |
| 2010 ADA Standards (3) | | |
| Title I EEOC Guidelines (3) | 3 | 6/21/2010 |
| | **9** | |

**Foundation Level Options: (Must complete 2 of 4)**

| | | |
|---|---|---|
| Effective Communications (3) | | |
| Public Rights-of-Way (3) | | |
| Reasonable Accommodations (3) | 3 | 6/22/2010 |
| Emergency Preparedness (3) | 3 | 10/25/2012 |
| | **6** | |

**Electives:**

| | | |
|---|---|---|
| Enforcement Agency Panel | 2.5 | 6/23/2010 |
| Emplymnt & Accomm. An Aging Workforce (JAN We | 1 | 3/8/2011 |
| Accommodating Individuals w/ limited dexterity in c | 1 | 1/10/2012 |
| Understanding & Accommodating Mobility Impairm | 1 | 4/11/2012 |
| Title I ADA Employment Course | 3 | 4/11/2013 |
| Community Issues: Title II - ADA & Law Enforcement | 1 | 1/15/2013 |
| Other - Overview of Disability Rights Laws webcours | 2 | 4/18/2013 |
| Other - ADA and GINA audio conference | 1 | 12/18/2012 |

| Training | Hours | Date |
|---|---|---|
| IT/AT - The Status of Accessibility in Mobility Device: | 1 | 1/23/2012 |
| Title II - Searching & Restraining a Disabled Offender | 2 | 1/15/2013 |
| Title II - Strip Searching Disabled Offenders, CO DOC | 2 | 1/15/2013 |
| Other: Top 12 Cases in 2012 webinar | 1.5 | 1/16/2013 |
| Title I: JAN ADAAA Case Summaries webinar | 1 | 10/9/2012 |
| Other: Cultural Awareness of Blindness & Visual Imp | 1 | 11/12/2012 |
| Other: ADA Diabetic Roll Call Training CO DOC | 0.5 | 11/12/2012 |
| Other: CO DOC ADA Refresher | 2 | 2/13/2013 |
| | **23.5** | |



University of Missouri

This certificate verifies that

*Julie Russell*

has met the requirements for completion of the

*ADA Coordinators' Training Certification Program*

C. David Roberts, Ph.D., CRC, ACRE
Director of Disability Policy & Studies

Disability Policy and Studies
School of Health Professions
University of Missouri Health System

Certification Date 8/6/2013
Expiration Date: 8/5/2016

## AIC Quarterly Report Contents for Class Counsel Monitoring:

I. AIC
   a. AIC Statistical Quarterly report
   b. Administrative Regulation 750-04

IV. DRDC
   a. AIC Office Metrics-1st Q report
   b. Monthly Intake Reports-ADA_Intake Screenings
   c. Policy
      a. 700-02
      b. 700-34
      c. 750-04
   d. Sample Intake Forms
   e. YOS Hand Book
   f. Denver Complex Orientation
   g. DWCF Orientation
   h. New Intake Process- ADA memo
   i. Video – Revises ADA Notice (plus Spanish version)

IX. Tracking
   a. ADA_Montez Screenings (list of all offenders screened for mobility, vision, hearing, DM to include those who submitted AR 750-04 Form-B & DRDC intake offenders)
   b. OS Track memo – identifying process Offender Services utilizes to identify and contact AIC regarding offenders who need to be staffed for designated facility placement criteria.

Misc
   a. DOC policy & procedure for ensuring compliance with 2008 Stipulation Order #5 regarding Diabetic class members.
   b. ADA-ACA Audit information, schedules and standards reviewed for compliance

V. Placement
   a. Daily Rosters
   b. Policy (600-01; 700-02; 750-04)
   c. ADA Litigation Resolution Templates for Diabetes, Mobility, Vision & Hearing

       d. Clinical Services screening form templates for Diabets, Mobility, Vision & Hearing

VI. Designated Facilities

    a. Current applicable DOC Policy: 700-02

VIII. Special Placement Housing

    a. Current applicable DOC Policy: 750-04

X. Reasonable Accommodations

    a. ADA Litigation Resolution templates

    b. Common Assistive Device Pictures

    c. Policy

    d. Sign Language Interpreter Invoices

- List of ADA Tracking System (ATS) ADA accommodations
- ATS User Guide
- Colorado Talking Book Library (CTBL) application
- ADA Device Tracking – quarterly report
- Library Materials, Services and Equipment for Offenders with Disabilities – yearly publication for offenders identifying services & materials
- CDOC Canteen Item List – provides listing of numerous assistive devices offered to offenders
- TTY Kiosk power point training – provided to hearing impaired offenders authorized to use TTY services.

XII. Grievances

    a. Quarterly Report – identifies the overall ADA grievance statistics for each quarter for step I and step II complaints.
    b. Current DOC Grievance Policy – Administrative Regulation 850-04

XIII. Programs, activities, work assignments

    a. CCI Job Descriptions – Job description forms utilized for every job assignment available to offenders to include minimum eligibility to qualify for assignment, essential duties of assignment, specific duties, physical requirements/frequency and offender signature with option to request ADA accommodation/modification of assignment
    b. Facility Offender Job descriptions- All other job description forms with same information utilized to document minimum eligibility to qualify for assignment, essential duties of

   assignment, specific duties, physical requirements/frequency and offender signature with option to request ADA accommodation/modification of assignment
- c. Quarterly Report- documenting statistical information depicting overall offender correspondence, grievances and contact to the AIC Office.
- d. Current DOC Policy for Offender Assignment and Pay – AR 850-03
- e. ATS list of Job & Program accommodations provided to DOC offenders for the quarter

## XV. Training

- a. Diabetic Offender Education
- b. Life Saving Response Training
- c. Resources for staff
- d. Current DOC Policy for Department Training System 1500-01
- e. Current DOC Policy for Basic Training Program 1500-02
- f. Current Power Point Annual Refresher for all DOC staff - ADA Training
- g. Basic Training Power Point – ADA training
- h. List of Mandatory Training (includes ADA)
- i. Roll Call Diabetic training video shown each quarter at every facility

## XVI. Health Care Appliances

- a. CO-Pay & DME (Durable Medical Equipment) Compensation report for quarter
- b. Wheelchair clinic information regarding repairs for offenders
- c. Current DOC policy for Health Care Appliances – 700-34

## XVIII. Institution Procedures

- a. Current DOC policy for Intake: Offender Reception and Orientation 850-07

## XX. Evac-Emergency

- a. Current DOC Policy for Fire Safety 300-15

## XXIV. Transport

- a. Current DOC Policy for Offender Transportation 300-37 RD (Restricted Distribution) redacted
- b. ATS report for Accessible Transport & authorized assistance – quarterly report of offenders who require accessible vehicle and staff assistance
- c. List of wheelchair accessible vehicles available in DOC

## XXV. Visiting

- a. Current DOC Policy for Offender Visiting Program 300-01