**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 92-cv-00870-CMA

**JESSE MONTEZ, et al.,**

**Plaintiffs,**

**v.**

**JOHN HICKENLOOPER, et al.,**

**Defendants.**

_____

**REPORTER'S TRANSCRIPT**
**(Hearing)**
_____

     Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 3:30 p.m. on the 2nd
day of June, 2015, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFFS:**
PAULA D. GREISEN, KIMBERLY J. JONES and LAURA E. SCHWARTZ,
King & Greisen, LLP, 1670 York St., Denver, CO 80206
EDWARD T. RAMEY, Tierney Paul Lawrence, LLP, 2401 15th
St., Suite 300, Denver, CO 80202
BLAIN D. MYHRE, Blain Myhre, LLC, P.O. Box 3600,
Englewood, CO 80155
LARA E. BAKER, Foster Graham Milstein & Calisher, LLP, 360
S. Garfield St., 6th Floor, Denver, CO 80209

**FOR THE DEFENDANTS:**
JACQUELYNN N. RICH-FREDERICKS and JAMES X. QUINN, Colorado
Attorney General's Office, Ralph L. Carr Colorado Judicial
Center, 1300 Broadway, Denver, CO 80203

1                         **JUNE 2, 2015**

2              (Proceedings commence at 3:30 p.m.)

3              THE COURT:  You may be seated.

4              Court calls Civil Case No. 92-cv-00870, encaptioned

5       Jessie Montez, et al. v. John Hickenlooper, et al.

6              Counsel, would you please enter your appearances.

7              MS. GREISEN:  Good afternoon, Your Honor.  It is

8       Paula Greisen appearing on behalf of Class counsel.  I

9       think I will just go around the table rather than have

10      everyone stand up.  We have Blain Myhre.  Lara Baker.  My

11      paralegal, Laurie Mool.  Laura Schwartz.  Kim Jones, who

12      has not yet entered her appearance, but we will file that.

13      And Ed Ramey, appearing on behalf of the plaintiffs.

14             THE COURT:  Good afternoon.

15             MS. RICH-FREDERICKS:  Good afternoon, Your Honor,

16      Jacquelynn Rich-Fredericks and Mr. James Quinn from the

17      Attorney General's Office on behalf of the defendants.

18      And we have client representative, Mr. Keith Nordell here

19      on behalf of the Colorado Department of Corrections.

20             THE COURT:  Good afternoon.

21             MS. RICH-FREDERICKS:  Good afternoon.

22             THE COURT:  All right.  I set this status

23      conference to determine whether we need a hearing on the

24      plaintiffs' class notice of defendants' noncompliance with

25      the Remedial Plan.  And I have read through both that

1    filing plus the defendants' response.  I have looked at

2    many of the exhibits, although I can't say that I have

3    done it in great, great detail at this point.

4        I did also review, go way back and review the

5    Remedial Plan, which states "once it has been determined

6    that the DOC is in substantial compliance with this

7    Remedial Plan, then a 2-year 'monitoring period'

8    commences, during which class counsel will monitor the

9    designated facilities to ensure compliance is maintained

10   during this period.

11       During the monitoring period, class counsel may

12   tour each designated facility up to two times a year to

13   ensure compliance.  In addition, class counsel may spend

14   the time and resources reasonably necessary to monitor

15   compliance during the compliance period.

16       Once the monitoring period is complete, this plan

17   is no longer in effect unless, prior to the completion of

18   the monitoring period, there has been an objection filed

19   alleging noncompliance.  If such objection is filed, the

20   monitoring period will be extended until there has been a

21   final determination with respect to the merits of the

22   objections."

23       So that is from Section XXXI, page 28 of the

24   Remedial Plan, Compliance and Monitoring.

25       The plaintiffs allege that the defendants have

1    regressed in several key areas.  I note them as primarily

2    five.

3            One, being the role and authority of the ADA Inmate

4    Coordinator, or AIC, and the provision of reasonable

5    accommodation to class members.

6            Two, the ability of class members with low security

7    classification rankings to progress to low security

8    facilities, despite their disabilities -- well, because of

9    their disabilities.

10           Three, ADA grievance procedures; whether DOC's use

11   of "gatekeepers" contravene the Remedial Plan by impeding

12   the grievance process.

13           Four, tracking of reasonable accommodations given

14   to class members.

15           And, five, DOC's alleged refusal to provide

16   soft-soled shoes to class members with diabetes and severe

17   foot problems.

18           Now, the defendants respond that the DOC has not

19   regressed in any of these areas, and that even if it has

20   regressed in any of these areas, the DOC remains in

21   substantial compliance.

22           Now, first I want to be sure -- to be clear that at

23   this juncture, that my review of this is very limited.  I

24   believe Judge Kane ruled that the DOC was in substantial

25   compliance with the Remedial Plan.  And I do not intend to

1   allow, nor do I believe that plaintiffs are entitled to

2   revisit issues that Judge Kane decided in his order

3   finding substantial compliance.

4         And, as an example, I will give you one -- one of

5   the objections made by the plaintiffs is that they are

6   being precluded because of their disability to progress to

7   lower level facilities.  However, in my review of the

8   record in preparation for this conference, I noted that

9   the plaintiffs made the same allegation to Judge Kane

10  during the proceedings on the status of compliance.

11        "Inmates with certain medical codes are ineligible

12  to be housed at certain facilities," and "inmates with

13  medical codes of M3 or higher are automatically excluded

14  from being housed in the lowest security work camps."

15        That is from Plaintiffs' Proposed Findings of Fact

16  and Conclusions of Law Regarding Status of Compliance with

17  the Remedial Plan, Docket 5068, at 120-121.

18        Now, I went to Judge Kane's order, and it appears

19  to me that from his order, that Judge Kane considered and

20  essentially rejected plaintiffs' assertion that these

21  allegations called into question whether the DOC was in

22  substantial compliance with the Montez Remedial Plan.

23        He stated "my overall view, based on the record in

24  this case and the evidence presented at the hearing, is

25  that the DOC strived to comply with the Special Master's

6

1    orders, and nothing presented by plaintiffs during the

2    compliance hearing compels a contrary conclusion."  That

3    is from Document No. 5314, at page 15.

4           So I just want to make it clear to you all that we

5    are not going to revisit these issues for purposes of

6    these proceedings.  These proceedings are limited to

7    whether or not the DOC has maintained compliance as found

8    by Judge Kane.

9           With that in mind, I guess my first question for

10    you all is, first, whether there is an authorization under

11    the Remedial Plan that allows for a hearing in these

12    circumstances and, if so, then what are the parameters or

13    limitations of that hearing?

14           And, I guess my question to you is, even if it is

15    not specifically resolved or addressed in the Remedial

16    Plan, if I am to have a hearing, I need to know, how would

17    that hearing be helpful?  What is it going to provide that

18    I don't already have from the objections and the response?

19           So, I guess, Ms. Greisen, I will allow you to take

20    the first stab at that.

21           MS. GREISEN:  Thank you, Your Honor.  Let me first

22    state my appreciation to the Court for giving me some --

23    for accommodating some of my needs for additional time on

24    this case.

25           THE COURT:  I hope all is well.

1          MS. GREISEN:  It certainly is better than it was.

2     Hair is always a nice start.  So, if I have my moments

3     where I blank out, I will look over to co-counsel and hope

4     somebody stands up and fills in for me.

5          So, first I want to tell the Court thank you for

6     that.  And I also did want to let the Court know that we

7     have -- we did reach out on Friday to ask counsel for the

8     Department of Corrections if there are any purpose of

9     settlement discussions.

10          I think it is not likely, but we will make them an

11     offer.  So we will continue that, just as a side issue, to

12     let the Court know that at least those steps are being

13     tried.

14          In turning now to the Court's question about

15     whether an evidentiary hearing is appropriate and

16     necessary and what it will bring to the Court, we really

17     did try, when we filed a notice of noncompliance, to

18     really focus on the issues where we thought there were

19     systemic problems that had been exacerbated or created

20     since the compliance period.

21          We did not try to kitchen sink our notice and bring

22     every instance where we thought something went wrong.  We

23     tried to focus those issues.  And, in looking at what

24     happens next, we kind of turned this around several

25     different ways, and we've came up with what might be

1    helpful to the Court, we think, are three different

2    categories and of where issues are.

3           And maybe if I can first just specify where I think

4    those categories are, and then maybe talk about each

5    category.  The first category is issues where I think the

6    Court can just decide the matter without an evidentiary

7    hearing or without any further evidence.

8           There are some issues presented in our notice and

9    in the response that the Court just needs to make a

10   decision about; whether or not they're violative of their

11   Remedial Plan.  And one such issue -- and I will go into

12   the areas a little bit further after I give you all three

13   issues.

14          But one such issue is just whether or not a medical

15   necessity standard is a sufficient standard to satisfy the

16   ADA accommodations standard.  So, that's an example of one

17   category, which is areas I don't think this Court needs

18   any more evidence on.  I think we just need to do argument

19   on them.

20          The second area I am going to talk about --

21          THE COURT:  Let me ask you, have you already done

22   your argument in your briefing?

23          MS. GREISEN:  I think, for the most part, I think

24   for the most part that's true.  I have not -- we haven't

25   had a chance to respond to --

 1          THE COURT:  Right.  You need to reply to their

 2    response?

 3          MS. GREISEN:  Right.

 4          THE COURT:  But let me just throw out the one thing

 5    that just sort of caught my eye.  Going through the chart

 6    of the requests that had been made and the denials or

 7    approvals that had been made, one of them was for a

 8    vibrating watch for a hearing impaired person.

 9          MS. GREISEN:  Right.

10          THE COURT:  Now, I could understand a vibrating

11    watch for a blind person, but a hearing person can see.

12    They can look at their watch.  So I am not quite sure why

13    that would be a reasonable accommodation to a hearing

14    impaired person.

15          MS. GREISEN:  Well, I think it has been in the

16    past --

17          THE COURT:  Right.

18          MS. GREISEN:  -- a vibration devise for the blind.

19    And I don't think it is an accommodation for the blind

20    people any more, either.  My understanding, it not being

21    provided to anybody as an accommodation for free any more

22    across the board.  So I don't know why a hearing person, I

23    don't know the answer.  I am not sure why a hearing -- I

24    think it is an issue for the blind people not for the

25    hearing people.

 1           THE COURT:  Well, it was raised in the context -- I
 2    saw it on the deaf, the hearing impaired.  And I am going,
 3    I don't understand why that would even be a necessary
 4    accommodation.
 5           MS. GREISEN:  That may just be an error in the
 6    briefing, because I think it was meant for as an
 7    accommodation for blind people.  Let me defer to somebody
 8    who is more knowledgeable.
 9           THE COURT:  Well, that is one of the issues I am
10    looking at in terms of what is a reasonable accommodation.
11           MS. GREISEN:  Well, that is one of the items, when
12    I come back to talk about the areas where I think the
13    Court can decide on its own, is whether self purchase
14    satisfies the Remedial Plan.
15           One of the issues with the hearing was apparently
16    that there are announcements that are made over the
17    speaker systems on things like when movement is, it is at
18    a scheduled time, so I think that it has also been in the
19    past an accommodation for hearing people, as well, on that
20    basis.
21           In any event, it was decided and it was provided
22    when necessary as an accommodation.  And one of the issues
23    we are raising is, does self purchase, the ability to self
24    purchase --
25           THE COURT:  Well, I think before we get to self

 1    purchase, is whether that is a reasonable accommodation

 2    that should be provided.  Then, if it is, then we get to

 3    self purchase.  But, I think, without first crossing that

 4    first path, I don't know that it is even an issue whether

 5    self purchase is available.

 6         MS. GREISEN:  Well, and obviously that is something

 7    that we'll want to discuss with the Court, because I think

 8    that for the blind -- it was previously deemed a

 9    reasonable accommodation for our blind and for some of the

10    hearing people.  And because of the new AR, it is no

11    longer.

12         THE COURT:  And those are some of the questions I

13    would like to ask.  And I do think we probably need to

14    ferret out a little bit more about this, since I wasn't --

15    I wasn't at the 288 hearing you had with Judge Kane.

16         I will tell you right now, we are not going to have

17    a 28-day hearing.  If we have something, we are looking --

18    I don't know what you are looking at in terms of -- I

19    guess that was part of my question.  It seems to me, based

20    on just that example, a hearing would be helpful.  What

21    does that hearing comprise of?

22         MS. GREISEN:  I do think there are three issues:

23    The issues the Court can decide without a hearing.  I

24    think there are issues that are going to require an

25    evidentiary hearing.  And there are some issues that I

1  think we'll need an evidentiary hearing depending on how

2  the Court rules on some of the legal issues.

3       So it is really two categories, and the third one

4  is just where they overlap.

5       The first one, the issues where I think the Court

6  can decide without an evidentiary hearing, is this, like I

7  said before, this first issue of whether or not -- the

8  parties have a fundamental disagreement on whether or not

9  a medical necessity standard satisfies the reasonable

10 accommodation standard under the Remedial Plan.

11      And it is our contention that changing the

12 reasonable accommodation standard to a medical necessity

13 standard essentially guts the Remedial Plan.

14      THE COURT:  Well, what is the reasonable

15 accommodation standard right now?

16      MS. GREISEN:  Well, it is certainly not a medical

17 threshold.  Judge Kane has made that.  What is reasonable

18 is going to be reasonable under the circumstances.  And

19 that's true in any ADA case.  If you have a large prison

20 system, whether or not providing things like wheelchairs

21 is a reasonable accommodation, is different than if you

22 are talking about a small employer.

23      So, I mean, I think that it was left before to the

24 AIC to determine reasonableness.  And I think at the June

25 2008 hearing, Judge Kane made it very clear that what is

1    reasonably necessary under the ADA is not a medical

2    necessity standard.

3         That would mean that -- and I am not trying to do

4    the whole briefing on that, but that would essentially

5    lower the ADA standard to an Eighth Amendment standard,

6    and they are not the same standard.  So we do think that

7    is a legal question, and we think that is a question the

8    Court has to answer.

9         Another question that we also think has eviscerated

10   the Remedial Plan is the issue of tracking and whether or

11   not the AIC's office can simply defer to the clinical

12   department to decide accommodations.  And there is -- I

13   think this may end up being one of those issues that

14   requires an evidentiary hearing, as well.

15        We think that there has been essentially an

16   advocation of determining accommodations and the AIC

17   overview of that.  It used to be that during the

18   compliance hearing, that all of a person's accommodations

19   were listed on something called an Accommodation

20   Resolution Form and copied onto the person's AIC

21   worksheet.

22        So when we wanted to see what accommodations

23   somebody had, we said, give us the AIC file and their AR,

24   Accommodation Resolution Form, and it would list out

25   everything.  And that's how, not only we would know that

1   the AIC was doing their job, that is how the inmate knew,

2   because the inmate was then given a copy of the form and

3   it showed them clearly what accommodations they were

4   granted.

5        That system has been changed.  So they now keep

6   accommodations on something called the Accommodation

7   Tracking Database.  That is not a part of AIC file.  So

8   part of the dispute that you have seen between the

9   parties, where the Department comes in and says, wait a

10  minute, Judge, they are complaining about these 20 people,

11  but they're not showing you the whole picture, is because

12  we showed you the picture that we were given.

13       We showed you what was in the AIC file.  If there

14  are some other means out there to track this, that hasn't

15  been disclosed to us or provided to us, we wouldn't know

16  that.  But that central issue is a tracking issue.

17  Tracking is repeatedly talked about in the Remedial Plan

18  as the responsibility of the AIC.  And the AIC has now

19  changed that Accommodation Resolution Form into something

20  called a Litigation Resolution Form.

21       Those Litigation Resolution Forms may or may not

22  contain somebody's accommodations.  And according to the

23  affidavits that we see, that we have been provided, if the

24  accommodation is provided prior to or subsequent to the

25  AIC screening, the form doesn't have the accommodation on

1    it.

2            They may be able to find somewhere else where

3    clinical services has reviewed that issue on a medical

4    necessity standard, but it is our position that if the AIC

5    isn't tracking whether it's granted or denied by clinical,

6    the AIC isn't doing their duty.

7            So that's another issue which we think --

8            THE COURT:  Now, why isn't that an issue you all

9    wouldn't have discussed?  Why would I have to deal with

10   that?  Either they are doing it and it can be tracked or

11   it can't.  Why haven't you talked to each other?

12           MS. GREISEN:  We haven't gotten discovery.

13           THE COURT:  You don't need discovery.  Pick up the

14   phone and talk to them.  You don't need formal discovery,

15   do we?  We are not in litigation at this point.  It seems

16   to me that sometimes you all are just like in staunch

17   positions that they are the enemies, on both sides.  And I

18   don't understand why, for instance, you couldn't pick up

19   the phone and talk to each other as professionals and say,

20   these are my concerns.

21           And you all say -- instead of submitting

22   affidavits, you say, well, this is what we have, here is

23   an example.  I don't really need to be dragged into the

24   middle of that, do I?

25           MS. GREISEN:  You know, unfortunately, Your Honor,

1    it has been the history between the parties that we have

2    not been able to resolve these kind of discovery issues.

3    I don't disagree with the Court.

4         THE COURT:  Ms. Fredericks, is there a problem with

5    that?  Is there problem with proceeding informally in

6    that type of situation?  You heard their concerns.  Why

7    can't the DOC respond and say, no, that isn't the case.

8         MS. RICH-FREDERICKS:  Absolutely.  I agree with the

9    Court, Your Honor.  Throughout the last several months,

10   the Department, through counsel, has invited plaintiffs'

11   class counsel to share that information.  The first time

12   any information was brought to our attention was less than

13   10 to 14 days before the cessation of the monitoring

14   period.  That was first communication of any substance we

15   had for the entire 30-month monitoring period regarding

16   this is an issue that we have.

17        I dropped everything I was working on, my client

18   dropped everything they were working on, and we banged out

19   responses as quickly as we could.  We got it back over and

20   didn't hear hide nor hair until the notice.

21        So we are amenable to that.  My client is amenable

22   to that.  If they want to come and say, articulate the

23   process, we are trying to articulate the process.  And I

24   have no issue with that.  And I can attest on my client's

25   behalf that they have no issue with that.

1          THE COURT:  All right.

2          MS. GREISEN:  Well, Your Honor, I disagree with

3     that.

4          THE COURT:  I don't want to get into pointing the

5     finger.  I want to say, moving forward, Judge Kane was

6     much more patient with you than I will be.  Maybe that is

7     because he is more seasoned or whatever.  But I don't have

8     time on my docket to set aside a month to further try to

9     work this out, when to me it seems like there needs to be

10    open communication between professionals.

11         You all ought to be able -- regardless, put the

12    history behind you.  I know this was a hard-fought

13    litigation.  And I know that each side is kind of

14    suspicious of the other side.  But it seems to me that a

15    lot of what you are raising, if you guys just sat down,

16    maybe we need a mediator who can sit down and kind of go

17    through this.  And maybe I can get Judge Hegarty.  I don't

18    know, we don't even have a magistrate judge on this case.

19         So I could get Judge Hegarty.  Would that be

20    helpful --

21         MS. GREISEN:  Sure.

22         THE COURT:  -- to get somebody like Judge Hegarty,

23    who really puts his attention into it, to sit down with

24    you all and say, here are the issues, let's talk openly

25    about this.

```
 1          MS. GREISEN:  Sure.  Absolutely.  We would be more
 2     than willing to do that.
 3          THE COURT:  All right.  That seems to me that that
 4     might be a way to proceed, but we would have to do it --
 5     either that or we go to hearing, and I have to hear
 6     testimony.  But I kind of digressed, so let's get back.
 7     So you have -- you have the medical necessity, the
 8     tracking, and you said there was a third one.
 9          MS. GREISEN:  The self purchase issue.
10          THE COURT:  Self purchase.
11          MS. GREISEN:  And the other one -- and I understand
12     the Court's ruling on the progressions issue.  We -- and
13     just to make my record on it, and I understand what the
14     Court has said, we think that having a snapshot at one
15     point in time showing compliance doesn't mean that a
16     component of that issue can't later contribute to
17     noncompliance during the monitoring period.
18          So it is still our contention, it is a matter of
19     policy now, as opposed to a practice before that we are
20     arguing, and we -- our argument now is that the
21     non-progression has been solidified into a policy.  And so
22     that is an issue.  Again, we do think that is a matter of
23     law.
24          THE COURT:  But you raised that with Judge Kane and
25     he didn't buy it.  He didn't buy that as something being
```

1    out of compliance.

2          MS. GREISEN:  I don't read Judge Kane's ruling the

3    same way.  I don't have it in front of me.  But Judge Kane

4    did not go down the list.

5          THE COURT:  No, there were 28 days of issues.  So

6    he gave a general order.  In whole, he essentially found

7    they're in substantial compliance.  That is not something

8    he pointed out as being a problem.  And that is why I

9    said, I am not revisiting what has already been presented

10   to him and already been ruled on.

11         MS. GREISEN:  The other issues are issues where --

12   I think those are issues where I think we could satisfy

13   with a response brief or brief additional argument.  The

14   other issues, I think, that do require an evidentiary

15   hearing, and part of our problem, and I will give you

16   those areas, but part of the problem that we have is that

17   a stack of affidavits in evidence was submitted to the

18   Court.  That has never been produced to us.  And that

19   makes a fundamentally unfair playing field.

20         Either they are limited to the evidence they have

21   produced to us, or we get discovery on these additional

22   areas, because these are far-reaching affidavits that make

23   sweeping assertions that are impossible to counter without

24   being able to cross-examine the affiants.

25         I know one of the affidavits isn't even sworn to.

1    But I don't think it would be appropriate for the Court to

2    accept the affidavits.  I think these people have to be

3    subject to cross-examination.  That can be done either --

4    however the Court wants to do it.  We can do a deposition

5    and just submit the deposition, or we can do an

6    evidentiary hearing on that.

7         But I do think we should be allowed both to do

8    that.  We might need a 30(b)(6) given the sweeping nature

9    of the allegations.  And then I think that there are four

10   different general areas that they put evidence on that

11   they have not produced to us.  Actually, probably three.

12   One of them was the progressions area.  But there is other

13   evidence that we need on the areas of tracking and

14   grievances and whether or not reasonable accommodations

15   are being provided.

16        Again, I will point to an example of where they say

17   we haven't given the Court the whole picture, but what

18   they're looking at is they pulled up property files, they

19   pulled up medical files, they pulled up canteen files.

20   That was never produced to us, and saying these people's

21   needs have been met.

22        So it would be our position that we should be

23   allowed to do discovery on those areas and take the

24   depositions, then I think we have the ability to provide a

25   consolidated evidentiary hearing hopefully in less than a

1   week.  If, in fact, we can do -- I think if we can do

2   depositions, it would be much easier for the Court, and we

3   could do that excerpted testimony on depositions as

4   opposed to having to do this all and take the Court's

5   time.

6        On the other note, I think we're very open to

7   Magistrate Judge Hegarty assisting the parties.

8        THE COURT:  Do you anticipate that you'll need to

9   call expert witnesses for any of the issues?

10        MS. GREISEN:  You know, we have talked about that.

11   And there may very well be a need.  I think there is a few

12   pieces of evidence we have to see.  We're in kind of an

13   interesting or unusual position because the person who has

14   been providing most of our medical advice with respect to

15   diabetes unexpectedly passed away a couple weeks ago.  And

16   so obviously if we decide to do that again, we will have

17   to find another.

18        But I think we haven't made a final decision on

19   that.  We still need to look at some evidence.

20        THE COURT:  Okay.  Let me see what else before you

21   leave.  So you anticipate maybe a week if you can get

22   things consolidated.

23        Last thing I need to address, I guess, or one of

24   the things before I hear from the Government, is the

25   burden of proof of that hearing if we have it.  I believe

1    that the plaintiffs, as the objecting party, bear the

2    burden of establishing that the defendants are no longer

3    in substantial compliance.

4         MS. GREISEN:  I think that is correct, Your Honor.

5         THE COURT:  All right.  Ms. Fredericks?

6         MS. RICH-FREDERICKS:  Your Honor, if I may address

7    a couple of the questions you initially raised with

8    Ms. Greisen.  It is my plain reading of the Remedial Plan

9    that there is no provision for a hearing at this juncture.

10   It has not been provided for under the Remedial Plan in

11   its plain language.  Certainly there was contemplation

12   that an objection could be filed, but there seems to be a

13   gap, and there is no next step.

14        We would believe and have argued, I believe in our

15   response, that no hearing is necessary at this point.  As

16   the Court has noted, this is an extremely narrow issue.

17   Talk about experts and things of that nature, I think, is

18   for a different situation, because the present situation

19   is this.  It is an issue of fact; whether or not

20   defendants remain in substantial compliance.

21        And as the Court has noted, it is plaintiffs'

22   burden to get to that hearing.  And at this point, I don't

23   think that they have brought enough to ring the bell; to

24   get to that hearing.

25        And with respect to, you know, discovery that they

1    would desire, again, we are constrained here by the plain

2    language of the Remedial Plan which is a contractual

3    situation entered into by the parties.  Teams of attorneys

4    much more learned than myself entered into that and

5    negotiated that.  It was as hard fought as anything was,

6    and it is simply not provided for.

7            They were provided this bucket of information.

8    They have dipped into that bucket.  They have been given

9    by defendants affirmatively information beyond the scope

10   of that bucket.  And they also, via this Court, have

11   received additional information that defendants have

12   provided to them.

13           I don't think it is fair or accurate for them to

14   represent that they have not been provided ample

15   information.  I think that defendants have made efforts to

16   share affirmatively.  That is what those quarterly reports

17   were about, and have provided copies of each of the

18   appropriate statements or exemplars from those.

19           And at this point, they should have information

20   sufficient.  As to whether or not they need a deposition,

21   you know, if a hearing is where this Court is going, then

22   at a hearing they can cross-examine Mr. Nordell as the

23   AIC.  They can cross-examine all these affiants at that

24   time.  I don't think they need to take a deposition in

25   advance in order to prepare for that cross-examination.

1           And, again, I don't think --

2           THE COURT:  The Remedial Plan also didn't provide

3    for hearing for the substantial compliance phase, and you

4    had a 28-day hearing before Judge Kane.

5           MS. RICH-FREDERICKS:  That is correct, Your Honor.

6    And I think the reason that that was done was because it

7    was a slightly different situation at that point.  It was

8    definitely much broader.  This had been going on for 18 or

9    19 years at that point, and we couldn't get to compliance.

10   We couldn't get to an agreement regarding compliance.

11          THE COURT:  Well, that is kind of the stage we are

12   still at now, is it not?  He said substantial compliance.

13   They say we have some objections because we think they

14   have fallen away from that compliance.

15          So I am trying to figure out what the difference is

16   between then and now.  I agree, the Remedial Plan does not

17   provide for this.  But we can't always plan for all of the

18   extremes.  So what I want to do is what is the fairest to

19   both sides.

20          So, it doesn't -- even though the Remedial Plan

21   doesn't specifically say "hearing," it says objections.

22   And if I need more information before I can rule on those

23   objections, as Ms. Greisen said, I have the affidavits,

24   but they are very one sided.  And they can file a reply

25   but, without knowing -- without being able to question the

1    affiants, how do we bring all of the information before me

2    that they would need to have me know?

3         MS. RICH-FREDERICKS:  And certainly I agree that if

4    the Court sets a hearing, we will be there with our suits

5    on.  But I believe that the issues can be narrowed, to the

6    extent a hearing is where we are headed.  I think that

7    there are issues that can be decided on the briefing.  I

8    certainly am in agreeance with the Court that issues that

9    were raised before Judge Kane and that he decided and

10   said, we're not going there.  That this is not an issue

11   that divests us of substantial compliance.  It is not a

12   falling away from those level at that time.

13        I don't think it is something that we should

14   revisit with respect to the progressions issue, which was

15   extensively included, as well, in each of the parties'

16   proposed findings of fact and conclusions of law.  And,

17   you know, to the extent that a hearing is set, I think

18   that the Department would be glad and happy to present

19   their information on whatever finite issues the Court

20   requests more information on at that time.

21        THE COURT:  Okay.  Anything further?

22        MS. RICH-FREDERICKS:  May I have a moment with

23   co-counsel?

24        THE COURT:  You may.

25        MS. RICH-FREDERICKS:  Briefly, Your Honor.

1   Mr. Quinn has pointed out, and I was remiss not to bring

2   it to your attention previously, in defendant's response,

3   at Section H, we did argue that even with the finite forms

4   that they brought forward, that we don't believe that it

5   speaks of substantial compliance, such that even taking

6   their allegations as true at this stage regarding the

7   alleged falling away of compliance, it doesn't rise to a

8   level such that substantial compliance has been lost that

9   we would even need to proceed to hearing.

10         THE COURT:  All right.  Well, if we proceed to

11   hearing, my schedule coming up is really jam-packed with

12   trial after trial after trial.  It just so happens that

13   the trial that was scheduled for the week of July 13th has

14   settled, so I have a week open.

15         If we proceed to trial, can we do it -- or to

16   hearing, rather, either I would propose the week of July

17   13th --

18         MS. GREISEN:  I think two things, Your Honor.  One

19   is some of that depends on if the Court is going to grant

20   us the additional discovery we think we need, whether we

21   can get that.  I think it is our preference to try to meet

22   with Judge Hegarty before we set a trial, to give that --

23   to give that idea a real chance.  And I think the parties

24   should do that immediately.

25         I do think --

 1          THE COURT:  And I will have to back off a little

 2    bit.  I have to get permission from Judge Krieger.

 3    Normally, if there is no magistrate judge, it is more

 4    open.  It is usually a problem when you have a magistrate

 5    judge assigned and you want to get it to Magistrate Judge

 6    Hegarty.  So I would need to get her permission before I

 7    can non-randomly assign this to Judge Hegarty.

 8          But I do think he is probably our best guess in the

 9    court, because he takes very seriously settlement

10    conferences.  He is batting a thousand for me.

11          MS. GREISEN:  He is very good, I agree.

12          THE COURT:  After 6-and-a-half years, he is still

13    batting a thousand for me.  So he would be our best hope.

14    But I want to make sure both sides would give their best

15    effort to try to get these matters resolved.

16          MS. RICH-FREDERICKS:  We would be willing to meet

17    with Judge Hegarty, Your Honor.

18          THE COURT:  Okay.  All right.  Well, then I think

19    probably -- I don't know what his schedule is like.  I

20    will request permission from Chief Judge Krieger.  I will

21    -- first I will consult Magistrate Judge Hegarty to make

22    sure that he can take this on.  If he is, I will consult

23    with Judge Krieger.

24          If so, I can assign it to him and just do an order,

25    then he would be in touch with you.  I am not sure what

1    his schedule is, so probably July 13th is a bit optimistic

2    at this point.

3         With respect to discovery, I guess, because the

4    Remedial Plan spoke specifically to what the Plaintiffs'

5    counsel would be able to do in terms of monitoring, I'm

6    actually -- other than probably a 30(b)(6) deposition, I

7    guess I'm reluctant to give you broad discovery at this

8    point, because we're at the end of this, and I just don't

9    think it is ripe.

10        I would request, though, that if you have a list of

11   the types of documents, based on the affidavits that were

12   submitted, of what you need to be able to do a 30(b)(6) of

13   whatever witness they propose, that you then submit that,

14   and hopefully we can have some volunteer discovery here

15   that would allow you, then, to properly be able to examine

16   in a deposition a 30(b)(6) witness.

17        So I will leave it informally at this point.  I am

18   reluctant to open up discovery again because I just think

19   that we're too far down the road for any of that.  And the

20   Remedial Plan doesn't -- it specifically addresses what

21   class counsel can do at this point.  And it doesn't talk

22   about further discovery in this case.

23        But I do think that in the interest of fairness,

24   plaintiffs should be allowed to get some additional

25   information based on what was set forth in the affidavits.

```
1           All right.  Is there anything else that you think
2      we need to do at this time?  So the plan going forward
3      would be that I will see if we can't get this to a
4      settlement conference of some sort with Judge Hegarty,
5      then we'll figure out where we go after that.  As I said,
6      I hope you guys don't break his record for me.
7           Anything further?
8           MS. GREISEN:  Nothing from the plaintiffs, Your
9      Honor.
10          MS. RICH-FREDERICKS:  Nothing from defendants, Your
11     Honor.
12          THE COURT:  All right.  I do know some of you.  I
13     do not know others of you, since this is really my first
14     hearing with all of you.  Since I was so naive as to not
15     recuse myself from this case originally.  So that was in
16     my younger tenure here, and I was anxious to do everything
17     I could.
18          I would invite you all to come back to chambers
19     immediately after this hearing so I can welcome you to my
20     courtroom and just talk to you in a less formal situation,
21     not about anything here, but just welcoming you to my
22     courtroom and to meet those of you that I do not yet know.
23          So, with that being said, court will be in recess.
24          (Proceedings conclude at 4:09 p.m.)
25
```

1

2          **R E P O R T E R ' S    C E R T I F I C A T E**

3

4          I, Darlene M. Martinez, Official Certified

5    Shorthand Reporter for the United States District Court,

6    District of Colorado, do hereby certify that the foregoing

7    is a true and accurate transcript of the proceedings had

8    as taken stenographically by me at the time and place

9    aforementioned.

10

11

12

13          Dated this 9th day of September, 2015.

14

15

16

17          _____

18          s/Darlene M. Martinez

19          RMR, CRR

20

21

22

23

24

25