# EXHIBIT A

# PROPOSED SETTLEMENT AGREEMENT

The terms of the Proposed Settlement Agreement are between the Colorado Department of Corrections ("CDOC") and the Plaintiff Class in *Montez*, 92-cv-00870-CMA-MEH ("the Class"). The CDOC and the Class are referred to below together as the "Parties" and individually as a "Party."

## RECITALS

WHEREAS, the Class in this matter includes persons in the custody of the CDOC represented in the civil lawsuit, entitled *Montez v. Hickenlooper, et al.*, United States District Court, District of Colorado, Civil Action No. 92-cv-00870-CMA-MEH (the "Lawsuit"),

WHEREAS, on September 11, 2003, the Court entered an agreement between the Parties known as the Remedial Plan which provides that the CDOC must come into compliance with the American with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 within a two-year period. The Remedial Plan also provides for a Monitoring Period of two years following achieving substantial compliance. In September of 2012, the Court found that the CDOC attained substantial compliance with the Remedial Plan. On April 2, 2015, the Class filed a Notice of Non-Compliance with the Remedial Plan.

*PROPOSED AGREEMENT:*

*The Parties propose the following as a FINAL SETTLMENT of this matter:*

## MATERIAL TERMS

A.   This Agreement establishes a program available to all persons in the custody of the Colorado Department of Corrections who have been diagnosed with diabetes. This program shall be known as the Shoe Exchange Program ("Shoe Exchange"). The Shoe Exchange Program will provide soft-soled shoes at no cost to any person in the custody of the CDOC who qualifies for the program.

B.   Any individual in the custody of the CDOC who has been diagnosed with diabetes ("qualified individuals") may participant in the Shoe Exchange Program.

C.   The Shoe Exchange Program will be supervised by the Office of the ADA Inmate Coordinator ( "AIC") at the CDOC. The AIC shall establish an internal process to implement the Shoe Exchange in compliance with the objectives in this Agreement.

1

D.     On a semi-annual basis, the CDOC shall allow qualified individuals to obtain new shoes at no cost from the Shoe Exchange Program, based on availability of the requested shoes. On this semi-annual basis, the CDOC shall notify the qualified individuals of the process to follow to obtain shoes from the Shoe Exchange Program and the types of shoes available, and the qualified individual shall select the desired shoe from the list of available options.

E.     The CDOC does not guarantee that shoes of any particular size, type or specification will be available in the Shoe Exchange Program. If a qualified individual does not receive shoes at the time of the exchange because the shoes are not available, the shoes will be provided to the qualified individual as soon as practicable if such shoes are received by CDOC within the subsequent six-month period.

F.     CDOC will work with outside parties in good faith to accept shoe donations. CDOC is not responsible for the acquisition of the inventory for the Shoe Exchange Program.

G.     Qualified individuals who participate in this Shoe Exchange Program may be asked to sign a release from CDOC which states that participation in the Shoe Exchange Program is voluntary, and that CDOC does not warrant that the shoes provided in the Shoe Exchange Program are medically appropriate for that individual.

H.     The CDOC shall retain the right to approve the type of shoe donated to the Shoe Exchange Program, which approval shall be based on legitimate safety and security concerns. The CDOC also retains the right to notch any shoes donated to the Shoe Exchange Program, as needed.

I.     The AIC will designate a point of contact for any arrangements regarding donations to the Shoe Exchange Program. The Parties agree that class counsel and representatives from donor organization, including organizations assisting in the donations and the administration of the program can contact this designee for purpose of administering the Shoe Exchange Program.

J.     The CDOC shall continue to provide medically necessary shoes according to established CDOC policy and procedures. CDOC is under no obligation to provide shoes to any offender outside of established CDOC policy and procedures, but agrees to allow qualified individuals to participate in the Shoe Exchange Program if he or she chooses to do so. Pursuant to CDOC's policy, offenders diagnosed as having diabetes, who do not require medically necessary shoes may (1) self-purchase tennis shoes from the canteen, or (2) participate in the Shoe Exchange Program. The Parties agree that this Agreement does not alter or affect that policy or practice in any manner.

  K. Implementation of the Shoe Exchange Program will commence within three months of the CDOC's receipt of at least 200 pairs of approved shoes to initiate the program. At the inception of the program, CDOC will provide information regarding the program to all qualified individuals, including an explanation that the program will likely not have a full inventory at its genesis, that it is anticipated that inventory will increase over time, but that CDOC is not responsible for ensuring any level of inventory.

  L. Shoe Exchange Program shoes shall be documented on the qualified individual's property list as one of their two pairs of allowable shoes. The Shoe Exchange Program shoes do not impact other property allocations. CDOC does not consider Shoe Exchange Program shoes to be an ADA accommodation or medical equipment.

  M. CDOC shall post a mutually agreeable notice of the Agreement for 28 days in conspicuous common areas of each CDOC prison facility in an accessible form. Thereafter, a mutually agreeable notice of the Shoe Exchange Program shall be provided on a semi-annual basis at each facility in common areas for a 14-day period prior to the semi-annual exchange at that facility.

  N. The Colorado Division of Risk Management, and the State of Colorado agree to pay to Class Counsel a gross amount of $750.00 (Seven-Hundred-and-Fifty Dollars) to be paid from the Risk Management Fund. This amount shall be paid as follows: A check in the amount of $750.00 will be made payable to King & Greisen, LLP. King & Greisen, LLP has agreed to provide or has providedan original of the attached form W-9 in conjunction with submitting the required signed version of this Agreement as an initial step in completing the arrangements described here. A Form 1099 will be issued on the payment and no payment made is designated as wages, salary, or back pay. The payment is instead made in compromise of the Class Members' claims. The Class has indicated its intent to utilize this sum to fund the startup costs of the Shoe Exchange Program. Thereafter, the CDOC has no obligation to fund any further inventory for the Shoe Exchange Program.

## PROCEDURAL ISSUES

  A. Class Counsel will prepare attorney-client communication regarding the terms of the proposed Agreement for all class members in the Montez litigation, which shall be distributed to class members with the assistance of the CDOC.

  B. Notice shall be provided to all class members regarding a date for a Fairness Hearing pursuant to Fed. R. Civ. P. 23(e) regarding the proposed Agreement. This Notice shall be posted via the Titler system at CDOC facilities and

Class Members shall have an opportunity to file any response or objection to the proposed Agreement, as directed by the Court.

  C. If the Court approves this proposed Agreement, the Parties stipulate that this Agreement is a final resolution to all pending matters in this case. The Parties shall file a stipulation for dismissal within 14 days of approval of this proposed settlement by the Court.

  D. Subsequent to Court approval, the Remedial Plan is no longer in effect, the Monitoring Period is closed, and the entire case is closed with no further monitoring under the Remedial Plan.

  E. CDOC is under no continuing obligation to pay any costs or fees incurred by Class Counsel to assist in implementation of the Shoe Exchange Program after the Court enters the final orders dismissing this case. CDOC shall be responsible for providing notice to all class members of such final orders. All attorney fees and cost incurred by Class Counsel until final dismissal by the Court shall be paid in accordance with the procedures specified in the Remedial Plan.

  The following terms apply to the $750.00 one-time payment:

  A. <u>TAX PROVISIONS</u>. The CDOC or Colorado will file all appropriate reporting forms with the Internal Revenue Service and other State or federal taxing authorities on the amounts paid to King & Greisen, LLP, including Form 1099. The CDOC and Colorado make no representation as to the taxability or non-taxability of these payments. King & Greisen, LLP is liable for all tax consequences resulting from the payments that it may receive. In the event any part of the payment received by King & Greisen, LLP in connection with this Settlement Agreement and Release is determined to be taxable, King & Greisen, LLP shall be solely responsible for any tax liability arising therefrom. In the event that the CDOC or the State of Colorado is ever determined to be responsible for any tax liability arising from King & Greisen, LLP's failure to satisfy tax liability on the payment, King & Greisen, LLP agrees to defend, indemnify, and hold the State harmless for any interest or penalties assessed on such amount, within 30 days after notification of the tax liability by the CDOC or by the State of Colorado, or such longer period as specified by the taxing authority.

  B. <u>WITHHOLDING OF SETTLEMENT FUNDS</u>. Pursuant to Section 24-30-202.4, C.R.S. (as amended), the State Controller will withhold debts owed to State agencies under the vendor offset intercept system from the gross amount of $750.00 for: (a) unpaid child support or child support arrearages; (b) unpaid balance of taxes, accrued interest and other charges specified in Article 21, Title 39, C.R.S.; (c) unpaid loans due to the Student Loan Division of the Department of Higher Education; (d) owed amounts required to be paid to the Unemployment

4

Compensation Fund; (e) medical bills incurred by King & Greisen, LLP paid in part or in full by Medicare and Medicaid, and (f) other unpaid debts owing to the State or any state agency thereof, the amount of which is found to be owing as a result of final agency determination or reduced to judgment as certified by the Controller. The provisions of such law shall apply to all payments described in this Settlement Agreement and Release, including any amount owed for restitution or to Revenue for unpaid taxes and shall not create any claim of breach by the Class by virtue of any such application.

      C.      TIMING OF PAYMENT. The settlement proceeds shall be paid to King & Greisen, LLP no later than the conclusion of twenty-eight (28) days following the full approval and execution of this Agreement by the Controller of the State of Colorado and approval of this Agreement by the Court. The process of obtaining Controller approval and execution cannot commence prior to receipt of the original of this Agreement executed by the Class, bearing an appropriate signature, as well as all other required documentation, fully executed as appropriate.

## GENERAL PROVISIONS

      A.      NO ADMISSION OF LIABILITY. The CDOC and State of Colorado, by entering into this Agreement, do not admit any impropriety, wrongdoing, or liability of any kind whatsoever in relation to anything associated with the Class, as such entities enter into this Agreement to compromise and resolve disputed claims for damages and other relief. The Parties agree that this Agreement does not constitute evidence of or an admission of any liability, omission, or wrongdoing of any kind by the CDOC, State of Colorado, or by any former or current employee, official, agent, or attorney of the CDOC or State of Colorado.

      B.      GOVERNING LAW. This Agreement is entered into in the State of Colorado, and shall be governed by the laws of the State of Colorado.

      C.      HEADINGS. The headings used in this Agreement are used only for the convenience of the Parties. As such, these headings shall not possess any legal effect whatsoever or, in any other way alter or modify the meaning or interpretation of this Agreement.

      D.      EFFECTIVE DATE/CONTROLLER APPROVAL. This Agreement shall not be deemed valid until it is approved **and** signed by the State Controller or such assistant as he may designate, as provided by Section 24-30-202(1), C.R.S.. This provision is applicable to any agreement providing for payment of money by the State of Colorado. The effective date of this Agreement is the date it is signed by the State Controller or his designee. No signature of the State Controller or his designee shall be provided until after all other required signatures are affixed to this Agreement.

5

Respectfully Submitted By:

Plaintiffs' Counsel:                                Defendants' Counsel:


Paula Greisen                                       Jacquelynn Rich Fredericks
King & Greisen LLP                                  Office of the Attorney General
1670 York Street                                    1300 Broadway, 6th Floor
Denver, Colorado 80206                              Denver, Colorado 80203
(303) 298-9878                                      (720) 508-6603

6

**COLORADO DEPARTMENT OF CORRECTIONS**

By: _____    Date: _____

**Rick Raemisch,**
Executive Director

7

**Office of Attorney General**

By: _____   Date: _____
James X. Quinn
First Assistant Attorney General
State of Colorado Department of Law
Office of Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203

**State of Colorado**

By: _____   Date: _____
Executive Director, June Taylor or Designee
Colorado Department of Personnel and Administration

**State of Colorado**

By: _____   Date: _____
State Controller, Robert Jaros or Designee
Office of the State Controller

APPROVED AS TO FORM:


By:_____
    Paula Greisen
    King & Greisen, LLP
    1670 York St.
    Denver, CO 80206
    T: 303.298.9878
    **ATTORNEY FOR THE CLASS**

By:_____
    Jacquelynn N. Rich Fredericks
    Assistant Attorney General
    Ralph L. Carr Colorado Judicial Center
    1300 Broadway, 6th Floor
    Denver, CO 80203
    T: 720.508.6603

    **ATTORNEY FOR THE COLORADO DEPARTMENT OF CORRECTIONS**