FED COURT FACTS FOR S. CT.



# THE UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT
1823 Stout, Denver CO 80257
**TENTH CIRCUIT NO. 17-1115**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 25 2018

JEFFREY P. COLWELL
CLERK

## UNITED STATES DISTRICT COURT
### DISTRICT OF COLORADO
901 19th St., Rm. A105; Denver 80294
**CASE NO. 92-CV-00870-CMA**

Claimant 030

*Plaintiff-Appellant*
L. R. MOORE pro se #47702; POB 6000; Sterling CO 80751
*And*
*Dead plaintiffs*[1]
JESSE MONTEZ, et al, Ft. Logan Cemetery
V.
*Defendants-Appellees*
**JOHN HICKENLOOPER, et al**
**Defense Counsel:** Colo. Atty. General, Cynthia Coffman, J N. R. Fredericks (et seq); 1300 Broadway, 10th Fl.; Denver CO 80203

Δ *COURT USE ONLY* Δ

**STATEMENT OF AGREED FACT (EXHAUSTION OF DISCRETIONARY REVIEW AND SUMMARY OF OTHER FACTS) FOR THE U. S. SUPREME COURT, AS AGREED IN CASE NO. 17-1115, AN APPEAL FROM U.S. DIST. COLO. 92-CV-00870-CMA-MEH, CLAIMANT NO. 030; L. R. MOORE 47702**
**&**
**CERTIFICATE OF SERVICE**

## TABLE OF CONTENTS

**Statement of Facts**……………………………………………………………………..…....2
    (Exhaustion of Review) ECF5621……………………………………………………….3
    (Exhaustion of Review) Tenth's Mandate……………………………. ………….3
    District's Prior Dismissals (upheld by Tenth)……………………………..……….3
    Other Facts……………………………………………………………  ………………4
    Summation ……………………………………………………………………………..8
    Conclusion………………………………………………………………………….7
**Certificates of Service & Compliance**……………………………………………9

---

[1] The Caption is due to this Court's insistence on listing deceased plaintiffs in it while omitting deceased (or left) defendants. The Court never explained how one corpse differs from another nor how to serve the dead, thus Appellant has not tried to serve them.

1

FED COURT FACTS FOR S. CT.

## STATEMENT OF AGREED FACT

Petitioner, per agreement with the 10th Circuit and U. S. Dist. Ct. for Colo., submits the below facts in support of his Petition for writ of Certiorari in U. S. Supreme Court.

He has served, at least a month prior to submission, the two lower courts with copy of this in case they have any disagreements. He expects none, but will attach any sent him.

As the Clerk, U. S. Supreme Court has stated uncertainty as to what the District Court for Colorado decided, Petitioner now states the facts as agreed by all parties, as he understands them. If any disagree, they should state so within 14 days of receipt, giving their version of the facts.

As District has rejected the Mandate from the 10th Circuit to explain why it denied Appellant's Motion to Be Paid; and as Judge C. M. Arguello has stated, via Clerk Shumaker, that she won't respond again to Plaintiff in this claim; and as she apparently responded[2] to the 10th on 24 July 2018 as ECF No. 5621 without sending Plaintiff copy; Plaintiff doesn't expect her to reply disagreeing with this Statement. Nor does he expect Counsel (Fredericks) to, as Counsel initiated almost all of Arguello's statements that Moore now labels here as facts. Nor does he expect the Tenth to disagree as it said it would not enforce its Mandate thus leaving control of its Opinion with District.

---

[2] He now has a copy as District unsealed copy in response to a motion to do so.

## I.    ECF 5621 (24 July 2018)

1. This ECF, once unsealed, stated that (due to case being closed), District lacked jurisdiction to rule.

2. The 10th Circuit had sent District Appellant's Declaration of Exhaustion of Discretionary Review. This as 10th wanted District's Opinion. The 10th has not replied to Appellant, nor does he expect it to. IE Petitioner moved the 10th to declare exhaustion and it passed the buck to District, which decided it couldn't rule due to lack of jurisdiction but sealed this response so Petitioner was not informed until he moved for response to be unsealed.

3. Petitioner's Declaration re exhaustion (near copy of that sent 10th) was sent, by District's error, to Magistrate Gallagher who then made an erroneous ruling that he later withdrew. Thus, neither 10th nor District has directly replied to the Declaration Motions sent them. Both **have** made it very clear that discretionary review of this matter in their courts is **more than exhausted.**

## II.    Tenth's Mandate

1. The 10th has stated, via Clerk's Letter, that Mandate closed case, even after District rejected Mandate. Clerk said that she would **not** file any further pleadings from Petitioner. It has not altho it did forward one to District as in I. above.

2. The Tenth also stated, in response to Motion to be Paid, *in accordance with Colorado Revised Statutes and federal Equal Access to Justice Act*, that Mandate had shifted all jurisdiction to District.

3. **Later, clerk Shumaker, for the Tenth, wrote Petitioner that nothing more from him** would be filed as Mandate closed the appeal, He had moved for enforcement of Mandate as District stated it refused to comply with it.

## III.    District's Prior Dismissals of Claimant 030

1. District has, for years, rejected Petitioner, *as Claimant 030,* without comment.

2. Immediately prior to the latest Appeal, District dismissed Petitioner solely based on Counsel's pleadings. Twas as if district had trashed, unread, his pleadings. Counsel pled that paying him was "illegal" without citing any statute nor state regulation. She did cite an irrelevant federal rule.

3

3. The Tenth, due to Appeal, noted this and asked District to cite relevant statute or rule that Dismissal was based on .as there was none, District couldn't cite any. It didn't try, but simply repeated that all of Petitioner's Motions were denied *(including his claims to CRS interest and to Equal Access to Justice Act)* and Case again dismissed. No mention was made of Mandate, nor of its demand for citation.

4. On 15 May 2018, District declared that Case, as far as Moore as Claimant was concerned, was **"dismissed with prejudice."**

### IV. Other Facts

There were three core issues appealed: Refusals to pay damages won; Approval of seizures of personal medical appliances such as gold teeth; and refusal to serve pro se prisoners relevant documents.

1. The Refusals to Pay:

    A. The bases (explicit and implicit) supporting Counsel's (not Respondents')[3] refusal to pay Petitioner the Special master's Award. Counsel's reasons were:
        a. Petitioner is not a U. S. citizen (Irrelevant as Award not contingent on U. S. citizenship). This claim was made from 2005 to 2012.
        b. That Award didn't exist. This claim made from 2012 to 2016.
        c. That there were state statutes and/or regulations that banned paying Petitioner. This claim was made from 2016 to 2017, with neither statute nor relevant regulation cited.[4] Fredericks did cite a U. S. citizen IRS form for taxable income, even tho she knew Petitioner was not a citizen nor was Award taxable. She never disputed either fact, simply ignored them while acting as if a combined IRS and INS agent by determining both citizenship and federal taxability. She never suggested Award was taxable under state law. She did claim that it was subject to seizure for state restitution claims, altho she never stated that any existed (they do not).

---

[3] Respondents' budget provided for Counsel to pay all Special Master Awards. As their Counsel. Counsel still refuses to fully pay Petitioner.

[4] District ruled for Counsel on this claim, again without cite. This was appealed and seemingly reversed by Tenth's Mandate until District rejected Mandate. District so rejected by refusing to comply with mandate's demand that District cite statute or regulation for refusing to order payment. Instead, District simply repeated its earlier Dismissal, including Denial of Motion to be Paid, as if Mandate had never been issued

4

    **d.** That Petitioner had not actively enough pursued payment. Fredericks claimed this is 2018.[5] In doing so, she repeatedly and knowing misrepresented the material facts in her above reasons. Her claim was that filing fees, costs, and CRS interest applied only to court orders, not special master orders. She ignored his efforts in District Court for Lincoln County that she successfully opposed in b. above. She also ignored efforts by Class Counsel to get him paid, efforts, which she entered into the Tenth's record in her Answer.

That is that the delays from Counsel's now admitted misrepresentations are all Petitioner's fault that he needed to have convinced the courts earlier that she was lying, thus he is not entitled to interest nor costs.

    **e.** That there were several cases that supported denying paying Petitioner. Of those she cited, only *Gibson v. TT of Woodmen,* 2013 U.S. Dist. LEXIS 83363 (D. Colo) was relevant. And it solidly supported Petitioner, according to the 10th. This she unsuccessfully claimed in her 2018 Answer.

    **f.** That Counsel need not pay Special Master Awards (even tho it paid most other prisoners), only what the District Court directly ordered. This she successfully claimed in her final pleading which was in 2018

    **g.** That Award was so nominal that Petitioner should not have tried to make Counsel pay it, thus Petitioner must pay costs and filing fees for the appeal that finally convinced Counsel to partially pay this debt. This was claimed like f.

    **g.** That Equal Access to Justice Act, 5 USC § 504, doesn't apply to pro se prisoner suits.

**B.** District adopted, often implicitly, the above claims, thus ordered that no payment be made to Petitioner. This Order was appealed to the 10th.

**C.** Tenth remanded District's Order for not citing statutes/regulations that District claimed Order was based on. This was the Tenth's Mandate which tenth said closed the Appeal. When Petitioner moved 10th to order payment, 10th ruled that the matter was now in District, that Appeal was closed by Mandate. As there were no relevant statutes nor regulations to

---

[5] Fredericks sent Petitioner $50 as "nominal damages" (her words), noting that there was no court order to pay Petitioner, only the Special Master's. Petitioner didn't accept this "nominal."

    base refusal to pay on, counsel then admitted same, but still refused to pay on other grounds. District simply ignored Mandate as if it had never been issued.

  **D.** Petitioner, post-mandate, again moved district to be paid. Again, District denied him, repeating previously denial as if Mandate had never been issued. It did note that Counsel had finally tried to send Petitioner token damages as if such were payment in full despite District's Order denying payment to him.

  **E.** Petitioner moved 10th to enforce Mandate. Tenth not only denied motion on basis that Appeal was closed, but stated it would not file any further pleadings.

**2.** The Refusals to Return/Replace wrongly seized Personal Prisoner DMEs:

  **A.** The Districts ruling that CODOC prisoners' gold fillings,[6] being qualitatively above CODOC's medical standards,[7] can be involuntarily seized and kept by Respondents as officials and as individuals.[8] Likewise, custom hearing aids and wheelchairs.[9]

  **B.** That CODOC prisoners, despite *Montez Remedial Plan's* [10]contrary agreement, have no right to retain personal Durable Medical Equipment (DME) when personal DM E quality exceeds CODOC standards. Examples of exceeding are made-to-fit wheelchairs[11], hearing aids, and gold fillings.[12] The gold filling example was accepted by the Tenth when Petitioner argued exactly this before it in his late filing. CODOC's cavity filling standard is Copal resin, a.k.a. plastic.

---

[6] This claim was in Petitioner's Appeal that 10th rejected, citing "equipment meeting [but not exceeding] prison medical standards" were all that prisoners are allowed to keep.

[7] Copal (plastic) fillings are this standard.

8 An individual employee seems to have stolen Petitioner's custom wheelchair.

9 Respondents promised Special Master to replace Petitioner's custom wheelchair which thy stole (no receipt given violating their rules and they have been unable to find it altho they admit seizing it) and still haven't replaced.

[10]MRP

[11] Petitioner's made-to-fit titanium wheelchair with adjustable wheelbase and height was stolen by CODOC staff. Cathie Holst, Respondents' ADA Inmate Coordinator, admitted this at Petitioner's Montez Hearing.

[12] Class Counsel objected to District that there had been no compliance with MRP. District ignored compla8int.

6

3. **The Refusal to Service Pro Se Prisoner-Claimants with Copy of Proposed Settlement:**

   A. That, according to the actions of Respondents and both federal courts, *Montez* is unenforceable, and now about completely dead.[13]

   B. That Respondents refused to serve the confidential (kept secret from pro se prisoner claimants) Proposed Montez Final Settlement on pro se prisoner-claimants such as Petitioner.

   C. That these pro se prisoners were acting as if fiscally responsible co-counsels.[14]

   D. That, altho effectively co-counsels, these prisoners are entitled to only be served with notice that a final settlement has been proposed, and when accepted, copy of the final settlement.[15] That is, co-counsels were deliberately left in the dark as to what their final settlement would be, were only allowed to argue that the various Orders affecting them as individuals had not been complied with.

   E. That on 1 October 2018, LT. Bade officially opined, in SCF COPD Hearing 19-0377 that prisoner ADA Accommodations are naught but "courtesies" that staff can ignore at will. He did so by creating an Incident that did not occur (Petitioner was not present during his claimed incident, as pointed out during Hearing). This creation is expected to be approved, on appeal, by SCF Warden, thus exhausting administrative review. The reason for this creation is to obfuscate the fact that Bade so dismissed Accommodations.
   **That is, *Montez* Accommodations are now, according to respondents, matters of grace versus law.**

---

[13] There is a small diabetic shoe fund left.

[14] Such prisoners must agree to pay filing appellate filing fees if they lose any appeal they file. The main purpose of going pro se is when class counsel fails to obtain merited relief, thus a pro se appeal necessitated to obtain relief. When relief thus obtained, Respondents should reimburse for filing fees and other costs altho Counsel has, thus far, successfully argued the opposite.

[15] Petitioner was so served.

7

## Summation

The Tenth Circuit Court knowing acquiesced to the District's dismissal of all Petitioner's claims on these bases:

1. Every medical appliance, including gold fillings, owned by a state prisoner becomes subject to staff seizure when a prisoner enters prison if the appliance is of higher quality than what prison provides ("standard").

2. State prisons need not pay damages awarded by federal court arbitrators as arbitrators are not judges, thus their awards are not court orders.

3. That the right of CODOC prisoners to the protection of civil laws in state and federal courts has been lost as follows:

   A. When state attorneys knowingly and successfully misrepresent material fact, thus causing long delays and greatly increased cost to victim in payment of damages, the statutory punitive compensations designed to prevent such acts, are no longer available to victim. That is. When state attorneys admit that they have been successfully lying to the courts in defending civil suits, the victim loses his right to statutory compensation for these lies. Thus, the compensation is available only when these attorneys do not admit they lied, or do not cause great delay and increased expense such as paying appellate filing fees in an appeal in which victim prevails.[16]

   B. That CRS on interest on payments delayed by the state is unenforceable for CODOC prisoner claims.

   C. That CRS on payment of filing fees by the loser, when the state loses, does not apply to CODOC prisoners who have had to agree to pay fees to file appeal, thus still pay even tho they won.

   D. That the federal Equal Access to Justice Act does not apply to CODOC prisoners. Thus such prisoners can't claim postage, Xerox, not typing costs.

   E. That there is no need for District to comply with the Circuit Court's Mandate as Petitioner has no right to the relief granted in Mandate. That is, the Mandate is unenforceable.

---

[16] This principle long dominated the infamous Nazi Victims' Gold Claims in the Swiss courts. Finally, pressure from U.S. Congress and Courts prevailed in reversing this. Such a reversal is sought by Petitioner is this Petition.

8

## Conclusions

The Tenth Circuit has upheld these Colorado District Court conclusions:

1. That ADA, as interpreted by MRP, is unenforceable
2. That CODOC prisoners are not entitled to the benefit of Colorado civil suit costs statutes nor federal Equal Access to Justice Act because they are prisoners
3. That all discretionary review has been exhausted in these two courts.

**CERTIFICATE OF SERVICE & COMPLIANCE**

Petitioner certifies that this Statement of Facts has 2680 words, with text in 14 point Roman double spaced, and complies with all 3 Court's Rules, as he understands them.

Respectfully submitted to the lower Courts on this 22 October 2018 with copies mailed to all parties in Caption (except Jessie Montez) by Petitioner pro se

*[signature: R R Moore]*

9